UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| P. Poe 5, and P. Poes 2 - 4 and 6 - 75, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>The University of Washington; Eliza Saunders,<br><br>Defendants. | CASE NO. 2:24-cv-00170-JHC<br><br>TEMPORARY RESTRAINING ORDER |

# I

## INTRODUCTION

This matter comes before the Court on Plaintiffs' motion for a temporary restraining order (TRO). Dkt. # 3. Plaintiffs seek to enjoin Defendants the University of Washington (UW) and Eliza Saunders, UW Director of Public Relations, from releasing information that would identify Plaintiffs by name in response to a request under the Washington's Public Records Act (PRA). *Id.* at 4. Plaintiffs are members, alternate members, or former members of UW's Institutional Animal Care and Use Committee (IACUC). *Id.* at 5. The public records requests at issue are from the animal rights groups Rise for Animals, People for Ethical Treatment of Animals (PETA), and Northwest Animal Rights Network (NARN). *Id.* at 16. Plaintiffs claim

TEMPORARY RESTRAINING ORDER - 1

that, if their names or other identifying details are released, they are likely to be harassed by activists associated with these groups who oppose animal research. *Id.* at 4. They argue that disclosure of such information would violate their federal and state constitutional rights to privacy. *Id.* At 6. They also argue that the PRA, at RCW 4.28.580, exempts such information from disclosure. *Id.* At 7.

According to Plaintiffs, UW says that the PRA requires it to disclose the subject information and has represented that it will release the public records at issue, including the names, on Friday, February 16, 2024. *Id.* At 4. Defendants filed a notice saying that they do not plan to oppose Plaintiff's motion. Dkt # 10.

## II

### Background

A.  IACUC

Institutions that use live animals in research, tests, or experiments and accept federal funding for such work, 7 U.S.C. § 2132(e), must establish an IACUC that shall, among other things, "review . . . the research facility's program for human care and use of animals," "review and approve, require modifications in (to secure approval), or withhold approval of . . . of proposed activities related to the care and use of animals," and "review, and, if warranted, investigate concerns involving the care and use of animals at the research facility resulting from public complaints received and from reports of noncompliance received from laboratory or research facility personnel or employees," 9 CFR § 2.31(c)(1), (4), (6).

UW's IACUC meetings are open to the public via online video conference, but the names and other identifying features of IACUC members are kept confidential. Dkt. # 3 at 5. IACUC members are identified by their initials at the meetings. *Id.* At UW, all IACUC members are volunteers. *Id.* Members' identities are kept confidential "due to ongoing harassment and

threats of harassment against the committee (and other US researchers) by persons opposed to animal research." *Id.*

B.     Previous Case

In a previous case before this district, *Sullivan v. Univ. of Washington*, 2:22-cv-00204-RAJ, Jane Sullivan, the IACUC Chair, and P. Poe 1, an IACUC member, sought a TRO and preliminary injunction to stop UW from releasing the names of members of UW's IACUC. The court granted the TRO and preliminary injunction based on the plaintiffs' argument that the release of information would violate the plaintiffs' First Amendment right to academic association. *Sullivan v. Univ. of Washington*, No. 2:22-CV-00204-RAJ, 2022 WL 558219, at *3 (W.D. Wash. Feb. 24, 2022).

PETA, an intervenor-defendant, appealed the preliminary injunction and the Ninth Circuit reversed. It held that "[t]he committee members' performance of their official duties is not protected by the First Amendment right of expressive association, and so the disclosure of public records that relate to performance of such duties does not impinge on that right." *Sullivan v. Univ. of Washington*, 60 F.4th 574, 576 (9th Cir. 2023).

On remand, the district court granted another preliminary injunction based on the plaintiffs' amended complaint. *Sullivan v. Univ. of Washington*, No. 2:22-CV-00204-RAJ, 2023 WL 3224495, at *2 (W.D. Wash. May 3, 2023). The court found that the plaintiffs showed a likelihood of success on the merits as to their claim that the release of information would violate their Washington and federal constitutional rights to personal security and bodily integrity, and informational privacy. *Id.* at *3–4. PETA again appealed. The Ninth Circuit concluded that Jane Sullivan and P. Poe 1 lacked standing. *Sullivan v. Univ. of Washington*, No. 23-35313, 2023 WL 8621992, at *1 (9th Cir. Dec. 13, 2023). The Ninth Circuit held that "Sullivan cannot demonstrate redressability because she cannot represent the IACUC's institutional interests in

her role as the chair of the IACUC" and her identity is already known. *Id.* And it held that Poe 1 could not show redressability because the record reflected that UW already responded to a PRA request from PETA that disclosed the names and emails of "almost all" IACUC members on March 4, 2021. *Id.* Poe 1 did not furnish any information showing that their information was not disclosed on March 4, 2021, so the Ninth Circuit held that Poe 1 did not meet their "burden of establishing subject matter jurisdiction." *Id.* (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). The court did not opine on the merits of the preliminary injunction. The court vacated the injunction and remanded with instructions to dismiss the case. *Id.* at *2.

C.  The Present Case

Plaintiffs now bring this case as UW has informed IACUC members that it intends to respond to public records requests without redacting the names of the committee members because there is no longer a preliminary injunction barring disclosure. Dkt. # 3 at 4.

### III

### DISCUSSION

The legal standards for a preliminary injunction and a TRO are "substantially identical." *Stuhlbarg Int'l Sales Co v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008). To obtain a TRO, Plaintiffs must show that (1) they are "likely to succeed on the merits;" (2) they are "likely to suffer irreparable harm in the absence of" a TRO; (3) "the balance of equities tips in [their] favor;" and (4) a TRO "is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter,* 555 U.S. at 20) (these are called the "*Winter*

TEMPORARY RESTRAINING ORDER - 4

factors).[1]  As mentioned above, Defendants do not plan to oppose the motion.  Nor has the Court received any opposition to the motion from any other person or entity.  Thus, the analysis below rests on Plaintiffs' submissions.

A.     Likelihood of Success on the Merits

While the "'precise bounds' of the constitutional right to privacy are uncertain. . . . the Supreme Court [has] identified the somewhat elusive interest in 'avoiding disclosure of personal matters' as a privacy interest protected by the Constitution." *Doe v. Garland*, 17 F.4th 941, 946 (9th Cir. 2021) (quoting *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999), and *Whalen v. Roe*, 429 U.S. 589, 599 (1977)).

The Ninth Circuit recognizes "at least two distinct kinds of constitutionally-protected privacy interests: 'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.'" *In re Crawford*, 194 F.3d at 958 (quoting *Doe v. Attorney Gen.,* 941 F.2d 780, 795 (9th Cir.1991)). This case concerns the first type of privacy interest.

In determining whether a person is entitled to a federal constitutional right to privacy from government disclosure of personal information, a court must weigh these factors:

> [T]he type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and

---

[1] The Ninth Circuit has also held that "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).  But because Plaintiffs have shown a likelihood of success on the merits, the Court need not apply this alternative standard.

whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Id.* (quoting *Doe v. Attorney Gen.,* 941 F.2d at 796).

According to Plaintiffs, members of the IACUC, and individuals at UW and other academic institutions who engage in animal research, often face harassment and threats from animal rights activists, including at their homes. Dkt. # 4 at 40. Plaintiffs' motion and supporting materials provide numerous examples. *See, e.g.*, Dkt. # 4 at 52 (Declaration of Dr. Jane Sullivan) (recounting how animal rights activists discovered the names of Dr. Sullivan's cats and made a public comment in an IACUC meeting suggesting that the cats be animal research subjects); Dkt # 5 at 2–6 (Declaration of Dr. Jane Sullivan) (describing two incidents of personal harassment of animal researchers by PETA). The injury to Plaintiffs could be significant if their names are disclosed. Disclosure may also harm the relationship between IACUC members and UW, and volunteers may be less likely to participate on the committee if they face threats for their participation. On the other hand, the degree of need for public access to the information at issue is relatively low here: the committee's proceedings are public, and the committee's activities are overseen by federal regulators. *See* Dkt. # 4 at 40; 9 CFR § 2.31(a). Further, while Washington generally favors disclosure of information through the PRA, it recognizes that there is public interest in protecting individuals who work in animal research. *See* RCW 4.24.580; *Progressive Animal Welfare Soc. v. Univ. of Washington*, 125 Wash. 2d 243, 263, 884 P.2d 592, 604 (1994) ("We hold that researchers may seek to enjoin the release of certain portions of public records if the nondisclosure of those portions is necessary to prevent harassment as defined under the anti-harassment statute [RCW 4.24.580]."). In some contexts, the disclosure of an identity may not rise to the level of violating a constitutionally protected

TEMPORARY RESTRAINING ORDER - 6

privacy right; here, however, Plaintiffs have shown a likelihood of success on the merits as to the federal constitutional claim.[2]

B.      Remaining *Winters* Factors

Plaintiffs have shown a likelihood of irreparable harm if their identities are disclosed. Once a Plaintiff's information is public, the harm cannot be remedied by court action. Plaintiffs have also shown that they are likely to suffer personal threats or harassment, both at work and at home, if their names are disclosed.

The balance of equities supports a TRO as the hardship to Plaintiffs if their names are disclosed at this early stage of litigation is significant, while the burden of redacting PRA documents on UW is minimal at this stage. *See Shell Offshore, Inc.*, 709 F.3d at 1291 (weighing the interests of both parties). Further, PETA and NARN "both stated that at this time they would accept redacted documents and are not currently requesting the identities of the committee members." Dkt. # 3 at 17. UW, however, has said that it will not redact the committee member names from the requested documents unless forced to do so by court order. *Id.*

While there is a public interest in disclosure, that interest does not weigh heavily in favor of denying the TRO, especially because the IACUC is otherwise transparent in its proceedings. *See Shell Offshore, Inc.*, 709 F.3d at 1292 (holding that court did not abuse its discretion in granting a TRO in favor of Shell even though it recognized that environmental organizations like Greenpeace help hold oil and gas companied accountable and there is a public interest in a healthy environment). Thus, the additional *Winters* factors support a TRO.

---

[2] Because the Court finds a likelihood success on the merits as to the federal constitutional claim, the Court does not address the likelihood of success on the merits as to Plaintiffs' Washington constitutional claim and Washington state law claim under RCW 4.28.580.

TEMPORARY RESTRAINING ORDER - 7

# IV

## Conclusion

The Court GRANTS Plaintiffs' Motion for a Temporary Restraining Order. Dkt # 3. The Court temporarily ENJOINS Defendants as follows:

(1) Pending further order of this Court, Defendants are enjoined from disclosing the personally identifying information of Plaintiffs and putative class members—specifically, any current or former member or alternate member of the UW IACUC—in response or in relation to any request under Washington's PRA, whether in documents or communications relating to the IACUC, in documents or communications relating to the PRA requests, or otherwise, if such disclosure would identify any such individual as associated with the UW IACUC. Consistent with this Order, Defendants may produce redacted versions of the requested documents. But before producing such documents, Defendants must confer with Plaintiffs to ensure that the redactions fully adhere to this Order.

(2) Although a bond may be required when granting injunctive relief, the Court declines to require a bond. *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999) ("The district court is afforded wide discretion in setting the amount of the bond."); *Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000) (finding that the bond amount may be zero if there is no evidence the party will suffer damages from the injunction).

(3) The TRO will be effective on the day this Order is filed and will remain in effect until March 11, 2024, unless extended by order of the Court.

(4) The Court DIRECTS the Clerk to note the motion for preliminary injunction, Dkt. # 3, for March 8, 2024. Any opposition to the motion is due March 4, 2024. Any reply is due

March 8, 2024.  Oral argument on the motion shall take place on March 11, 2024, at 11:00 a.m. in Courtroom 14A.

Dated this 13th day of February, 2024.

John H. Chun
United States District Judge