1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| P. POE 5 and P POES 2 through 4 and 6 through 75, individually and on behalf of others similarly situated, | CASE NO. 2:24-cv-00170-JHC |
| Plaintiffs, | ORDER |
| v. | |
| UNIVERSITY OF WASHINGTON, a Washington public corporation; ELIZA SAUNDERS, Director of Public Records and Open Public Meetings at the University of Washington, | |
| Defendants, | |
| and | |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.; NORTHWEST ANIMAL RIGHTS NETWORK, | |
| Intervenor-Defendants. | |

ORDER - 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# I

## INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction. Dkt. # 3.  Plaintiffs seek to enjoin Defendants, the University of Washington (UW) and Eliza Saunders, UW Director of Public Relations, from releasing information that would identify Plaintiffs by name in response to a request under the Washington's Public Records Act (PRA). *Id.* at 4.  Plaintiff P Poe 5 is a member or alternate member of UW's Institutional Animal Care and Use Committee (IACUC).  Dkt. # 5 at 1.  The public records requests at issue are from the animal rights groups Rise for Animals, People for Ethical Treatment of Animals (PETA), and Northwest Animal Rights Network (NARN).  *Id.* at 7.  Plaintiffs claim that if their names or other identifying details are released, they are likely to be harassed by activists associated with these groups who oppose animal research.  Dkt. # 3 at 4.  Plaintiffs argue that disclosure of such information would violate their federal constitutional right to informational privacy.  *Id.* at 6.

The Court issued a temporary restraining order (TRO) on February 13, 2024.  Dkt. # 11. UW did not oppose the TRO and takes no position on whether Plaintiffs have a constitutional right to informational privacy in this case.  Dkt. # 29.  PETA and NARN intervened in the case and argue that Plaintiffs do not have a constitutional right to informational privacy.  Dkt. # 24. On March 25, 2024, the Court heard oral argument.

For the reasons discussed below, the Court GRANTS Plaintiffs' motion.[1]

---

[1] The Court DENIES the Intervenor-Defendants' motion to strike the declaration at Dkt. # 42.  Dkt. # 43. Instead, the Court has considered the points made in their surreply.  *See id.*

1
2

## II

### BACKGROUND

3

A.     IACUC

4

Institutions that use live animals in research, tests, or experiments and accept federal

5

funding for such work must establish an IACUC that must, among other things, "review . . . the

6

research facility's program for human care and use of animals," "review and approve, require

7

modifications in (to secure approval), or withhold approval of . . . of proposed activities related

8

to the care and use of animals," and "review, and, if warranted, investigate concerns involving

9

the care and use of animals at the research facility resulting from public complaints received and

10

from reports of noncompliance received from laboratory or research facility personnel or

11

employees."  9 CFR § 2.31(c)(1), (4), (6); 7 U.S.C. § 2132(e).  UW's IACUC meetings are open

12

to the public via online video conference, but the names and other identifying features of the

13

members are kept confidential.  Dkt. # 4 at 40.  IACUC members are identified by their initials at

14

the meetings.  *Id.*  At UW, all IACUC members are volunteers.  *Id.* at 41.  Members' identities

15

are kept confidential "due to ongoing harassment and threats of harassment against the

16

committee (and other US researchers) by persons opposed to animal research."  *Id.* at 40.

17

B.     Previous Case

18

In a previous case before this District, *Sullivan v. University of Washington*, 2:22-cv-

19

00204-RAJ, Jane Sullivan, the IACUC Chair, and P. Poe 1, an IACUC member, sought a TRO

20

and preliminary injunction to stop UW from releasing the names of members of UW's IACUC.

21

The court granted the TRO and preliminary injunction based on the plaintiffs' argument that the

22

release of information would violate the plaintiffs' First Amendment right to academic

23

association.  *Sullivan v. Univ. of Washington*, No. 2:22-CV-00204-RAJ, 2022 WL 558219, at *3

24

(W.D. Wash. Feb. 24, 2022).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

PETA, an intervenor-defendant, appealed the preliminary injunction and the Ninth Circuit reversed.  It held that "[t]he committee members' performance of their official duties is not protected by the First Amendment right of expressive association, and so the disclosure of public records that relate to performance of such duties does not impinge on that right."  *Sullivan v. Univ. of Washington*, 60 F.4th 574, 576 (9th Cir. 2023).

On remand, the district court granted another preliminary injunction based on the plaintiffs' amended complaint.  *Sullivan v. Univ. of Washington*, No. 2:22-CV-00204-RAJ, 2023 WL 3224495, at *2 (W.D. Wash. May 3, 2023).  The court concluded that the plaintiffs showed a likelihood of success on the merits as to their claim that the release of information would violate their Washington and federal constitutional rights to personal security and bodily integrity and informational privacy.  *Id.* at *3–4.  PETA again appealed.  The Ninth Circuit concluded that Jane Sullivan and P. Poe 1 lacked standing.  *Sullivan v. Univ. of Washington*, No. 23-35313, 2023 WL 8621992, at *1 (9th Cir. Dec. 13, 2023).  The Ninth Circuit held that "Sullivan cannot demonstrate redressability because she cannot represent the IACUC's institutional interests in her role as the chair of the IACUC" and her identity is already known. *Id.*  And it held that P. Poe 1 could not show redressability because the record reflected that UW already responded to a PRA request from PETA that disclosed the names and emails of "almost all" IACUC members on March 4, 2021.  *Id.*  P. Poe 1 did not furnish any information showing that their information was not disclosed on March 4, 2021, so the Ninth Circuit held that P. Poe 1 did not meet their "burden of establishing subject matter jurisdiction."  *Id.* (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).  The court did not opine on the merits of the preliminary injunction.  The court vacated the injunction and remanded with instructions to dismiss the case.  *Id.* at *2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

C.      The Present Case

Plaintiffs now bring this case because UW has informed IACUC members that it intends to respond to public records requests without redacting the names of the committee members, because there is no longer a preliminary injunction barring disclosure.  Dkt. # 3 at 4.

## III

### DISCUSSION[2]

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008).  To obtain a preliminary injunction, a plaintiff must show that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of" a preliminary injunction"; (3) "the balance of equities tips in [their] favor"; and (4) a preliminary injunction "is in the public interest."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter,* 555 U.S. at 20) (these are called the *Winter* factors).[3]

---

[2]  No party argues that Plaintiffs lack standing.  But the Court may raise the issue sua sponte and must dismiss the case if it concludes that Plaintiffs lack standing.  *See Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002).  In the previous iteration of this case, the Ninth Circuit dismissed the case for lack of standing on the part of Sullivan and P. Poe 1.  *Sullivan v. Univ. of Washington*, No. 23-35313, 2023 WL 8621992, at *1 (9th Cir. Dec. 13, 2023).  But neither Sullivan nor P. Poe 1 is a party to this case.  Here, Jane Sullivan's declaration says, "To my knowledge, the identity of P. Poe 5 as a member or alternate of the UW IACUC has never been publicly disclosed in response to a Public Records Act request, or otherwise."  Dkt. # 5 at 1.  And there is no evidence to the contrary.  Thus, the Court may not dismiss this case on standing grounds.

[3]  The Ninth Circuit has also held that "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied."  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).  But because Plaintiffs have shown a likelihood of success on the merits, the Court need not apply this alternative standard.

A.    Likelihood of Success on the Merits

Plaintiffs say that publicly releasing their names in association with the IACUC would violate their constitutional right to "informational privacy."  Dkt. # 3 at 19.  "While the Supreme Court has expressed uncertainty regarding the precise bounds of the constitutional 'zone of privacy,' its existence is firmly established."  *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999). The Ninth Circuit recognizes "at least two distinct kinds of constitutionally-protected privacy interests: 'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.'"  *Id.* (quoting *Doe v. Att'y Gen.,* 941 F.2d 780, 795 (9th Cir.1991)); *see Doe v. Garland*, 17 F.4th 941, 946 (9th Cir. 2021) ("[T]he Supreme Court also identified the somewhat elusive interest in 'avoiding disclosure of personal matters' as a privacy interest protected by the Constitution." (citing *Whalen v. Roe*, 429 U.S. 589 (1977))); *see also Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 138 (2011) (assuming without deciding "that the Constitution protects a privacy right of the sort mentioned in *Whalen* and *Nixon*").

1.    The right to informational privacy

This case concerns the first type of privacy interest, often called the right to informational privacy.  *In re Crawford*, 194 F.3d at 958.  The Court must first determine whether the information at issue—Plaintiffs' names in association with the IACUC—implicates the constitutional right to informational privacy.  *See Doe by & through Tanis v. Cnty. of San Diego*, 576 F. Supp. 3d 721, 732 (S.D. Cal. 2021).

Intervenor-Defendants argue that a name is not "sufficiently personal" to warrant constitutional protection.  Dkt. # 24 at 14 (quoting *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 944 (9th Cir. 2009), *abrogated on other grounds by Rotkiske v. Klemm*, 589 U.S. 8

(2019)).  The right to informational privacy "covers a wide range of personal matters," which include, but is not limited to, "sexual activity, medical information, and financial matters." *Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 877 (9th Cir. 2008), *rev'd on other grounds and remanded*, 562 U.S. 134 (2011).  "Although it is true that names and addresses, in general, may not trigger the constitutional right to informational privacy, the Ninth Circuit has made clear, 'it will be the overall context, rather than the particular item of information, that will dictate the tipping of the scales.'"  *Doe by & through Tanis v. Cnty. of San Diego*, 576 F. Supp. 3d at 733 (quoting *Crawford*, 194 F.3d at 959).  Thus, in certain contexts individuals do have a protected right to informational privacy in their name.

Intervenor-Defendants also argue that membership on the IACUC is not personal because the IACUC is a public-facing committee governing animal research at a public institution.  Dkt. # 24 at 15.  But the IACUC members' interest in protecting themselves and their families from harassment and threats at home and outside the context of their service on the committee is personal.  In other contexts, courts have recognized privacy interests in the names and identifying information of public employees.  *See Tschida v. Motl*, 924 F.3d 1297, 1304 (9th Cir. 2019) (recognizing that the "protection of certain kinds of personal information about unelected public employees is a compelling interest").

In *Wood v. F.B.I.*, the Second Circuit held that the names of F.B.I. employees working on a specific investigation were private and subject to the FOIA exemption from disclosure of personal information that "would constitute a clearly unwarranted invasion of personal privacy." 432 F.3d 78, 85 (2d Cir. 2005).  The court held that the employees' identities must not be disclosed because they could be subject to "harassment or unofficial questioning in the conduct of their official duties or private lives."  *Id.* at 88.

In the context of this case, Plaintiffs seek to protect their names in association with their service on the IACUC to protect themselves and their families from personal harassment. *See* Dkt. # 5 at 3 (describing threatening text messages that Dr. Michele Basso, the director of the Washington National Primate Research Center, received on her *personal* cell phone); *id.* at 4 ("Dr. Basso also has reported to the University of Washington community that she continues to receive a variety of harassing communications, including but not limited to un-requested magazine subscriptions for magazines with menacing-looking military and weapons themes."); *id.* at 5 (Dr. Christine Lattin, who is not affiliated with UW, received death threats and messages urging her to kill herself for her work with animal research; a news article about the harassment "states when Dr. Lattin 'moved into her new home with her husband and their infant child, her neighbors received letters from PETA with her name and home address to try to make her feel "unwelcome and unsafe." ' "); Dkt. # 4 at 40 (explaining that animal rights activists have picketed outside the *homes* of two UW IACUC members); *id.* at 41 ("Many University of Washington IACUC members and alternates have expressed concerns to me about their personal safety, as well as the safety of the people and animals they live with, if their names are released.") *id.* at 52 (Dr. Jane Sullivan stated that during the public comment period for an IACUC meeting, an animal rights activist learned the names of Dr. Sullivan's cats and asked her "how [she] would feel if [her] cats were subjected to "spinal-cut research" . . . . This person has used the names of my cats in multiple such meetings. I believe this was intended in part to show IACUC members that opponents of animal research are capable of gathering sensitive private information to use against them").

Plaintiffs seek to protect their personal lives from the implications of their professional lives. While in some contexts individuals' names may not implicate the right to privacy; here, in

1    the context of the specific and personal threats and harassment, they do implicate the

2    constitutional right to informational privacy.

3        In *Doe by and through Tanis v. County of San Diego*, the court determined that the

4    plaintiff, a minor who reported that she was sexually assaulted by a county corrections officer,

5    had a constitutionally protected right to informational privacy in her name, address, school

6    address, and picture contained in the police report about the incident, even though this

7    information associated with police report is generally not protected.  *Doe by & through Tanis v.*

8    *Cnty. of San Diego*, 576 F. Supp. 3d at 734; *see Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d

9    1041, 1045 (9th Cir. 1994) ("By reporting a potential crime to the police, Gini could not

10   reasonably expect the information to remain secret.").  The court considered a variety of factors

11   in distinguishing the case, including that when Doe reported the crime, she had an expectation

12   that her name and identifying information would remain private and confidential.  Similarly,

13   here, because UW IACUC keeps the names of its members private, when individuals joined the

14   committee, they had an expectation of privacy.

15       In considering whether a right to informational privacy exists, courts look at the

16   importance that society places on keeping the information at issue private.  In *In re Crawford*, in

17   holding that the plaintiff had a constitutionally protected privacy interest in non-disclosure of his

18   Social Security number, the court reasoned that "judicial and legislative actions in other contexts

19   also support the conclusion that disclosure . . . . can raise serious privacy concerns."  194 F.3d at

20   958.

21

22

23

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Here, federal regulations of the IACUC allow institutions to keep the names of the IACUC members confidential.[4]  Public Health Service Policy on Humane Care and Use of Laboratory Animals (PHS 2015), (V)(A)(3)(b) n.6, https://olaw.nih.gov/policies-laws/phs-policy.htm ("Institutions may, at their discretion, represent the names of members other than the chairperson and veterinarian with program authority (see IV.A.3.) by using numbers or other symbols in submissions to OLAW.").  In one of Jane Sullivan's declarations, she asserted that "a substantial majority of large institutions, that receive the lion's share of funding from the National Institutes of Health, do not make the names of their IACUC members public."  Dkt. # 4 at 85.  Further, the District Court in the District of Columbia recognized that individuals involved with animal research have a privacy interest in their names not being disclosed under a FOIA disclosure exemption because "the release of these individuals' names, locations, or offices make them vulnerable to 'potential attack, harassment or threatening behavior.'"  *White Coat Waste Project v. United States Dep't of Veterans Affs.*, 443 F. Supp. 3d 176, 191 (D.D.C. 2020).

Washington legislative actions have also recognized that disclosure of the names of individuals involved in animal research can raise privacy concerns.  The Washington Legislature recognized the threats that individuals working in animal research may face when it enacted RCW 2.24.580, allowing "[a]ny individual who owns or is employed at a research or educational facility or an agricultural production facility where animals are used for research, educational, or agricultural purposes who is harassed, or believes that he or she is about to be harassed, by an organization, person, or persons whose intent is to stop or modify the facility's use or uses of an

---

[4] Intervenor-Defendants argue that the Policy is not a binding federal regulation.  But the Policy is incorporated by reference into federal regulations as a requirement for federal funding.  *See* 42 C.F.R. § 52.8; 42 C.F.R. § 52a.8.  Thus, the terms of the Policy are binding on all institutions that receive funding for animal research.

animal or animals, [to] apply for injunctive relief to prevent the harassment."[5]  In its policy statement accompanying the bill, the Legislature stated that "[t]here has been an increasing number of illegal acts committed against animal production and research facilities involving injury or loss of life to animals or humans, criminal trespass, and damage to property."  RCW 9.08.080; *see also Progressive Animal Welfare Soc. v. Univ. of Washington (PAWS II)*, 125 Wash. 2d 243, 263–64, 884 P.2d 592, 603–04 (1994) ("Quite clearly, the Legislature intended to forestall the kinds of threats, harassment, and intimidation that have become all too familiar to those attempting to carry out legitimate biomedical research.").  The foregoing illustrates the importance of this privacy. [6]

Last, Intervenor-Defendants highlight that some IACUC members disclose their membership publicly, through professional bios, CVs, or social media.  Dkt. # 24 at 15; Dkt. # 26 at 7.  They argue that this shows that the association with the IACUC is not a private matter.  Dkt. # 24 at 15.  But the Court is unaware of any authority supporting this proposition.  *Mangum v. Action Collection Serv., Inc.,* cited by Intervenor-Defendants, turned on the plaintiff's individual decision to place what may otherwise be protected financial information "into the stream of commerce."  575 F.3d at 943.  The court there reasoned, "It is one thing to say that a person has a privacy right and can refuse to give out personal information when asked.  It is quite another thing to say that having sent a negotiable instrument into the stream of commerce, the person has a privacy right to preclude others from obtaining information that is found upon the

---

[5] Plaintiffs argue in the alternative that they are likely to succeed on the merits because RCW 2.24.580 serves as an "other statute" exemption to the PRA.  Dkt. # 3 at 23.  Defendants argue that RCW 2.24.580 is not an exemption to the PRA.  Dkt. # 29 at 10.  Intervenor-Defendants argue that RCW 2.24.580 is unconstitutional because it violates their First Amendment rights.  Dkt. # 24 at 21.  As mentioned below, the Court does not address whether RCW 2.24.580 provides Plaintiffs a basis for relief.  This order cites RCW 2.24.580 merely to illustrate the importance of the privacy right at issue.

[6] To be sure, the Court hesitates to—with the stroke of a pen—upset the regulatory and legislative environment outlined above.

instrument itself." *Id.* at 944.  While individuals who have chosen to disclose their membership in IACUC publicly may no longer have a constitutionally protected privacy interest, no party argues that P. Poe 5 publicly disclosed their membership on the committee.  The unilateral actions of other IACUC members  have no bearing on whether Poe 5 has a constitutional right to informational privacy.

       2.       Deprivation of the right to informational privacy

Once a court determines that public disclosure of information at issue may implicate the constitutional right to privacy, it must "'engage in the delicate task of weighing competing interests' to determine whether the government may properly disclose private information." *In re Crawford*, 194 F.3d at 959 (quoting *Doe v. Attorney Gen.*, 941 F.2d at 796).  The right to informational privacy "may be infringed upon a showing of proper" public interest.  *Id.*  Those seeking disclosure must show that public disclosure of the constitutionally protected information "would advance a legitimate state interest and that its actions are narrowly tailored to meet the legitimate interest."  *Id.*

"[T]he relevant considerations will necessarily vary from case to case" and "it will be the overall context, rather than the particular item of information, that will dictate the tipping of the scales."  *Id.*  Some factors the Court may consider include:

> [T]he type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Id.* (quoting *Doe v. Attorney Gen.,* 941 F.2d at 796).  But this list is not exhaustive.  *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

According to Plaintiffs, members of the IACUC, and individuals at UW and other academic institutions who engage in animal research, often face harassment and threats from animal rights activists.  Dkt. # 4 at 40.  As discussed above, Plaintiffs' motion and supporting materials provide numerous examples.  *See, e.g.*, Dkt. # 4 at 52 (Declaration of Dr. Jane Sullivan recounting how animal rights activists discovered the names of Dr. Sullivan's cats and made a public comment in an IACUC meeting suggesting that the cats be animal research subjects); Dkt # 5 at 2–6 (Declaration of Dr. Jane Sullivan describing two incidents of personal harassment of animal researchers by PETA).  The injury to Plaintiffs could be significant if their names are disclosed in association with the IACUC.  *See White Coat Waste Project*, 443 F. Supp. 3d at 191; *PAWS II*, 125 Wash. 2d at 263–64, 884 P.2d at 603–04.  The potential harm extends beyond the professional setting—animal researchers at UW and beyond have experienced harassment and threats at their homes and in their personal lives.

In *In re Crawford*, the Ninth Circuit held that "[t]o weigh properly the privacy interest involved, the dire consequences of [harassment and threats] must be discounted by the probability of its occurrence."  194 F.3d at 959.  In that case, the court held that, while the severity of the harm of identity theft from disclosure of a social security number is significant, the likelihood of its occurrence is low.  *Id.*  Here, the likelihood of personal harassment and threats is higher.  PETA and NARN specifically sought out IACUC members' personally identifying information in a prior iteration of this case.  See *Sullivan v. Univ. of Washington*, 60 F.4th at 578.  Further, Jane Sullivan made clear that members of the UW IACUC have been personally harassed and fear future harassment.  Dkt # 5 at 2–6.  That some members publicly associate with the IACUC does not discount others' concerns, as individuals may approach risks

of harassment in their personal life differently depending on the circumstances of their lives (for example, whether they have children at home).[7]

The PRA generally favors disclosure of public records in the interest of government transparency. RCW 42.56.030. But both Washington state and the federal government have recognized that disclosure of the identities of animal researchers is sensitive information that is not always appropriate for public disclosure under FOIA and the PRA. *See White Coat Waste Project*, 443 F. Supp. 3d at 191; *PAWS II*, 125 Wash. 2d at 263–64, 884 P.2d at 603–04.

Intervenor-Defendants argue that they need public access to the identities of the IACUC members because "[t]here is reason to doubt whether the UW IACUC is and has been legally constituted." Dkt. # 24 at 8. Intervenor-Defendants argue that they need access to this information to hold UW accountable. *Id.* While government accountability is an important interest, there are already many ways that the public can hold the UW IACUC accountable for its actions because the committee's proceedings and reports are public, and public comment is accepted during the IACUC meetings. *See* Dkt. # 4 at 41. Thus, the degree of need for public access to the specific information at issue here is relatively low.

On balance, the potential harm of releasing the names greatly outweighs the relatively minor benefit of public disclosure in an otherwise very transparent organization. Thus, Plaintiffs have shown a likelihood of success on the merits as to the federal constitutional claim.[8]

---

[7] Individuals PETA identified as disclosing membership on the IACUC were among those whose names were already released by UW.

[8] Because the Court finds a likelihood success on the merits as to the federal constitutional claim, the Court does not reach the merits of Plaintiffs' claims based on the Washington constitution and RCW 4.28.580.

ORDER - 14

1

2

B.    Remaining *Winter* Factors

        Plaintiffs have shown a likelihood of irreparable harm if their identities are disclosed.

Once a Plaintiff's information is public, the harm cannot be remedied by court action.  Plaintiffs

have also shown that they are likely to suffer personal threats or harassment, both at work and at

home, if their names are disclosed.

        The balance of equities supports a preliminary injunction as the hardship to Plaintiffs if

their names are disclosed is significant, while the burden of redacting PRA documents on UW is

minimal at this stage.  *See League of Wilderness Defs./Blue Mountains Biodiversity Project v.*

*Connaughton*, 752 F.3d 755, 765 (9th Cir. 2014) ("However, we conclude that the balance of

equities tips toward the LOWD plaintiffs, because the harms they face are permanent, while the

intervenors face temporary delay.").  Further, PETA and NARN "both stated that at this time

they would accept redacted documents and are not currently requesting the identities of the

committee members." Dkt. # 3 at 17.  UW, however, has said that it will not redact the

committee member names from the requested documents unless forced to do so by court order.

*Id.*

        While there is a public interest in disclosure, that interest does not weigh heavily in favor

of denying the preliminary injunction, especially because the IACUC is otherwise transparent in

its proceedings.  Further, there is a public interest in having qualified members on the IACUC

overseeing animal research at UW.  *See* Dkt. # 5 at 41 (Dr. Jane Sullivan stating that she "is

concerned about [the IACUC's] ability to recruit and retain members" if their identities are made

public).  Thus, the additional *Winter* factors support the requested equitable relief.

IV

CONCLUSION

The Court GRANTS Plaintiffs' Motion for Preliminary Injunction.  Dkt # 3.  The Court preliminarily ENJOINS Defendants as follows:

(1) Pending further order of this Court, Defendants are enjoined from disclosing the personally identifying information of Plaintiffs and putative class members—specifically, any current or former member or alternate member of the UW IACUC—in response or in relation to any request under Washington's PRA, whether in documents or communications relating to the IACUC, in documents or communications relating to the PRA requests, or otherwise, if such disclosure would identify any such individual as associated with the UW IACUC.  Consistent with this Order, Defendants may produce redacted versions of the requested documents.  But before producing such documents, Defendants must confer with Plaintiffs to ensure that the redactions fully adhere to this Order.

(2) Although a bond may be required when granting injunctive relief, the Court declines to require a bond.  *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999) ("The district court is afforded wide discretion in setting the amount of the bond."); *Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000) (finding that the bond amount may be zero if there is no evidence the party will suffer damages from the injunction).

(3) The preliminary injunction will be effective on the day this Order is filed and will remain in effect until the Court determines whether to grant Plaintiffs' request for a permanent injunction.

Dated this 29th day of March, 2024.

John H. Chun
United States District Judge