1

The Honorable John H. Chun

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9

P. POE 5, and P. POEs 2 through 4 and 6
through 75, individually and on behalf of
others similarly situated,

10

No. 2:24-CV-00170-JHC

11

Plaintiffs,

**PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**

12

v.

**Noted on motion calendar:
March 24, 2025**

13

THE UNIVERSITY OF WASHINGTON, a
Washington public corporation; PERRY
TAPPER, Director of Public Records and
Open Public Meetings at the University of
Washington, in their official capacity,

14

15

16

Defendants,

17

18

and

19

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC., a
Virginia nonstock corporation, and
NORTHWEST ANIMAL RIGHTS
NETWORK, a Washington nonprofit
corporation,

20

21

22

Intervenor-Defendants.

23

24

25

26

27

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

1

**TABLE OF CONTENTS**

2                                                                          **PAGE**

3   I.      INTRODUCTION ..................................................................................1

4   II.     FACTUAL BACKGROUND ................................................................3

5           A.    This Court's previous findings of fact were not disturbed by the Ninth Circuit. ....3

6
            B.    Animal research opponents continue to oppose UW animal research,
7                 the IACUC, and Plaintiffs' efforts to protect their identities..................................4

8   III.    ARGUMENT ........................................................................................6

9
            A.    Plaintiffs are entitled to a preliminary injunction under the PRA
10                and RCW 4.24.580 ..................................................................................6

11                1.    The Washington Supreme Court has twice held RCW 4.24.580
12                      is a valid "other statute" for PRA purposes. ..................................6

13                2.    Plaintiffs' requested PRA injunction is based on the PRA
                        injunction standard (or the federal injunction standard), not
14                      the language of RCW 4.24.580.............................................................7

15                3.    Plaintiffs are subject to "harassment as defined under
16                      the anti-harassment statute" ................................................................9

17                4.    Plaintiffs are entitled to an injunction under either
                        the PRA injunction standard or the federal injunction standard.. ..............10
18
            B.    PETA has no constitutional argument against RCW 4.24.580
19                that is sufficient to deny Plaintiffs' requested relief. ..............................................12

20
                  1.    PETA has no as-applied constitutional claim to access records
21                      that the State has exempted from disclosure.............................................12

22                2.    PETA and NARN lack standing to challenge RCW 4.24.580,
23                      even under a First Amendment overbreadth claim. ..................................13

24                3.    Even if PETA/NARN had standing, RCW 4.24.580 is constitutional.......16

25                4.    Even if RCW 4.24.580 were unconstitutional as a restriction
                        on speech, it can and should also remain in effect as a public
26                      disclosure exemption. ..........................................................................18

27

PLAINTIFFS' REPLY RE:
MOTION FOR PRELIMINARY INJUNCTION - i
P. POE 5, ET AL. v. UNIVERSITY OF WASHINGTON, ET AL.
NO. 2:24-CV-00170-JHC

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

C.    Plaintiffs are entitled to an injunction based on federal preemption. ....................21

D.    Plaintiffs are entitled to an injunction based on Plaintiffs'
rights of informational privacy. ..........................................................................23

IV.    CONCLUSION...............................................................................................................23

PLAINTIFFS' REPLY RE:
MOTION FOR PRELIMINARY INJUNCTION – ii
P. POE 5, ET AL. v. UNIVERSITY OF WASHINGTON, ET AL.
NO. 2:24-CV-00170-JHC

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

I.    **INTRODUCTION**

Plaintiff P. Poe 5, and Plaintiffs P. Poe 2 through 4 and 6 through 75 (as a proposed class), respectfully request this Court grant a preliminary injunction barring Defendants from releasing unredacted documents identifying Plaintiffs, under Washington's Public Records Act ("PRA").

Plaintiffs are entitled to an injunction on either of two legal grounds:

**First**, Plaintiffs are entitled to a preliminary injunction based on the PRA and RCW 4.24.580. The Washington Supreme Court has twice held that RCW 4.24.580 operates as an "other statute" exemption from PRA disclosure. It held the statute codifies the Legislature's intent to "forestall the kinds of threats, harassment, and intimidation that have become all too familiar to those attempting to carry out legitimate biomedical research," and that "researchers may seek to enjoin the release of certain portions of public records if the nondisclosure of those portions is necessary to prevent harassment as defined under the anti-harassment statute." Because Plaintiffs would be subject to such harassment if their identities were disclosed, the records identifying them are exempt from disclosure under RCW 4.24.580. Plaintiffs are entitled to a preliminary injunction against disclosure under the PRA (or the federal) injunction standard.[1]

Plaintiffs anticipate that Intervenor-Defendants PETA and NARN will again contend RCW 4.24.580 is unconstitutional, asserting it amounts to a content-based restriction on speech. This Court should reject any such arguments, for several reasons. As a threshold matter, because RCW 4.24.580 operates here as an exemption from PRA disclosure, it does not implicate the *speech* of PETA or anyone else. As the Supreme Court has repeatedly held, there is no constitutional right to the disclosure of records that have been exempted by law from disclosure. Consistent with the doctrine of constitutional avoidance, this Court may therefore grant Plaintiffs an injunction under the PRA *while declining to consider the constitutionality of any other potential application of RCW 4.24.580.*

---

[1] As discussed below, RCW 42.56.540 sets forth the PRA's *permanent* injunction standard, which the Washington Supreme Court has distinguished from a preliminary injunction. However, the federal preliminary injunction standard likely applies here. Regardless, Plaintiffs satisfy any of these standards.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 1
P. POE 5, ET AL. v. UNIVERSITY OF WASHINGTON, ET AL.
NO. 2:24-CV-00170-JHC

**GOLDFARB & HUCK**
**ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

Even if the Court were to consider a PETA/NARN argument that RCW 4.24.580 is an unconstitutional content-based restraint on speech, PETA/NARN continue to lack standing to bring any such challenge, because there is no reasonable threat of the statute being enforced against their *speech*. Even if they had standing, the statute is constitutional; it applies to conduct and threats that may legally be prohibited, it authorizes only a civil injunction rather than criminal prosecution, and it is sufficiently tailored and not impermissibly vague.

Finally, even if the Court were to conclude RCW 4.24.580 involves an unconstitutional content-based restriction on speech, that *neither strikes the statute from existence nor ends the Court's inquiry*. Following a finding of unconstitutionality, the Court must then assess the *extent* to which the statute may remain viable, including under the savings clause enacted by Washington's Legislature. In doing so, the Court should "try not to nullify more of a legislature's work than is necessary," because "[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329, 126 S. Ct. 961 (2006). The Court need not literally "sever" or strike provisions deemed unconstitutional, but can judicially limit the *scope* of the statute to constitutional applications. The Supreme Court has followed this approach in numerous cases, as did a Fourth Circuit case previously cited here by PETA. Thus, even if RCW 4.24.580 were held unconstitutional as a content-based speech restriction, it can and should remain a viable exemption from PRA disclosure under Washington law.

**<u>Second</u>**, if Plaintiffs are not entitled to an injunction against disclosure *pursuant to* the PRA, Plaintiffs are entitled to an injunction *against* the PRA, on the grounds the PRA is preempted by federal law. Federal law and regulation allows most IACUC members to serve anonymously, in order to avoid threats from animal research opponents. To the extent the PRA nonetheless requires disclosure, the PRA stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, and/or interferes with the methods by which the federal statutes, regulations, and policies were designed to reach their goal. To that extent, it is preempted under the Supremacy Clause of the U.S. Constitution.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 2
P. POE 5, ET AL. v. UNIVERSITY OF WASHINGTON, ET AL.
NO. 2:24-CV-00170-JHC

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## II.    FACTUAL BACKGROUND

### A.    This Court's previous findings of fact were not disturbed by the Ninth Circuit.

In its Order Granting Preliminary Injunction, this Court made detailed findings of fact in support of its decision. *See* Dkt #45 (April 3, 2024, Amended Order). These included noting "numerous examples" submitted by Plaintiffs, *id.* at 13, of harassment directed at UW personnel and others in their personal lives, such as: threatening text messages sent to the personal cell phone of Dr. Michele Basso, as well as threatening mailings sent to her; an extensive, PETA-led campaign of harassment against Dr. Christine Lattin during her time at Yale and Louisiana State University, including public identification of her home address and subsequent death threats directed to her at her home; protests targeting UW researchers' homes; and an IACUC meeting attendee's obtaining the names of Dr. Sullivan's cats and repeatedly using the names in public comment periods. The Court also acknowledged the ongoing concerns of UW IACUC members and alternates that they will be subjected to harassment if their identities are released, and the likely harms and impairment to the functioning of the committee that would result. *Id.* at 8, 13. The Court further noted PETA "specifically sought out IACUC members' personally identifying information in a prior iteration of this case." *Id.*[2] Plaintiffs submitted other examples, including repeated accusations by various research opponents that IACUC members and UW researchers are equivalent to Nazis and perpetrators of the Holocaust. *See* Dkt #3, at 7-10.

PETA's interlocutory appeal attacked this Court's factual findings, claiming they constituted "reversible error" and "clear error," including "by relying solely on" evidence "cherry-picked" by Plaintiffs. *See P. Poe 5 et al. v. University of Washington et al.*, 9th Cir. No. 24-2765, Dkt #4.1 (Appellants' Opening Brief), at 33-35. Although the Ninth Circuit ruled in favor of PETA/NARN on the *legal* issue of whether Plaintiffs could state a constitutional right of informational privacy, it declined PETA's invitation to disturb any of this Court's factual

---

[2] As Plaintiffs pointed out, PETA used this litigation to attempt to identify additional IACUC members, and proudly announced its decision to openly file in the pleadings those members' names it discovered (*see* Dkt #36, at 4-5).

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

findings (and declined all of PETA's other purported grounds for appeal). *See P Poe 5 v. Univ. of Washington*, No. 24-2765, 2024 WL 4971971 (9th Cir. Dec. 4, 2024).

PETA has vigorously attacked this Court's factual findings during each of its three interlocutory appeals (here and in *Sullivan*), yet the Ninth Circuit has never overruled any of those findings. To the contrary, the Ninth Circuit's 2023 concurrence noted IACUC members "prefer to remain anonymous because of concerns about their personal safety and the safety of their families and pets if their names are released. When it comes to organizations like PETA, these concerns may be well-founded," because "PETA is open about using controversial tactics to gain media attention." *Sullivan v. Univ. of Washington*, 60 F.4th 574, 582 (9th Cir. 2023) (cleaned up) (Fitzwater, D.J., concurring).

**B.    Animal research opponents continue to oppose UW animal research, the IACUC, and Plaintiffs' efforts to protect their identities.**

During 2024, while PETA/NARN's interlocutory appeal was pending, Dr. Elizabeth Buffalo of the UW's primate research center was the subject of a PETA protest while speaking at the University of Pittsburgh. According to PETA's press release, Dr. Buffalo is "a troubled monkey tormentor" whose work "supposedly to learn about the neurobiology of human aging" achieved only "the merciless decline of a lonely, sick, and cancer-ridden monkey" and allegedly "thousands" of others. Declaration of Dr. Jane Sullivan, ¶4, Ex. A (September 5, 2024 PETA press release). PETA reported its supporters "shout[ed] Elizabeth Buffalo has blood on her hands!" and were "tackled by police and arrested." *Id*. The UW IACUC thus "continue[s] to be concerned about possible actions by animal research opponents, including persons who might be independently inspired by PETA's allegations." Sullivan Decl., ¶5.

The Ninth Circuit issued its decision reversing this Court's preliminary injunction on December 4, 2024 (2024 WL 4971971). Dr. Sullivan states "[t]here appeared to be little media coverage of [that] decision, but PETA issued a press release about it, and PETA may have sent a similar message to its supporters." Sullivan Decl., ¶7, Ex. C. The PETA press release stated "Who sits on these committees… and what they do is everyone's business, and these individuals cannot

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 4
P. POE 5, ET AL. v. UNIVERSITY OF WASHINGTON, ET AL.
NO. 2:24-CV-00170-JHC

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

1    simply choose to operate in secrecy… If the oversight body is improperly constituted, it is

2    operating illegally and should have no authority to approve animal experiments." *Id.*

3           Eight days later, an email was sent to the UW's Office of Animal Welfare stating:

4           Who are the University of Washington's (UW) Institutional Animal Care and Use

5           Committees members it was disclosed in a court case for the names to be released
             but that information does not seem to be available please respond back with a list

6           of names many also willing to wait out side of [LOCATION REDACTED] for
             those who come and go out of that building walk grounded (please )

7           Your own regards of compliancy in best interest- canis lupus

8    Sullivan Decl. ¶¶6-7, Ex. B.[3] According to Dr. Sullivan, "Although the December 13 email to

9    UW does not contain explicit threats, the menacing tone and 'canis lupus' sign off was very

10   frightening for me and other UW IACUC members who were targeted in the message. Canis

11   lupus is the scientific name for a wolf, which is also significant for security reasons due to threats

12   associated with 'lone wolf' attackers. After discussion with others in the UW animal care

13   community, we decided to cancel the December IACUC meeting, which was scheduled for

14   Thursday Dec 19, 2024[.]" Sullivan Decl., ¶8. After consulting with the UW Police and FBI, the

15   January IACUC meeting was held with the in-person public viewing location moved to UW

16   Police offices. *Id.* ¶¶9-10.

17          The email suggests "many" persons are "willing to wait out side of" the building where

18   the IACUC meeting was purportedly being held. Plaintiffs note PETA previously argued to the

19   Ninth Circuit that Plaintiffs' goal in bringing this lawsuit is "to prevent people with whom

20   [Plaintiffs] disagree from speaking to them outside of the context of an IACUC meeting's public

21   comment period[.]" PETA Reply Brief (Dkt #27, filed June 20, 2023) at 15, in *Sullivan*, 9th Cir.

22   No. 23-35313.

23

24

25

26

27          [3] As the Sullivan Declaration states, although the email came from an address with a name, it is unknown
      whether that name is an actual person, or the actual sender, and accordingly is redacted.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 5
P. POE 5, ET AL. v. UNIVERSITY OF WASHINGTON, ET AL.
NO. 2:24-CV-00170-JHC

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

III.    **ARGUMENT**

A.    **Plaintiffs are entitled to a preliminary injunction under the PRA and RCW 4.24.580.**

In the first interlocutory appeal in *Sullivan*, the Ninth Circuit noted the PRA is "subject to a wide range of statutory exemptions," and that the State of Washington has authority to curb "required disclosures of personal information that could place at risk members of committees such as this one." *Sullivan v. Univ. of Washington*, 60 F.4th 574, 582-83 (9th Cir. 2023) (Fitzwater, D.J., concurring). The State has in fact enacted such a statute, as the Washington Supreme Court has recognized.

1.    **The Washington Supreme Court has twice held RCW 4.24.580 is a valid "other statute" for PRA purposes.**

RCW 4.24.580 provides (in part):

> Any individual who owns or is employed at a research or educational facility or an agricultural production facility where animals are used for research, educational, or agricultural purposes who is harassed, or believes that he or she is about to be harassed, by an organization, person, or persons whose intent is to stop or modify the facility's use or uses of an animal or animals, may apply for injunctive relief to prevent the harassment.

*Id*. The Washington Supreme Court has twice addressed RCW 4.24.580 and twice concluded it constitutes a valid "other statute" for PRA exemption purposes. In *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 257 (1994)) ("*PAWS II*"), the court held that through 4.24.580, "[q]uite clearly, the Legislature intended to forestall the kinds of threats, harassment, and intimidation that have become all too familiar to those attempting to carry out legitimate biomedical research. We hold that researchers may seek to enjoin the release of certain portions of public records if the nondisclosure of those portions is necessary to prevent harassment as defined under the anti-harassment statute." *PAWS II*, 125 Wn.2d at 263.

In 2016, the Washington Supreme Court explicitly affirmed RCW 4.24.580 is a valid "other statute" for PRA purposes. *See Doe v. Washington State Patrol*, 185 Wn.2d 363, 376-78, 385 n.5 (2016). *Doe* concerned whether a sex offender community notification statute constituted an "other statute" for PRA purposes. In holding it was not, the court specifically rejected dissenting

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

1    justices' argument "that under our holding, both *Hangartner* [*v. City of Seattle*, 151 Wn.2d 439,

2    453 (2004)] and *PAWS II* would have [had] a different result." *Id*. at 385 n.5. "Not so," held the

3    court, stating that Washington's Uniform Trade Secrets Act ("WUTSA") reflected legislative

4    intent authorizing injunctions to protect the confidentiality of information, and *"[t]he same is true

5    of the antiharassment statute*.") *Id*. at 385 n.5 (emphasis added).

6    PETA previously claimed "subsequent case law has called th[e] reasoning [of *PAWS II*]

7    into doubt," *see* Dkt #24, at 15 n.4. PETA cited a 2017 opinion by the Washington Court of

8    Appeals purportedly suggesting "*PAWS II* is inconsistent with" *Doe*. *Id*. (citing *SEIU 775 v.

9    DSHS*, 198 Wn. App. 745, 755-56 (2017)). But that argument cannot be correct, because the

10   Supreme Court in *Doe* specifically held 4.24.580 remains a valid "other statute" under the *Doe*

11   majority's reasoning. It appears likely the Court of Appeals in *SEIU 775* simply missed footnote

12   5 of *Doe*. Regardless, *SEIU 775* has never been cited on this point nearly eight years later,

13   whereas both *PAWS II* and *Doe* remain controlling Washington law. Under *PAWS II*, RCW

14   4.24.580 has now been construed as a PRA "other statute" for more than thirty years. The

15   legislature "is presumed to be aware of judicial interpretation of its enactments," *see State v.

16   Blake*, 197 Wn.2d 170, 190 (2021); *id*., citing *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 147

17   (2004) ("given that history of legislative acquiescence, the power to change our decision rested

18   solely with the legislature.").

19           **2.      Plaintiffs' requested PRA injunction is based on the PRA injunction
                 standard (or the federal injunction standard), not the language of RCW
20               4.24.580.**

21           Defendants have previously argued that to obtain a preliminary injunction based on RCW

22   4.24.580, Plaintiffs must use and satisfy the *injunctive language* found within RCW 4.24.580 *itself*.

23   *Cf.* Dkt #29 (UW Response), at 10. That is incorrect. Plaintiffs are not seeking a preliminary

24   injunction against harassment by PETA under RCW 4.24.580. Rather, Plaintiffs are seeking a

25   preliminary injunction against *disclosure* by UW under the PRA, through RCW 42.56.540 (and/or

26   the federal preliminary injunction standard). The Washington Supreme Court has made clear that

27   in this situation, the PRA injunction framework applies.

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

RCW 42.56.540 is the PRA's injunction provision. Under Washington law, it governs injunctions based on both exemptions from disclosure found within the PRA, and in "other statutes." RCW 42.56.540 provides (in relevant part):

> The examination of any specific public record may be enjoined if, upon motion and affidavit by… a person who is named in the record or to whom the record specifically pertains, the superior court for the county in which the movant resides or in which the record is maintained, finds that such examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions.

*Id*. In *Lyft v. City of Seattle*, 190 Wn.2d 769 (2018), the Washington Supreme Court considered whether the City could be enjoined from disclosing Lyft's trade secret information in response to a public records request, based on an injunctive provision in the WUTSA, and whether "trade secrets must be protected from disclosure under the UTSA without regard to the PRA injunction standard." *Id*. at 784. The Court held "*PRA exemptions are recognized through operation of the PRA, not outside it*":

> Consistent with *PAWS*… we recognize that the PRA injunction statute provides the governing standard for considering whether trade secrets may be withheld from disclosure. Given the broad range of "other statutes" courts consider in connection with the PRA, consistent application of the PRA requires the consistent procedural operation *of the PRA injunction standard regardless of the exemption or "other statute" asserted*. After all, *PRA exemptions are recognized through operation of the PRA, not outside it.*

*Lyft*, 190 Wn.2d at 790 (emphasis added). Thus, a PRA injunction is based on RCW 42.56.540, not on injunctive-type language that may appear in an "other statute" such as the WUTSA, or RCW 4.24.580.

The Washington Supreme Court affirmed this principle very recently in *Does 1, 2, 4, & 5 v. Seattle Police Dep't*, --- P.3d ----, 2025 WL 522274 (Wash. Feb. 13, 2025). It held "RCW 42.56.540 creates the injunctive remedy which allows a superior court to enjoin the release of specific public records if they fall within specific exemptions found elsewhere in the Act." *Id*. at *7 (cleaned up, citing *PAWS II*). "Obtaining an injunction under RCW 42.56.540 requires two steps: 'First, the court must determine whether the records are exempt under the PRA or an

1  'other statute' that provides an exemption in the individual case. Second, it must determine

2  whether *the PRA injunction standard* is met.'" *Id*. (emphasis added) (citing *Lyft*, 190 Wn.2d at

3  789-90) (holding the PRA standard "applies regardless of whether the exemption at issue is

4  expressly set out in the PRA or incorporated via an 'other statute'").

5      Consistent with this, *PAWS II* held "researchers may seek to enjoin the release of certain

6  portions of public records… to prevent harassment *as defined* under the anti-harassment statute."

7  *Id.*, 125 Wn.2d at 263 (emphasis added). *PAWS II* did not hold a plaintiff would have to obtain an

8  injunction "*under*" the anti-harassment statute to block the release of records.

9      Under *Does 1*, *Lyft*, and *PAWS II*, therefore, Plaintiffs are required to satisfy the

10  injunction standard of RCW 42.56.540, not to seek an injunction under RCW 4.24.580 itself.

11  However, the Washington Supreme Court has also made clear that the PRA injunction standard

12  from RCW 42.56.540 is a *permanent* injunction standard, not a preliminary injunction standard.

13  *See Washington Fed'n of State Emps. v. State*, 2 Wn.3d 1, 18 (2023) (citing *Lyft*, 190 Wn.2d at

14  785). In *WFSE*, the Washington Freedom Foundation had "requested the identities and

15  workplace contact information for public employees." Unions representing those employees

16  sued, arguing disclosure would harm the personal security of members who had been victims of

17  stalking and harassment. Both the Court of Appeals and the Washington Supreme Court held in

18  part that the unions presented insufficiently particularized evidence to support a permanent

19  injunction under RCW 42.56.540, "reversing summary judgment and permanent injunctive

20  relief." Yet both the Court of Appeals and the Supreme Court kept a *preliminary* injunction in

21  place in order to protect the employees in question while the parties litigated additional claims.

22  *WFSE*, 2 Wn.3d at 9-13, 18-21. Accordingly, although Plaintiffs satisfy the injunctive standards

23  of RCW 42.56.540, Plaintiffs are not required to make that showing in order to obtain a

24  preliminary injunction.

25      **3.    Plaintiffs are subject to "harassment as defined under the anti-harassment statute."**

26

27  RCW 4.24.580 defines "harassment" as follows:

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

(2) "Harassment" means any threat, without lawful authority, that the recipient has good reason to fear will be carried out, that is knowingly made for the purpose of stopping or modifying the use of animals, and that either (a) would cause injury to the person or property of the recipient, or result in the recipient's physical confinement or restraint, or (b) is a malicious threat to do any other act intended to substantially cause harm to the recipient's mental health or safety.

*Id.* Plaintiffs satisfy this standard.[4] As this Court found in its previous order granting a preliminary injunction, animal research opponents have been responsible for a variety of harassing communications including death threats directed at members of the UW research community, and elsewhere. These have included statements that researchers are "vile [expletive] humans," "I'm going to do what is necessary to stop animal research," and the text message to Dr. Basso stating "Looking fwd to seeing you in maine next week We are planning something special for you !!" PETA has chosen to publicize the home addresses of Dr. Lattin while calling for protests there, despite being aware this has resulted in ongoing death threats against her. *See* Dkt #5 (Sullivan TRO Decl.), ¶¶16-23 (Kathy Guillermo, PETA's Senior Vice President, quoted that she "doesn't agree with some of the vile language that's appeared in emails and Tweets [directed at Dr. Lattin], but *she supports its intent*, and says words don't equal action") (emphasis added). Under *PAWS II*, for purposes of the PRA, Plaintiffs sufficiently establish the nondisclosure of their information "is necessary to prevent harassment as defined under the anti-harassment statute." *Id.*, 125 Wn.2d at 263.

### 4. Plaintiffs are entitled to an injunction under either the PRA injunction standard or the federal injunction standard.

At least four of the circuits hold that in federal court, the federal injunction standard should apply even if a controversy is based on a state-law cause of action. *See, e.g., Schuler v. Adams*, 27 F.4th 1203, 1209 (6th Cir. 2022) (federal courts apply federal injunction standards while states may apply their own); *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010) ( "federal law governs the procedural questions when a preliminary injunction

---

[4] Alternatively, Plaintiffs submit that because this standard was written by the Legislature with the intent to pass constitutional muster when applied to enjoin actions by individuals or organizations perpetrating harassment, Plaintiffs should not be required to make precisely the same showing to invoke the statute as a PRA exemption, which does not present similar constitutional issues (see discussion below).

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 10
P. POE 5, ET AL. v. UNIVERSITY OF WASHINGTON, ET AL.
NO. 2:24-CV-00170-JHC

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

1  may issue and what standards of review we apply," even though "we analyze the substantive

2  legal questions" under state law); *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802,

3  811 (4th Cir. 1991) ("The grant of preliminary injunctions in diversity cases, as well as those of

4  original jurisdiction, is subject to federal standards"); *Instant Air Freight Co. v. C.F. Air Freight,*

5  *Inc.*, 882 F.2d 797, 799 (3d Cir. 1989) ("Rule 65(a)… contemplates a federal standard as

6  governing requests addressed to federal courts for preliminary injunctions"); 11A Fed. Prac. &

7  Proc., Availability of Injunctive Relief—Governing Law, § 2943 (3d ed.) (since FRCP 65(a) and

8  (b) "deal solely with the means by which a party can obtain the limited relief afforded by a

9  preliminary injunction or a temporary-restraining order, they merely provide procedures by

10  which the federal courts effectively can adjudicate and process the cases brought before them.

11  Thus the federal rule should control as against a contrary state practice.")

12  　　　Regardless of which standard applies, Plaintiffs satisfy it. As to the federal preliminary

13  injunction standard, the Ninth Circuit did not overrule any of this Court's previous findings on

14  the *Winter* factors, other than Plaintiffs' lack of entitlement to relief on a theory of constitutional

15  informational privacy. This Court previously found "the potential harm of releasing the names

16  outweighs the relatively minor benefit of public disclosure in an otherwise very transparent

17  organization." Order (Dkt #45), at 14. The Court further found "the likelihood of personal

18  harassment and threats is higher," and "[o]nce a Plaintiff's information is public, the harm cannot

19  be remedied by court action." *Id*. at 13-15. The Court further found "there is a public interest in

20  having qualified members on the IACUC overseeing animal research at UW" that could be

21  impaired if Plaintiffs' identities were disclosed. *Id*. This Court's assessments remain valid and

22  appropriate; the likelihood of irreparable harm, the balance of equities, and the public interest all

23  weigh in favor of Plaintiffs.

24  　　　Alternatively, even if the PRA standard for a *permanent* injunction under RCW

25  42.56.540 applied here, Plaintiffs satisfy that standard as well. The Court's prior *Winter* findings

26  also indicate disclosure "would clearly not be in the public interest, and would substantially and

27  irreparably damage any person or would substantially and irreparably damage vital government

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 11
P. POE 5, ET AL. v. UNIVERSITY OF WASHINGTON, ET AL.
NO. 2:24-CV-00170-JHC

functions." IACUC members would be irreparably damaged by disclosure, and disclosure would damage vital government functions by making it difficult or impossible for the UW IACUC to function effectively. RCW 42.56.540; *Lyft*, 190 Wn.2d at 785.

For all these reasons, the Court should grant Plaintiffs a new preliminary injunction based on the PRA, and "other statute" RCW 4.24.580.

**B.    PETA has no constitutional argument against RCW 4.24.580 that is sufficient to deny Plaintiffs' requested relief.**

PETA has previously argued that Plaintiffs cannot obtain an injunction based on RCW 4.24.580 because the statute amounts to an unconstitutional content-based regulation of speech. But as set forth below, PETA has no constitutional argument sufficient to bar Plaintiffs from obtaining an injunction based on the PRA and RCW 4.24.580.

**1.    PETA has no as-applied constitutional claim to access records that the State has exempted from disclosure.**

PETA previously argued that RCW 4.24.580 is "unconstitutional as Plaintiffs seek to apply it here: to protect their 'mental health' from the effects of protected speech and expressive conduct," since "[i]njunctive relief cannot, consistent with the First Amendment, issue to prevent Plaintiffs' exposure to protected expression that does not constitute a 'true threat.'" Dkt #24, at 15, 19.

But RCW 4.24.580's operation as an exemption from disclosure under the PRA is not subject to a First Amendment as-applied challenge. As the Supreme Court has repeatedly held in the FOIA context, "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Houchins v. KQED, Inc.*, 438 U.S. 1, 15, 98 S. Ct. 2588 (1978); *Los Angeles Police Dept. v. United Reporting Publishing Corp.*, 528 U.S. 32, 40, 120 S.Ct. 483 (1999) (the Government could decide "not to give out [this] information at all"); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 588, 131 S.Ct. 2653, 2677, 180 L.Ed.2d 544 (2011) (Breyer, J., dissenting) ("[T]his Court has never found that the *First Amendment* prohibits the government from restricting the use of information gathered pursuant to a regulatory mandate"); *McBurney v.*

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

1    *Young*, 569 U.S. 221, 232, 133 S. Ct. 1709 (2013) ("This Court has repeatedly made clear that

2    there is no constitutional right to obtain all the information provided by FOIA laws."). Thus,

3    even if RCW 4.24.580 exempts from disclosure records pertaining to a particular viewpoint,

4    and/or is written with a particular purpose, that simply does not affect or impair the speech or the

5    First Amendment rights of PETA/NARN.[5]

6            This rule means RCW 4.24.580, having been recognized as a PRA "other statute" by

7    *PAWS II*, is constitutional insofar as it is operating as a public disclosure exemption. Because

8    RCW 4.24.580 is being applied here solely as a PRA exemption, this Court need not even reach

9    the question of whether it is potentially unconstitutional under some *other* application *not* before

10   the Court. If a case may be resolved on statutory grounds, the Court should decline to reach

11   further to address unnecessary constitutional issues. *See, e.g., Bond v. United States*, 572 U.S.

12   844, 855, 134 S.Ct. 2077 (2014) ("[I]t is a 'well-established principle governing the prudent

13   exercise of this Court's jurisdiction that normally the Court will not decide a constitutional

14   question if there is some other ground upon which to dispose of the case.'"); *Fox Television*

15   *Stations, Inc v. Aereokiller*, LLC, 851 F.3d 1002, 1013 (9th Cir. 2017) (same, citing *Bond*); *U.S.*

16   *v. Kaluna*, 192 F.3d 1188, 1197 (courts are not to "decide questions of a constitutional nature

17   unless absolutely necessary to a decision of the case").

18           **2.    PETA and NARN lack standing to challenge RCW 4.24.580, even**
             **under a First Amendment overbreadth claim.**
19
20           PETA also previously argued RCW 4.24.580 is facially unconstitutional because it is

21   "viewpoint discriminatory" and "unconstitutionally overbroad." Dkt #24, at 15-18.

22           "Facial challenges are disfavored for several reasons." *Washington State Grange v.*

23   *Washington State Republican Party*, 552 U.S. 442, 450, 128 S. Ct. 1184 (2008). These include that

24   [c]laims of facial invalidity often rest on speculation," and that facial challenges "also run contrary

25   to the fundamental principle of judicial restraint that courts should neither 'anticipate a question

26   _____

27           [5] As Plaintiffs have previously argued (*see Sullivan* Dkt #68, at 18-19), various other PRA exemptions also
     favor or protect controversial viewpoints, *e.g.*, abortion providers, RCW 42.56.350; election security information,
     RCW 42.56.425; polluting livestock operations, RCW 42.56.610; persons requesting wolf elimination, RCW
     42.56.430(4)).

**GOLDFARB & HUCK**
**ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

1    of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of

2    constitutional law broader than is required by the precise facts to which it is to be applied.'" *Id.*

3    (cleaned up, quoting *Ashwander v. TVA*, 297 U.S. 288, 346–347, 56 S.Ct. 466 (1936)).

4        PETA/NARN previously failed to demonstrate they have standing to facially challenge the

5    constitutionality of RCW 4.24.580, even under the "unique standing considerations" applicable to

6    First Amendment pre-enforcement challenges. *Tingley v. Ferguson*, 47 F.4th 1055, 1066 (9th Cir.

7    2022); *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) ("Even when plaintiffs bring an

8    overbreadth challenge to a speech restriction, *i.e.*, when plaintiffs challenge the constitutionality

9    of a restriction on the ground that it may unconstitutionally chill the First Amendment rights of

10    parties not before the court, they must still satisfy 'the rigid constitutional requirement that

11    plaintiffs must demonstrate an injury in fact to invoke a federal court's jurisdiction.'"); *Get

12    Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 891 (9th Cir. 2007) ("Without this bare

13    minimum of standing, the overbreadth exception would nullify the notion of standing generally in

14    First Amendment litigation").

15        In a prospective First Amendment challenge, the Ninth Circuit relies "on a three-factor

16    inquiry to help determine whether a threat of enforcement is genuine enough to confer an Article

17    III injury. We consider (1) whether the plaintiff has a 'concrete plan' to violate the law, (2)

18    whether the enforcement authorities have 'communicated a specific warning or threat to initiate

19    proceedings,' and (3) whether there is a "'history of past prosecution or enforcement."'" *Tingley*,

20    47 F.4th at 1067 (citing *Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1139 (9th

21    Cir. 2000)). "'**Neither the mere existence of a proscriptive statute nor a generalized threat of

22    prosecution' satisfies this test.**" *Id.* (emphasis added). The courts also may *decline* jurisdiction

23    under the prudential component of the ripeness doctrine, based on "the fitness of the issues for

24    judicial decision and the hardship to the parties of withholding court consideration." *Thomas*,

25    220 F.3d at 1141.

26        PETA/NARN cannot meet the *Tingley/Thomas* criteria. First, PETA/NARN have never

27    articulated a "concrete plan" to violate RCW 4.24.580. Rather, PETA/NARN have disavowed any

intent to harass Plaintiffs, arguing none of PETA/NARN's actions (or for that matter, any other communications received by UW personnel) constitute "true" harassment. *Cf.* Dkt #24, at 18-19; *Thomas*, 220 F.3d at 1141; *Lopez,* 630 F.3d at 787 ("[m]ere '[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'").

Second, there is no evidence of any "warning or threat to initiate proceedings" under RCW 4.24.580 against PETA or anyone else. The only party invoking the statute is Plaintiffs, whose allegations are pleaded against the UW Defendants under the PRA. For PETA/NARN to have standing to facially challenge RCW 4.24.580 under the First Amendment, "the threat of enforcement" *of RCW 4.24.580*, *against PETA/NARN,* "must at least be 'credible,' not simply 'imaginary or speculative.'" *Thomas*, 220 F.3d at 1140. "When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Id*. *Cf. Tingley*, 47 F.4th at 1068 ("And in the context of pre-enforcement challenges to laws on First Amendment grounds, a plaintiff "need only demonstrate that a threat of potential enforcement will cause him to self-censor.") (citing *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014)). PETA/NARN have failed to make even this low-threshold showing.

Notably, the court in *Thomas* rejected standing even though the Alaska housing laws at issue carried with them a threat of either "civil enforcement" or "criminal prosecution." *Thomas*, 220 F.3d at 1137. Here, in contrast, RCW 4.24.580 authorizes at most a request to a court for a civil injunction that must be brought directly against the person or organization involved in the harassment. That makes RCW 4.24.580 completely unlike a generalized criminal prohibition that may have constitutionally impermissible "chilling effects."

Third, there is no evidence of any "history of past prosecution or enforcement" under the statute. *Thomas*, at 1140. Since RCW 4.24.580 was enacted more than thirty years ago, there appears to be no reported or unreported case in Westlaw discussing the use of the statute for a direct injunction against harassment. Instead, *all* Washington decisions discuss it only as an "other

1  statute" PRA exemption. *Cf. Thomas*, at 1140 (finding no standing given no history of statutory

2  enforcement).

3      Finally, given the lack of any use of the statute as PETA/NARN complain of, PETA/NARN

4  fail to demonstrate "the fitness of the issues for judicial decision" or "hardship to the parties of

5  withholding court consideration." *Thomas*, at 1141. Accordingly, the Court may also find

6  PETA/NARN's purported First Amendment challenge prudentially unripe. *Id*.

7      **3.    Even if PETA/NARN had standing, RCW 4.24.580 is constitutional.**

8      Even if PETA/NARN are found to have standing, RCW 4.24.580 is still constitutional. In

9  First Amendment cases, "to provide breathing room for free expression," the Supreme Court has

10  "substituted a less demanding though still rigorous standard" for facial challenges. The question

11  is whether "a substantial number of [the law's] applications are unconstitutional, judged in relation

12  to the statute's plainly legitimate sweep. So in this singular context, even a law with 'a plainly

13  legitimate sweep' may be struck down in its entirety. But that is so only if the law's

14  unconstitutional applications substantially outweigh its constitutional ones." *Moody v. NetChoice,*

15  *LLC*, 603 U.S. 707, 723–24, 144 S. Ct. 2383 (2024).

16      As Plaintiffs and the UW Defendants previously argued, even if RCW 4.24.580 is

17  evaluated as an injunction statute directed against persons perpetrating harassment, it is not

18  facially unconstitutional. The statute applies to "threat[s], without lawful authority," to injure a

19  recipient's person or property, physically confine or restrain them, or maliciously threaten to

20  "substantially cause harm" to their "mental health or safety." The government may prohibit these

21  types of "true threats." *See, e.g., Virginia v. Black*, 538 U.S. 343, 359-60 (2003):

22      "True threats" encompass those statements where the speaker means to

23      communicate a serious expression of an intent to commit an act of unlawful

24      violence to a particular individual or group of individuals… The speaker need not

        actually intend to carry out the threat. Rather, a prohibition on true threats

25      "protect[s] individuals from the *fear* of violence" and "*from the disruption that fear*

        *engenders*," in addition to protecting people "from the possibility that the

26      threatened violence will occur." *Intimidation in the constitutionally proscribable*

        *sense of the word is a type of true threat*, where a speaker directs a threat to a person

27

**GOLDFARB & HUCK**
**ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

or group of persons *with the intent of placing the victim in fear* of bodily harm or death.

*Id*. (cleaned up; emphasis added; citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388, 112 S.Ct. 2538 (1992)). Consistent with this, the Legislature explicitly stated its intent was to pass a *constitutional* statute not infringing speech:

> It is the intent of the legislature that the courts in deciding applications for injunctive relief under section 5 of this act give full consideration to the constitutional rights of persons to speak freely, to picket, and to conduct other lawful activities.

Chapter 325, Laws of 1991, Sec. 1.[6] The Legislature also specified that the purpose of the Act was because "the criminal code…adequately covers those who intentionally and without authority damage or destroy farm animals," but "does not adequately cover similar misconduct directed at research and educational facilities." *Id*. And the statute does not only apply to those who would "stop" "the use of animals"; it also applies to those who would "modify" such use. This does not single out the speech of research opponents, but applies neutrally to anyone who would use "threats, without lawful authority" to *affect* animal research. Taken together, this is a permissibly neutral enactment that does not violate the First Amendment.

Moreover, contrary to PETA's previous claim the statute should be found void for vagueness, the fact that the statute only authorizes a civil injunction distinguishes this statute from Washington's analogous *criminal* statute (which Washington's Supreme Court found unconstitutionally overbroad, but "cure[d] the constitutional infirmity" by striking the single word "mental.") *State v. Williams*, 144 Wn.2d 197, 212-13 (2001); *see also Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 498-99 (1982) (Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe"). The most that can occur under 4.24.580 is "injunctive relief to prevent the harassment." This means a harasser must simply *discontinue* their unlawful threats, not risk

---

[6] Available at:

<<    https://lawfilesext.leg.wa.gov/biennium/1991-92/Pdf/Bills/Session%20Laws/Senate/5629-S.SL.pdf?cite=1991%20c%20325%20s%205 >>

1     punishment for threats already uttered or actions already taken. PETA/NARN cannot demonstrate

2     "a substantial amount of legitimate speech will be chilled" under this scheme. *See California*

3     *Teachers Association v. State Board of Education*, 271 F.3d 1141, 1152 (9th Cir. 2001).

4          Given RCW 4.24.580's regulation of unprotected threats and conduct, the Legislature's

5     statement of intent that it not be construed by implementing courts to affect constitutionally

6     protected activity, the statute's neutral language, the lack of any history of improper enforcement,

7     the limited civil remedy, and its "plainly legitimate sweep" as a PRA exemption, PETA/NARN

8     cannot establish RCW 4.24.580's "unconstitutional applications substantially outweigh its

9     constitutional ones."

                  **4.     Even if RCW 4.24.580 were unconstitutional as a restriction on speech,
10                         it can and should also remain in effect as a public disclosure exemption.**

11         PETA's past arguments against RCW 4.24.580 appear to assume that if the statute is

12    found "unconstitutional" as a restraint on speech, the statute simply disappears or becomes

13    entirely invalid, ending Plaintiffs' cause of action for a statutory PRA disclosure exemption. *Cf.*

14    Dkt #24, at 15-19.

15         That is not the law. Rather, even when a statute is "found" unconstitutional, "[i]t is

16    axiomatic that a 'statute may be invalid as applied to one state of facts and yet valid as applied to

17    another.'" *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-29, 126 S. Ct.

18    961 (2006). "Generally speaking, when confronting a constitutional flaw in a statute, we try to

19    limit the solution to the problem. We prefer, for example, to enjoin only the unconstitutional

20    applications of a statute while leaving other applications in force[.]" *Id*. "[W]e try not to nullify

21    more of a legislature's work than is necessary, for we know that '[a] ruling of unconstitutionality

22    frustrates the intent of the elected representatives of the people.'" *Id*. "Accordingly, the 'normal

23    rule' is that 'partial, rather than facial, invalidation is the required course,' such that a 'statute

24    may...be declared invalid to the *extent* that it reaches too far, but otherwise *left intact*.'" *Id*.

25    (emphasis added, quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504, 105 S.Ct. 2794

26    (1985), and citing *United States v. Grace*, 461 U.S. 171, 180-83, 103 S.Ct. 1702 (1983)).

27

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

In *Grace*, the Supreme Court considered a First Amendment challenge to a statute that banned flags and banners around the Supreme Court building, including the plaza and steps, and the sidewalk outside. The Court "crafted a narrow remedy much like the one we contemplate today, striking down [the] statute banning expressive displays only as it applied to public sidewalks near the Supreme Court but not as it applied to the Supreme Court Building itself." *Ayotte*, 546 U.S. at 329 (citing *Grace*). In *Brockett*, the Court held that in a First Amendment overbreadth challenge, "if the overbreadth is 'substantial,' the law may not be enforced against anyone, including the party before the court, until it is *narrowed* to reach only unprotected activity, whether by legislative action *or by judicial construction* or partial invalidation." *Brockett*, 472 U.S. at 503-04 (emphasis added). *Brockett* invalidated a Washington "moral nuisance" statute to the extent it reached constitutionally protected sexually-oriented material, but allowed it to remain in place to the extent it constituted a permissible regulation of obscenity. *See also United States v. Arthrex, Inc.*, 594 U.S. 1, 25, 141 S. Ct. 1970 (2021) (concluding that section of statute "cannot constitutionally be enforced to the extent its requirements" constrained the Director of the Patent Trial and Appeal Board, but section "otherwise remains operative as to the other members of the" PTAB); *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 621, 140 S. Ct. 2335 (2020) (striking down "content-based" exception to statutory restriction on robocalls under the First Amendment, but applying a severability analysis).

This approach, repeatedly endorsed by the Supreme Court, was followed by the Fourth Circuit in a PETA case previously cited here by PETA. *See* Dkt #24, at 16 (PETA's brief citing *PETA v. N. Carolina Farm Bureau Fed'n, Inc.*, 60 F.4th 815, 841 (4th Cir 2023), for the proposition that "statutes, like RCW 4.24.580, that targeted animal experimentation opponents amounted to unconstitutional viewpoint discrimination"). PETA had challenged a North Carolina statute that criminalized conduct including covertly recording inside agricultural facilities, asking the court to "facially invalidate all four challenged provisions on their face as overbroad," asserting "a substantial number of [their] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." 60 F.4th at 838-39. The Fourth Circuit rejected PETA's

requested remedy, holding instead "We decide no more than we must" and "We enjoin North Carolina from applying the Act to PETA's newsgathering activities but sever and reserve all other applications for future case-by-case adjudication." *Id*. at 821, 838-41 (citing cases including *Ayotte* and *Brockett*).

"[T]he touchstone for any decision about remedy is legislative intent." *Ayotte*, 546 U.S. at 330. "After finding an application or portion of a statute unconstitutional, we must next ask: Would the legislature have preferred what is left of its statute to no statute at all?" *Id*. (citing numerous cases). "Thus, the key question in determining how to remedy a constitutional violation wrought by the legislative process is always 'what the legislature would have willed had it been apprised of the constitutional infirmity.'" *Office of U.S. Trustee v. Hammons*, 602 U.S. 487, 495, 144 S. Ct. 1588 (2024) (quoting *Sessions v. Morales-Santana*, 582 U.S. 47, 73-74, 137 S.Ct. 1678 (2017)).

The Washington Legislature clearly answered this question when it passed RCW 4.24.580, stating:

> If any provision of this act or its application to any person *or circumstance* is held invalid, the remainder of the act or the application of the provision to other persons *or circumstances* is not affected.

Chapter 325, Laws of 1991, Sec. 6 (emphasis added). These statements clearly demonstrate the Legislature "willed" the statute to persist in any acceptable applications even after being found partially unconstitutional, as in *Ayotte* and the many other cases cited above. Thus, even if this Court were to determine RCW 4.24.580 cannot be constitutional as a statute to enjoin "harassment" by persons, it can be judicially limited to its PRA application. Put another way, the phrase "Any individual… may apply for injunctive relief to prevent the harassment," may be construed as authorizing individuals to apply for injunctive relief *pursuant to the PRA*, as the Washington Supreme Court held in *PAWS II*.[7]

---

[7] Alternatively, if a "severance" analysis were applied, the Court could cure the deficiency by striking any purportedly offending language, for example: "by an organization, person, or persons whose intent is to stop or modify the facility's use or uses of an animal or animals."

**C.    Plaintiffs are entitled to an injunction based on federal preemption.**

If Plaintiffs are not entitled to an injunction under the PRA, Plaintiffs are entitled to a preliminary injunction *against* the PRA, on the basis of federal preemption. To the extent Washington's Public Records Act purports to require the release of identifying information of UW IACUC members despite federal law and policy to the contrary, the operation of Washington's Public Records Act stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, and/or interferes with the methods by which the federal statutes, regulations, and policies were designed to reach their goal. In such a situation, under the Supremacy Clause of the U.S. Constitution, federal law and regulation prevail.

Federal law and regulation require the creation of IACUCs to perform their prescribed functions to protect laboratory animal welfare. In order to promote these federal objectives, the anonymized service of IACUC members is authorized by federal law and policy, specifically: Title 42, United States Code, Section 289d (the Health Research Extension Act of 1985, Pub. L. No. 99-158); Title 7, United States Code, Section 2143 (the Food Security Act of 1985, Pub. L. No. 99-198); the Public Health Service Policy on Humane Care and Use of Laboratory Animals (PHS 2015), (V)(A)(3)(b) n.6; 42 C.F.R. § 52.8; and 42 C.F.R. § 52a.8. *See, e.g.,* Dkt #45 (Amended Order Granting Preliminary Injunction), at 10; Amended Complaint, ¶62.

The Supremacy Clause of the U.S. Constitution, Art. VI, cl. 2, allows federal law to preempt contrary state law. This may occur in three ways: if Congress "define[s] explicitly the extent to which its enactments pre-empt state law"; if state law "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively"; or "to the extent that [state law] actually conflicts with federal law." *English v. General Electric Co.*, 496 U.S. 72, 78-79, 110 S. Ct. 2270 (1990). Conflict preemption occurs when "the operation of state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress… or when it interferes with the methods by which the federal statute was designed to reach [its] goal." *Arellano v. Clark County Collection Service, LLC*, 875 F.3d 1213, 1216 (9th Cir. 2017) (cleaned up, citing *In re Cybernetic Servs., Inc.*, 252 F.3d 1039, 1045–46 (9th Cir. 2001), and *Int'l*

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 21
P. POE 5, ET AL. v. UNIVERSITY OF WASHINGTON, ET AL.
NO. 2:24-CV-00170-JHC

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

1   *Paper Co. v. Ouellette*, 479 U.S. 481, 494, 107 S.Ct. 805 (1987). "[S]tate law is preempted when

2   under the circumstances of the particular case, it stands as an obstacle to Congressional purpose—

3   whether that 'obstacle' goes by the name of 'conflicting; contrary to; repugnance; difference;

4   irreconcilability; inconsistency; violation; curtailment; interference,' or the like." *Id.* (cleaned up,

5   quoting *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873, 120 S.Ct. 1913, 146 L.Ed.2d 914

6   (2000)). "[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Altria*

7   *Grp., Inc. v. Good*, 555 U.S. 70, 76, 129 S.Ct. 538 (2008) (citing *Medtronic, Inc. v. Lohr*, 518 U.S.

8   470, 485, 116 S.Ct. 2240 (1996)).

9        "A state law may pose an obstacle to a federal statute in various ways. There is no 'rigid

10  formula or rule' for determining when an act of Congress preempts a state law." *Chamber of*

11  *Commerce of the United States v. Bonta*, 62 F.4th 473, 482 (9th Cir. 2023). "Rather, what

12  constitutes a sufficient obstacle is a matter of judgment, to be informed by examining the federal

13  statute as a whole and identifying its purpose and intended effects… If the purpose and intended

14  effects of the federal statute are blocked by the state law, then the state law must yield to the

15  regulation of Congress within the sphere of its delegated power." *Id.* (cleaned up, citing *Crosby*

16  *v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373, 120 S.Ct. 2288 (2000)).

17       In *United States v. City of Pittsburg, Cal.*, 661 F.2d 783, 785-86 (9th Cir. 1981), the court

18  struck down a local ordinance that prohibited postal carriers from crossing lawns without first

19  obtaining the owner's consent, holding the ordinance stood as an obstacle to federal postal

20  regulations authorizing carriers to cross lawns if patrons did not object. *Id*; *see also Geier*, 529

21  U.S. at 864 (holding "the 1984 version of a Federal Motor Vehicle Safety Standard promulgated

22  by the Department of Transportation under the authority of" a 1966 law preempted a state tort

23  action); *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512, 108 S.Ct. 2510 (1988)

24  (preempting state law based on conflict with military aircraft design specifications implemented

25  by an "independent contractor performing its obligation under a procurement contract").

26       These principles should apply with equal force here. Congress has enacted a combined

27  statutory and regulatory scheme under which the University of Washington is required to maintain

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

a functioning IACUC as a prerequisite for conducting animal research. Federal agencies have further authorized members of the IACUC to serve anonymously, due to the threats of harassment of members by animal research opponents. Washington's PRA nevertheless purports to require the release of those members' information, despite the harm any release would have on the committee's membership, recruitment, and functioning. Under the Supremacy Clause, the PRA thus stands as an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." The PRA should be enjoined to the extent of that conflict.

### D. Plaintiffs remain entitled to an injunction based on Plaintiffs' rights of informational privacy.

In PETA's most recent interlocutory appeal, the Ninth Circuit held, citing *Doe v. Bonta*, that Plaintiffs are not entitled to a preliminary injunction based on a right of informational privacy. *See* 2024 WL 4971971. Plaintiffs continue to believe *Doe v. Bonta* was incorrectly decided, misconstruing the Ninth Circuit's relevant precedents beginning with *In re Crawford. See P. Poe 5 v. University of Washington*, 9th Cir. No. 24-2765, Dkt #41.1 (Plaintiffs-Appellees' Petition for Rehearing En Banc). Plaintiffs have continued to plead a right of informational privacy in their Amended Complaint, and reassert that argument here to preserve it for any merits appeal.

## IV. CONCLUSION

For all these reasons, the Court should issue a preliminary injunction. Plaintiffs are entitled to an injunction either pursuant to the PRA and RCW 4.24.580, or against the PRA as federally preempted.

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

1

2  DATED this 24th day of February, 2025.

3

4         I certify that this memorandum contains
       8,398 words, in compliance with the
5         Local Civil Rules.

6

7         Respectfully submitted,

8         **Goldfarb & Huck Roth Riojas, PLLC**

9         */s/Darwin P. Roberts*
       Darwin P. Roberts, WSBA No. 32539
10

11        925 Fourth Avenue, Suite 3950
       Seattle, Washington 98104
       Telephone: (206) 452-0260
12        Facsimile: (206) 397-3062
       E-mail:  roberts@goldfarb-huck.com
13
       Counsel for Plaintiffs P. Poe 5, *et al.*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 24
P. POE 5, ET AL. v. UNIVERSITY OF WASHINGTON, ET AL.
NO. 2:24-CV-00170-JHC

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and supporting documents were filed electronically with the Clerk of the Court using the CM/ECF system on February 24, 2025, and was served via the Court's CM/ECF system on all counsel of record.


DATED this February 24, 2025, at Seattle, Washington.


*/s/Darwin P. Roberts*
Darwin P. Roberts, WSBA No. 32539

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 25
P. POE 5, ET AL. v. UNIVERSITY OF WASHINGTON, ET AL.
NO. 2:24-CV-00170-JHC

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
Main: 206.452.0260