# EXHIBIT A

```
 1              UNITED STATES DISTRICT COURT

 2        FOR THE WESTERN DISTRICT OF WASHINGTON

 3                    AT SEATTLE

 4   ------------------------------------------------------

 5   P. POE 5, and P. POEs 2        )  No.
     through 4 and 6 through 75,    )  2:24-cv-00170-JHC
 6   individually and on behalf of  )
     others similarly situated,     )
 7           Plaintiffs,            )
             vs.                    )
 8   UNIVERSITY OF WASHINGTON, a     )
     Washington public corporation; )
 9   PERRY TAPPER, Director of       )
     Public Records and Open Public )
10   Meetings at the University of   )
     Washington, in their official  )
11   capacity,                       )
             Defendants,            )
12   And                             )
     PEOPLE FOR THE ETHICAL          )
13   TREATMENT OF ANIMALS, INC., a   )
     Virginia nonstock corporation, )
14   and NORTHWEST ANIMAL RIGHTS     )
     NETWORK, a Washington           )
15   nonprofit corporation,          )
             Intervenor-Defendants.  )
16

17   ------------------------------------------------------

18                    Videotaped

19        Deposition Upon Oral Examination Of

20              JANE SULLIVAN, Ph.D.

21   ------------------------------------------------------

22   February 28, 2025, 825 Fourth Avenue, Suite 3950,

23   Seattle, Seattle

24   REPORTED BY:  PEGGY FRITSCHY HAMILTON, RPR, CSR

25   Washington 29906/No. 2704/Oregon 230114
```



```
 1   APPEARANCES:

 2   For the Intervenor-Defendants:

 3                        PETER D. HAWKES

 4                        Angeli & Calfo LLC

 5                        121 SW Morrison Street

 6                        Suite 400

 7                        Portland, Oregon  97204-3134

 8                        (971) 420-0220

 9                        peter@angelicalfo.com

10   For People For the Ethical Treatment of Animals

11   Foundation:          ASHER SMITH

12                        PETA Director of Litigation

13                        1536 16th Street N.W.

14                        Washington, D.C. 20036

15                        (516) 528-3109

16                        Ashers@petafoundation.org

17   For the Plaintiffs and the witness:

18                        DARWIN P. ROBERTS

19                        Goldfarb & Huck Roth Riojas

20                        PLLC

21                        925 4th Avenue, Suite 3950

22                        Seattle, Washington  98104-1510

23                        (206) 452-0260

24                        roberts@goldfarb-huck.com

25
```



JANE SULLIVAN, PH.D.                                          February 28, 2025
P. POE 5 vs UNIVERSITY OF WASHINGTON                                        3

```
 1   APPEARANCES (Cont'd):

 2    For the Defendants:    JESSICA L. CREIGHTON

 3                             Assistant Attorney General

 4                            Washington State Attorney

 5                               General's Office

 6                            4333 Brooklyn Avenue NE

 7                            Seattle, Washington  98195-9475

 8                            (206) 685-9262

 9                            jessica.creighton@atg.wa.gov

10    Also Present:        Gabe Fabens (videographer)

11                         Kristi Fox (via Zoom)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



JANE SULLIVAN, PH.D.                                    February 28, 2025
P. POE 5 vs UNIVERSITY OF WASHINGTON                              4

```
 1    E X H I B I T S

 2   NO.    DESCRIPTION                         MARKED

 3   1      Declaration of Dr. Jane Sullivan RE:   11

 4          Plaintiffs' Motion For Preliminary

 5          Injunction

 6   2      December 17th, 2024 A draft message    18

 7          for the IACUC

 8   3      Messages                               20

 9   4      Email thread, top email December 17,   36

10          2024 to Jessica Creighton, and

11          others, from Sally Thompson-Iritani

12   5      Email chain, top email December 28,    41

13          2024 to Craig Wilson, and others,

14          from Sally Thompson-Iritani

15   6      December 17, 2024 email to Undisclosed  44

16          recipients from Zak Rosencrantz

17   7      December 24, 2024 email to Jennifer     48

18          Iwamoto and Sally Thompson-Iritani

19          from Jennifer Iwamoto

20   8      Messages                               60

21   9      Email thread, top email December 17,   62

22          2024 to Wayne Johnson from Zak

23          Rosencrantz

24   10     December 18 2024 messages              64

25
```



JANE SULLIVAN, PH.D.                    February 28, 2025
P. POE 5 vs UNIVERSITY OF WASHINGTON                    5

```
1    E X H I B I T S CONT'D

2   NO.      DESCRIPTION                      MARKED

3   11       Email thread, top email January 8,      68

4            2025 to Sally Thompson-Iritani from

5            Kevin Grossman

6   12       Email thread, top email February 5,     70

7            2025 to Kevin Grossman, and others,

8            from Zak Rosencrantz

9   13       Event: Meet w/FBI                        73

10  14       Email thread, top email December 13,    89

11           2024 to Sally Thompson-Iritani,

12           and others, from Sally Clark

13  15       Email thread, top email to OAW           90

14           Director from Zak Rosencrantz

15  16       December 31, 2024 Standing               92

16           Item Reminders

17  17       January 7, 2025 Standing Item            97

18           Reminders

19  18       January 10, 2025 email to Jennifer      101

20           Iwamoto, and others, from Jane

21           Sullivan

22   E X A M I N A T I O N

23  BY                   PAGES

24  ATTORNEY HAWKES    7

25  ***** (*  Denotes phonetic spelling.)
```



 1              Seattle, Seattle; Friday, February 28, 2025

 2                          10:35 a.m.

 3              --------------------------

 4              THE VIDEOGRAPHER:  Good morning.  We are

 5   on the record.  Today's date, February 28th, 2025, and      10:35:36

 6   the time is 10:35 a.m.  This is the video-recorded

 7   deposition of Dr. Jane Sullivan, in the matter of

 8   P. POE 5 versus UW, case number is 2-24-cv-00170-JHC,

 9   in the United States District Court for the District

10   of Washington.  This deposition is being held at            10:36:07

11   Goldfarb & Huck, Roth Riojas, PLLC, at 925 Fourth

12   Avenue in Suite 3950 in Seattle, Washington, 98104.

13              The reporter's name is Peggy Hamilton.  My

14   name is Gabe Fabens.  I'm the certified legal

15   videographer.  And today we are here with Esquire          10:36:32

16   Deposition Solutions.

17              Would the attorneys present please

18   introduce themselves.

19              ATTORNEY HAWKES:  Peter Hawkes of Angeli &

20   Calfo, on behalf of intervenor-defendants, PETA and        10:36:45

21   NARN.

22              ATTORNEY SMITH:  Asher Smith of the PETA

23   Foundation, also on behalf of PETA.

24              ATTORNEY ROBERTS:  Are you not noting

25   Ms. Fox?                                                    10:36:57



1    anything else that might impede your ability -- your

2    recollection or your ability to testify truthfully and

3    completely today?

4        A.   No.

5        Q.   Is there any other reason that you wouldn't          10:41:44

6    be able to testify truthfully and completely today,

7    based on your personal knowledge?

8        A.   No.

9             ATTORNEY HAWKES:  We'll mark our first

10   exhibit.                                                       10:42:07

11            (Exhibit 1 marked for identification.)

12       Q.   The court reporter has just handed you what

13   has been marked as Exhibit No. 1 to your deposition.

14   Do you recognize this as a copy of your most recent

15   declaration in this case?                                      10:42:21

16       A.   Yes.

17       Q.   Okay.  I just want to walk through a couple

18   of things in your declaration.  Let's start with

19   paragraph 4.  In paragraph 4 you describe an incident

20   in September of 2024, where persons described as PETA           10:42:46

21   supporters interrupted a keynote speech of Elizabeth

22   Buffalo; do you see that?

23       A.   Yes.

24       Q.   Were you personally present for that?

25       A.   I was not.                                            10:43:02



JANE SULLIVAN, PH.D.                                February 28, 2025
P. POE 5 vs UNIVERSITY OF WASHINGTON                              12

1    Q.    Are you aware whether there was any threats

2   of violence made by PETA supporters at that, at that

3   keynote speech?

4    A.    I only know what, what I have, I have read

5   in, in media reports about the incident.              10:43:23

6    Q.    Okay.  Have you read anything in media

7   reports that indicated any violence on the part of any

8   of the PETA supporters who were there?

9    A.    I understand that, that they needed to be

10   physically removed, but I don't know beyond that what   10:43:37

11   kind of physical action or threatening action they,

12   they took.

13    Q.    Do you know whether they said anything

14   indicating that they intended to commit any acts of

15   physical violence against anyone at the, at the        10:43:50

16   speech?

17    A.    I don't know.

18    Q.    So I want to turn now to paragraph 6 to 9 of

19   your declaration.  And these are the paragraphs that

20   discuss the email that came in to the Office of Animal  10:44:11

21   Welfare on or about December 13th of 2024.  So you've

22   got a copy of the email attached as Exhibit B to your

23   declaration; is that right?

24    A.    Yes.

25    Q.    And turning to paragraph 8 of your           10:44:37



800.211.DEPO (3376)
EsquireSolutions.com
Hawkes Decl. Exhibit A
Page 8 of 30

JANE SULLIVAN, PH.D.                    February 28, 2025
P. POE 5 vs UNIVERSITY OF WASHINGTON                    13

1    declaration, you state, "Although the December 13th

2    email to UW does not contain explicit threats, the

3    menacing tone and Canis lupus sign-off was very

4    frightening for me and other UW IACUC members who were

5    targeted in the message."                    10:45:07

6          What about this email contains a menacing

7    tone?  Can you explain that to me?

8          A.   I think the vague menacing wording of, of

9    many being willing to wait outside, and the address is

10   just outside where the IACUC meetings are held, so    10:45:40

11   they clearly know where we are meeting, and they are

12   indicating that they are going to wait outside for us.

13   I found that frightening.

14        Q.   And that comes right after the request for

15   the names of the IACUC members; right?                10:45:57

16        A.   Yes.

17        Q.   Couldn't that have been intended to convey

18   that they would wait outside so that they could see

19   who those people were by observing them walking in and

20   out?                                                  10:46:13

21             ATTORNEY ROBERTS:  Object to the extent it

22   calls for speculation.

23        A.   Yeah, I don't know.  I don't know what they

24   intended.  I only know how it landed.

25        Q.   Okay.                                       10:46:22



1    A.    And we were very afraid.

2    Q.    And there are -- and right after -- well,

3  right before that it says, after, "Asking for the

4  names to be released, but that information does not

5  seem to be available.  Please respond back."  Is the        10:46:37

6  use of the word "please" menacing?

7    A.    It depends on how it was intended, whether it

8  was sincere or if it was intended in a different way.

9    Q.    And then the word "please" is again stated

10  after the sentence that you referred to, about waiting       10:46:58

11  outside the building for those who come and go, and

12  then it says "please" again; do you see that?

13    A.    I do.

14    Q.    Again, does that indicate an intent to

15  menace?                                                      10:47:14

16          ATTORNEY ROBERTS:  Same objection.  Calls

17  for speculation.

18    A.    I have no idea what, what they intended to

19  convey.  I just know, again, this all landed and made

20  everybody who read it afraid.                                10:47:24

21    Q.    And what in the -- what suggested that anyone

22  is being -- that you or other IACUC members are being

23  targeted?

24    A.    Because they're referring to us, to IACUC

25  members, and then signing off with Canis lupus.             10:47:41



JANE SULLIVAN, PH.D.                                February 28, 2025
P. POE 5 vs UNIVERSITY OF WASHINGTON                             16

1       Q.    Have you ever seen anything signed off

2    Canis lupus before?

3       A.    No, I haven't.

4       Q.    Okay.

5       A.    Not when I usually get messages.            10:49:02

6       Q.    Do you have any idea what was intended there,

7    really?

8              ATTORNEY ROBERTS:   Same objection.

9       A.    I don't know what the intention was.  The

10   effect was to instill fear in everyone who read this    10:49:12

11   message.

12      Q.    And you note in here that there's no explicit

13   threats in this email; is that right?

14             ATTORNEY ROBERTS:   Same objection.

15   Mischaracterizes the witness's testimony.              10:49:27

16      A.    And also exactly what I acknowledged at the

17   beginning of, I believe, paragraph 8.

18      Q.    Okay.  So to the extent you see this as a

19   threat, that's based on you reading things into it,

20   not based on what's actually there; right?             10:49:45

21             ATTORNEY ROBERTS:   Same objection.

22             Go ahead.

23      A.    Yeah, I think the tone is absolutely there.

24   I don't need to interpret.  The language is, is

25   clearly menacing.  Again, as I read it and every,      10:49:57



JANE SULLIVAN, PH.D.                          February 28, 2025
P. POE 5 vs UNIVERSITY OF WASHINGTON                        20

1    thread.  Do you see that there?

2        A.   Yes, I do.

3        Q.   At 11:52 a.m.?

4        A.   Yep.

5        Q.   And you're talking about the, how the          10:54:45

6    cancellation of the December IACUC meeting is going to

7    be communicated to the IACUC members; right?

8        A.   Yes.

9        Q.   And you say, "I'd like to remove, quote,

10   threatening, because it is a judgment call, and this    10:55:01

11   might need defending"; do you see that?

12       A.   Yep.

13       Q.   Okay.  So you viewed it as a judgment call,

14   whether this would be considered threatening or not?

15       A.   Yes.  Explicitly threatening, yes.  So I did   10:55:14

16   not see any explicit threats in that, in that message,

17   and that was what I was conveying there.

18            ATTORNEY HAWKES:  We'll mark our next

19   exhibit.

20            (Exhibit 3 marked for identification.)        10:55:51

21       Q.   And the court reporter has handed you what's

22   been marked as Exhibit 3.  This is another Slack

23   thread.  It's a little cut off at the top, but it

24   appears to be mostly on December 15th, I'm assuming.

25   Does that look right to you?  At least earlier than     10:56:12



```
 1        A.    Yes.
 2        Q.    And you say, "For the first time, I am now a
 3   little scared"; do you see that?
 4        A.    Yes.
 5        Q.    So prior to this email coming in, you had not        10:57:03
 6   been scared as a result of your role as the publicly
 7   known chair of the IACUC?
 8        A.    Before this, I did not feel directly and
 9   personally targeted by a threat for my safety.  I knew
10   that something like this was out there.  I suspected       10:57:28
11   that something like this could happen.  But before
12   this, we hadn't -- we did not have direct evidence.
13             So I was fearful that an individual who
14   might hear misinformation from PETA would decide to
15   take it into their own hands to take some, some kind       10:57:45
16   of further action.  This was direct proof that those
17   fears were absolutely founded.  But this was the first
18   time that I personally directly felt threatened.
19        Q.    Okay.
20        A.    And that made me very afraid.                    10:58:02
21        Q.    Well, you say "a little scared."
22        A.    This was the very first time I was seeing
23   this, and so you know, it -- I -- the more I thought
24   about it, the more times I read through that message,
25   the more -- and the more I understood the implications     10:58:19
```



JANE SULLIVAN, PH.D.                          February 28, 2025
P. POE 5 vs UNIVERSITY OF WASHINGTON                        58

1  information being introduced through her declaration

2  about steps taken in response to the email.

3           ATTORNEY HAWKES:  Well, I think it's a

4  fair foundational question to be able to distinguish

5  if she's taking some of these steps and she's adding     11:51:08

6  ones afterwards, to be able to tell which is which.

7           ATTORNEY ROBERTS:  Okay.  I'm going to --

8  I'm not going to instruct you not to answer.  But I'm

9  going to object to the extent it's beyond the scope

10  and foundation.  But go ahead.                           11:51:20

11           ATTORNEY HAWKES:  Okay.

12      Q.   So focusing on before the email came in,

13  which, if any of these steps had you taken personally?

14           ATTORNEY ROBERTS:  And my objection is

15  it's beyond the scope of the deposition, and           11:51:34

16  foundation.

17      A.   Right.  I have not changed my safety

18  practices since receiving -- since seeing that email,

19  so I'm just -- I had internalized this message

20  many years ago, and I use it to, to guide my           11:52:06

21  practices.  But nothing changed after I got that

22  email.  I was already doing all of the things that I

23  normally do to limit my -- the exposure of my personal

24  information.

25      Q.   Do you know whether any other IACUC members    11:52:28



800.211.DEPO (3376)
EsquireSolutions.com
Hawkes Decl. Exhibit A
Page 14 of 30

1    meeting; do you see that?

2        A.   Yes.

3        Q.   Do you know why Dr. Johnson was personally

4    notified of the cancellation?

5        A.   Yes.  Because Wayne signs up to speak during          11:58:34

6    our public comments period at almost every IACUC

7    meeting, and he had previously signed up to speak at

8    the December meeting, and so we wanted to reach out to

9    him to let him know that the meeting had been

10   canceled, since he'd already signed up and been told    11:58:52

11   he would be a, a public speaker.

12       Q.   So Dr. Johnson is somebody who's known to

13   you; right?

14       A.   Yes.

15       Q.   Okay.  Would you characterize Dr. Johnson as    11:59:03

16   an animal extremist?

17       A.   Yes, I would.

18       Q.   Why is that?

19       A.   Because he holds extreme views about animals

20   and the use of animals in research.                      11:59:14

21       Q.   Do you consider Dr. Johnson somebody who

22   poses a potential threat to yourself, or other members

23   of the IACUC?

24           ATTORNEY ROBERTS:   Objection.   Vague and

25   ambiguous.  Foundation.                                  11:59:28



800.211.DEPO (3376)
EsquireSolutions.com
Hawkes Decl. Exhibit A
Page 15 of 30

JANE SULLIVAN, PH.D.                                    February 28, 2025
P. POE 5 vs UNIVERSITY OF WASHINGTON                              64

```
 1        A.    I'm not personally worried that Wayne is
 2   going to show up on my door and kidnap my cats, the
 3   way he suggested at an open public meeting.  But I'm
 4   very worried that when Wayne speaks at our, at our
 5   meetings and talks about things like research on cats    11:59:42
 6   and reminds everybody of the names of my cats, that
 7   someone who hears him is going to take it upon
 8   themselves to come to my home and threaten my cats.
 9             (Exhibit 10 marked for identification.)
10             ATTORNEY HAWKES:  The next exhibit.            12:00:17
11        Q.    What's been marked as Exhibit 10 is another
12   Slack thread from December 18th of 2024.  I don't see
13   you on here, but do you know whether you were part of
14   the group that this was sent to?
15        A.    I was not on this Slack channel.              12:00:43
16        Q.    You see in the last message from Zak
17   Rosencrantz towards the bottom, he talks about letting
18   Dr. Johnson know about the meeting cancellation.  He
19   says, "actually had a very nice back and forth with
20   Wayne"; do you see that?                                 12:01:04
21        A.    I do.
22             ATTORNEY ROBERTS:  Take the time to read
23   it, if you need to.
24        Q.    You don't have any reason to believe that
25   that wasn't an accurate characterization of their       12:01:15
```



800.211.DEPO (3376)
EsquireSolutions.com

Hawkes Decl. Exhibit A
Page 16 of 30

JANE SULLIVAN, PH.D.                          February 28, 2025
P. POE 5 vs UNIVERSITY OF WASHINGTON                        65

1    discussion; do you?

2              ATTORNEY ROBERTS:  Objection.  Foundation.

3    Calls for speculation.

4        A.   Again, I'm not worried about Wayne showing up

5    on my doorstep.  I'm -- Wayne has -- I'm worried about    12:01:28

6    the people who hear what Wayne says at our public

7    meetings.

8        Q.   I think you testified earlier that

9    Dr. Johnson had threatened to kidnap your cats?

10             ATTORNEY ROBERTS:  Objection to the extent    12:01:53

11    it mischaracterizes what the witness said.

12             ATTORNEY HAWKES:  We can go back and read

13    the transcript, if you'd like.

14        Q.   Did Dr. Johnson ever threaten to kidnap your

15    cats?                                                    12:02:06

16             ATTORNEY ROBERTS:  Same objection.

17    Mischaracterizes the witness's testimony.

18        A.   No.  He said that I would be upset if

19    somebody came and kidnapped my cats, and referred to

20    them by name at an open public meeting.                 12:02:16

21        Q.   Are you sure that's what he said?

22             ATTORNEY ROBERTS:  Objection.  Vague and

23    ambiguous.  Also asked and answered.

24        A.   Yeah.  That's the best of my recollection,

25    that, yes.                                               12:02:27



800.211.DEPO (3376)
EsquireSolutions.com
Hawkes Decl. Exhibit A
Page 17 of 30

JANE SULLIVAN, PH.D.                          February 28, 2025
P. POE 5 vs UNIVERSITY OF WASHINGTON                        67

1    We're back on the record.

2        Q.    Okay.   Before that brief break, you were

3    referring to what you recall as an occasion when

4    Dr. Johnson had suggested that someone might kidnap

5    your cats; is that correct?                          12:04:27

6              ATTORNEY ROBERTS:   Object to the extent

7    it's beyond the scope of the deposition.

8    Mischaracterizes the witness's testimony.   Vague and

9    ambiguous as to time.

10             Go ahead.                                   12:04:40

11       A.    To the best of my recollection, the way that

12   Wayne laid out his, his argument, he started talking

13   about spinal cord research in cats, which is not

14   anything we're doing at, at UW.   But he, he was

15   talking about spinal cord research that had been done   12:04:59

16   in the past, and he said something along the lines of,

17   I'm sure Dr. Sullivan would object or fight if someone

18   came to take her cats, Sally and Thea, for, for this

19   research.

20       Q.    Okay.   And that's -- and as I recall, and I   12:05:21

21   just want to see if you recall the same thing, that

22   the actual transcript of what his remarks were is in

23   the record, either in this case or the prior lawsuit;

24   correct?

25             ATTORNEY ROBERTS:   Same objections as         12:05:34



1  previous.  Also, foundation.  To the extent you are

2  asking the witness about a document, you can put the

3  document in front of the witness.

4      A.   Yeah, I, I don't feel comfortable saying

5  anything more without being able to refresh my memory      12:05:46

6  with, with the actual document.  That's, that's my

7  best recollection of how it went.

8      Q.   Okay.  But to the extent that the transcript

9  of that exchange is somewhere in the record, would you

10 rely on the transcript or your own memory as to what      12:06:01

11 was actually said?

12           ATTORNEY ROBERTS:  Same objections as

13 previous.

14     A.   I'm telling you what I remember, to the best

15 of my recollection.                                        12:06:10

16           (Exhibit 11 marked for identification.)

17     Q.   The court reporter has just handed you what's

18 been marked as Exhibit 11.  And this is an email from

19 Kevin Grossman at the UW Police Department to Sally

20 Thompson-Iritani on January 8th, 2025; do you see         12:06:44

21 that?

22     A.   Yes.

23     Q.   And did Dr. Thompson-Iritani keep you

24 up-to-date on the status of UW police's investigation,

25 to the extent there was one?                               12:07:05



1          ATTORNEY ROBERTS:  Objection.  Foundation.

2   Vague and ambiguous.

3      A.   I was not on this particular email.  I saw

4   this message in a, in a Slack.  It was copied in a

5   Slack that should be part of the record.  And I don't      12:07:21

6   recall the date of, of that Slack message, when I saw

7   this message from Kevin copied.

8      Q.   Okay.  But you were brought up to speed on

9   the content of this email?

10          ATTORNEY ROBERTS:  Objection.  Vague, and      12:07:41

11   mischaracterizes the witness's testimony.

12      A.   In the Slack, that was, that was when I saw

13   this.

14      Q.   And in the email it says, "I wanted to let

15   you know that our crime analyst, Kendra Borzio, did a      12:07:57

16   search for the name in the email address associated

17   with the concerning message and found nothing"; do you

18   see that?

19      A.   Yes.

20      Q.   Okay.  Do you know what the police department      12:08:08

21   did to search for the name and email address?

22      A.   No.

23          ATTORNEY ROBERTS:  Objection.  Foundation.

24      A.   No.

25      Q.   Do you know whether beyond searching for the      12:08:22


ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com
Hawkes Decl. Exhibit A
Page 20 of 30

JANE SULLIVAN, PH.D.                          February 28, 2025
P. POE 5 vs UNIVERSITY OF WASHINGTON                      70

1    name and email address the UW police department did

2    any investigation concerning the email?

3              ATTORNEY ROBERTS:  Same objection.

4        A.   I don't know.

5              ATTORNEY HAWKES:  The next exhibit.          12:09:34

6              (Exhibit 12 marked for identification.)

7        Q.   The court reporter has handed you what's been

8    marked as Exhibit 12.  It's a rather long email chain.

9    I think the one I want to ask about is closer to the

10   end.  Yes.  Okay.  So the next-to-the-last page,       12:10:25

11   UW117, there's an email from Jennifer Iwamoto to Kevin

12   Grossman on January 15th, 2025; do you see that?

13             ATTORNEY ROBERTS:  And I'm just going to

14   object to the extent that this is a long email string,

15   which doesn't appear to have involved Dr. Sullivan.    12:10:54

16   So to the extent she's being asked about it, I'd like

17   to make sure she's had time to review it.

18             ATTORNEY HAWKES:  Okay.

19       A.   Okay.

20       Q.   Okay.  So going to that email I was just      12:11:48

21   referring to, on 117, UW117.  It says, "Hi Kevin,

22   Thanks for meeting with us last week to talk about

23   IACUC meeting logistics and security"; do you see

24   that?

25       A.   Yes.                                          12:12:07



```
 1   UW personnel on animal, what I characterize as animal
 2   extremist concerns?
 3              ATTORNEY ROBERTS:  Objection.  Beyond the
 4   scope.  Foundation.
 5        A.   Yeah, I don't know.                              12:24:35
 6              ATTORNEY ROBERTS:  Relevance.
 7        A.   You'd have to ask the FBI.
 8        Q.   So can you describe in as much detail as you
 9   can what Special Agent Gonzales or any other FBI
10   personnel who attended this meeting had to say about   12:24:57
11   the email.
12              ATTORNEY ROBERTS:  Objection.  Vague.
13              Go ahead.
14        A.   Yeah, I'm, I'm not clear about what I am --
15   what's appropriate for me to share of the              12:25:11
16   conversations that I've had with the FBI agent, so I'm
17   not going to answer that.
18              ATTORNEY HAWKES:  I don't believe that
19   there's any privilege between UW and the FBI, so I
20   think she needs to answer the question.               12:25:30
21              ATTORNEY ROBERTS:  Can we take a break for
22   a second?
23              ATTORNEY HAWKES:  There's a question
24   pending.  I'd rather not.
25              ATTORNEY CREIGHTON:  Could you repeat the    12:25:49
```



1    question.

2                    (Reporter read back as requested the

3                    question that was pending.)

4            ATTORNEY ROBERTS:   I mean, I'm going to

5    object to it, based on relevance, but I'm not going to    12:26:15

6    instruct you not to answer the question as asked.

7        A.   Okay.   So I will just -- so Kenna said that

8    the FBI could neither confirm nor deny that they were

9    taking any action in this case.

10       Q.   Anything else that she said about anything    12:26:43

11   that the FBI may or may not have been doing in

12   response to the email?

13           ATTORNEY ROBERTS:   Objection.  Asked and

14   answered.

15       A.   They just asked us to please keep them    12:26:56

16   informed.

17       Q.   Did Special Agent Gonzales characterize the

18   email as a threat?

19           ATTORNEY ROBERTS:   Objection.  Foundation.

20   Speculation.                                            12:27:15

21       A.   She could neither confirm nor deny that the

22   FBI was investigating.

23       Q.   Did Special Agent Gonzales participate in any

24   discussions about security for future IACUC meetings?

25           ATTORNEY ROBERTS:   Objection.  Vague and    12:27:36



JANE SULLIVAN, PH.D.                          February 28, 2025
P. POE 5 vs UNIVERSITY OF WASHINGTON                        83

```
 1  who was around as we came and went.

 2      Q.   Anything else, that you can recall?

 3           ATTORNEY ROBERTS:  Objection.  Vague.

 4      A.   No.  And some of what I just said, so, as I'm

 5  thinking more about those conversations, at least some      12:29:22

 6  of, some of that advice was also coming from the other

 7  agent that was sitting with, with Kenna on the, on the

 8  Zoom.

 9      Q.   Okay.  What was the input from the UW Police

10  Department at this meeting?  Did they have anything to      12:29:44

11  say?

12      A.   They, they agreed to, to work with us, and to

13  try to find a secure location for our public meeting

14  space.

15      Q.   Did they indicate whether they had taken any      12:29:59

16  investigation into the email?

17      A.   I don't think they specifically said that

18  they were, were looking into anything beyond the --

19  having that IT person try to see if they could get any

20  information from the, the header of the, the email.      12:30:23

21      Q.   Did anyone from the UW Police Department

22  characterize the email as a threat?

23      A.   I don't recall.

24      Q.   I think you mentioned that there was a --

25  well, let me back up for a second.      12:30:51
```



JANE SULLIVAN, PH.D.                              February 28, 2025
P. POE 5 vs UNIVERSITY OF WASHINGTON                          96

1   Also misstates the witness's testimony.

2   Mischaracterizes the document.

3        A.   We discuss it when it's relevant.

4        Q.   What in your view makes someone an animal

5   extremist?                                        12:53:25

6        A.   Certainly someone who thinks that no animal

7   should be used in research.

8        Q.   So that makes -- so would you say that

9   everyone who fits that definition is someone who is

10  likely to engage in violence?                     12:53:47

11            ATTORNEY ROBERTS:   Objection.   Vague.

12  Foundation.   Mischaracterizes the witness's testimony.

13       A.   Yeah, I can't predict which subset is gonna

14  be violent, which is exactly why I'm so afraid when I

15  see this kind of menacing message.   I don't know  12:54:01

16  whether to take this person seriously or, or not.

17       Q.   Okay.   But there are -- and I think you

18  mentioned, you know, Dr. Johnson might be somebody who

19  falls into this bucket.   But there are people that you

20  would characterize as animal extremists who you are 12:54:18

21  not worried are going to engage in violence; is that

22  fair to say?

23            ATTORNEY ROBERTS:   Objection to the extent

24  it mischaracterizes the witness's testimony.

25       A.   I'm sure there are some.                 12:54:31



1  organization?

2      A.  Yes, I do.

3      Q.  To your knowledge, has NARN ever engaged in

4  any violent activities?

5              ATTORNEY ROBERTS:  Objection.  Foundation.    12:56:27

6      A.  I'm not aware of them.

7      Q.  Under that same standing item, it says,

8  "Meeting this afternoon regarding email received last

9  month"; do you see that?

10     A.  I do.                                              12:57:00

11     Q.  Okay.  Do you remember discussing that a

12 meeting on January 7th, regarding the December 12th

13 email?

14     A.  Again, I, I don't remember any specifics

15 about particular meetings on particular dates.          12:57:15

16     Q.  Do you recall any, participating in any

17 meetings about the December 12th email, other than the

18 ones that we've already discussed here today?

19             ATTORNEY ROBERTS:  Objection.  Vague.

20     A.  Yeah, I'm -- I suspect that it was discussed    12:57:39

21 at other, at other meetings, but I don't know.  It is

22 a topic that comes up with some regularity these days.

23     Q.  Okay.  And then right under that it says, "JS

24 contemplating reaching out.  Could we learn

25 something?"  Is that a reference to you?                  12:58:04



JANE SULLIVAN, PH.D.                              February 28, 2025
P. POE 5 vs UNIVERSITY OF WASHINGTON                          99

```
 1       A.   Yes.

 2            ATTORNEY ROBERTS:   Objection.   Foundation.

 3       A.   Yes, it is.

 4       Q.   Okay.   So you were contemplating reaching

 5   out.   What did you mean -- or what do you understand      12:58:11

 6   that to mean?

 7       A.   So you have an email document of the, the

 8   message that I drafted back to the person who sent the

 9   menacing email.   I was very aware of the fact that we

10   had a lot of people who were very afraid.   We had a      12:58:28

11   lot of meetings.   A lot of people involved with trying

12   to figure out how to move forward safely, and we

13   really didn't know what, what to make of this, of this

14   message.   Is it, is it as, truly as menacing and

15   perhaps even threatening the way some people      12:58:50

16   interpreted it, or is it possible that this was

17   someone who just had a really bad day?

18            And so I thought that if we could have any

19   kind of interaction with that person, it would help us

20   understand better where, where they were coming from.      12:59:11

21   Sort of assess the threat level.

22            And I also am aware that there are many

23   people out there who, who get misinformation from

24   PETA, and become, you know, very concerned, very

25   worried, very angry because they believe that we are      12:59:32
```



1  they might have that this was leading them to think

2  that we were harming animals.  And so I drafted a

3  message that I hoped would elicit a response to engage

4  in a conversation, and as far as I know, we never

5  heard anything back.  But I, I drafted that message,          13:01:36

6  and then it was sent back through the same email

7  account that the menacing message was received.

8              (Exhibit 18 marked for identification.)

9      Q.   And you've just been handed Exhibit 18, which

10  is an email from you to Jennifer Iwamoto on              13:02:07

11  January 10th.  This appears to be a draft of the email

12  that you were just referencing; is that right?

13      A.   It's the text for the response, yes.

14      Q.   And that was then sent back to the email

15  address to which the original email was sent?            13:02:24

16      A.   Yes.

17      Q.   Okay.  I want to go back to Exhibit 7, just

18  for a second.  We spent some rather contentious time

19  talking about the list of precautions that begins at

20  UW54.  And I wanted to ask if, did you have any          13:02:51

21  conversations with anyone on the IACUC or any

22  alternate IACUC members subsequent to this going out

23  to them about whether they should adopt any of the

24  measures listed here?

25              ATTORNEY ROBERTS:  Object to the extent       13:03:15



1    it's compound.  Vague.  Asked and answered.

2              Go ahead.

3       A.   No.

4       Q.   Okay.  Did you have any discussions with any

5    IACUC members or alternates after the December 12th          13:03:28

6    email came in about what personal security measures

7    they should or should not adopt?

8              ATTORNEY ROBERTS:  Same objections.

9       A.   Making the decision to go remote, meant that

10   I was no longer afraid for the safety of my IACUC           13:03:51

11   members at the meetings.  My focus was on the safety

12   of the OAW staff member, who would be in the, in the

13   public meeting space.  That was the focus for my --

14   for security issues, and we focused on making it a

15   safe space.                                                 13:04:12

16      Q.   So that's a no?

17             ATTORNEY ROBERTS:  Objection.

18      A.   Can you reask your question.

19      Q.   I think it was a questions yes-or-no

20   question.                                                   13:04:28

21             ATTORNEY HAWKES:  Can you reread the

22   question before her last answer.

23             (Reporter read back as requested the

24              question that was pending.)

25             ATTORNEY ROBERTS:  Object to the form.          13:04:51



JANE SULLIVAN, PH.D.                                    February 28, 2025
P. POE 5 vs UNIVERSITY OF WASHINGTON                                 105

1                    C E R T I F I C A T E

2    STATE OF WASHINGTON       )
                               ) ss.
3    COUNTY OF KING            )

4

              I, the undersigned Registered
5    Professional Reporter and Washington Certified Court
     Reporter, hereby certify that the foregoing deposition
6    upon oral examination of JANE SULLIVAN, Ph.D. was
     taken before me on February 28, 2025 and transcribed
7    under my direction;

8             That the witness was duly sworn by me
     pursuant to RCW 5.28.010 to testify truthfully; that
9    the transcript of the deposition is a full, true, and
     correct transcript to the best of my ability; that I
10   am neither attorney for, nor a relative or employee
     of, any of the parties to the action or any attorney
11   or counsel employed by the parties hereto, nor
     financially interested in its outcome.
12            I further certify that in accordance
     with CR 30(e), the witness was given the opportunity
13   to examine, read, and sign the deposition, within 30
     days, upon its completion and submission, unless
14   waiver of signature was indicated in the record.

15

              IN WITNESS WHEREOF, I have hereunto set
16   my hand and seal this date: March 6, 2025.

17

18

19

20   \S\ PEGGY FRITSCHY HAMILTON, RPR, CSR

21        Washington Certified Court Reporter No.

22   29906/No. 2704.   License expires 07-02-25.

23        Oregon Certified Shorthand Reporter No.

24   230114.  License expires September 30, 2026.

25

