# EXHIBIT U

**United States Department of Agriculture**



# Animal Care Program Oversight of Dog Breeders

**Audit Report 33601-0002-31**

**June 2021**

OFFICE OF INSPECTOR GENERAL

# Animal Care Program Oversight of Dog Breeders

## Audit Report 33601-0002-31

OIG evaluated APHIS' controls to ensure compliance with the AWA and followed up on agency actions in response to a previous audit; OIG could not fully evaluate APHIS' controls due to the COVID-19 pandemic.

## OBJECTIVE

Our objectives were to evaluate the adequacy of APHIS' controls to ensure breeder compliance with the AWA and follow up on agency actions taken in response to Audit Report 33002-4-SF, APHIS Animal Care Program Inspections of Problematic Dealers, issued in May 2010. Due to the Coronavirus Disease 2019 pandemic, we experienced a scope limitation (as more fully explained in the Scope and Methodology section).

## REVIEWED

We reviewed applicable laws, regulations, and APHIS AC policies and procedures; interviewed APHIS officials; and reviewed APHIS AC documents.

## RECOMMENDS

We recommend that APHIS ensure that the issues with ACIS do not persist in the new information systems. We also recommend that APHIS develop and implement guidance, policies, and procedures to ensure a consistent response to and documentation of received complaints, and to provide inspectors with appropriate training.

## WHAT OIG FOUND

The United States Department of Agriculture (USDA) delegates the responsibility for administering the Animal Welfare Act (AWA) to the Animal and Plant Health Inspection Service (APHIS). APHIS' Animal Care (AC) Program is charged with developing and implementing regulations to support the AWA. The AWA requires that all individuals or businesses dealing with animals covered under the AWA be licensed or registered with APHIS. USDA's Office of Inspector General (OIG) previously performed an audit of APHIS' enforcement of the AWA for commercial dog breeders. Following the issuance of that report, we received multiple Congressional communications requesting a follow-up audit.

We identified data reliability issues with reports generated from APHIS' Animal Care Information System (ACIS) database. This occurred because the agency no longer has a data manager for ACIS, and several large patches to the system have made it unreliable. As a result, APHIS is impeded in its ability to make informed management decisions, identify trends in noncompliant items, and identify how many inspections have been completed. APHIS is working towards migrating away from ACIS and transitioning to new information systems.

We also found that APHIS did not consistently address complaints it received or adequately document the results of its follow-up. This occurred because APHIS does not have a documented process for responding to complaints or for recording the results of the agency's actions. As a result, some dog breeder facilities may be conducting regulated activity without a USDA license or oversight. Therefore, APHIS is not able to ensure the overall health and humane treatment of animals at these facilities.

APHIS agreed with our findings and recommendations, and we accepted management decision on all three recommendations.

 **OFFICE OF INSPECTOR GENERAL**
United States Department of Agriculture 

**DATE:** June 30, 2021

**AUDIT
NUMBER:** 33601-0002-31

**TO:** Kevin Shea
Administrator
Animal and Plant Health Inspection Service

**ATTN:** Robert Huttenlocker
Deputy Administrator
Marketing and Regulatory Programs – Business Services

**FROM:** Gil H. Harden
Assistant Inspector General for Audit

**SUBJECT:** Animal Care Program Oversight of Dog Breeders

This report presents the results of the subject review. Your written response to the official draft is included in its entirety at the end of the report. We have incorporated excerpts from your response, and the Office of Inspector General's (OIG) position, into the relevant sections of the report. Based on your written response, we are accepting management decision for all three audit recommendations in the report, and no further response to this office is necessary. Please follow your internal agency procedures in forwarding final action correspondence to the Office of the Chief Financial Officer (OCFO).

In accordance with Departmental Regulation 1720-1, final action needs to be taken within 1 year of each management decision to prevent being listed in the Department's annual Agency Financial Report.

We appreciate the courtesies and cooperation extended to us by members of your staff during our audit fieldwork and subsequent discussions. This report contains publicly available information and will be posted in its entirety to our website (http://www.usda.gov/oig) in the near future.

## Table of Contents

Background and Objectives ................................................................. 1

Finding 1:  APHIS Needs to Ensure the Reliability and Security of its
Mission-Critical Information System ..................................................... 3

    Recommendation 1 ................................................................. 4

Finding 2:  APHIS Should Improve Controls Over Its Complaint Process .... 6

    Recommendation 2 ................................................................. 7

    Recommendation 3 ................................................................. 8

Scope and Methodology ..................................................................... 9

Abbreviations ................................................................................ 11

Exhibit A:  Number of Licensed Dog Breeders by State ........................... 12

Exhibit B:  Results of Prior Audit Recommendations ............................. 14

Agency's Response .......................................................................... 17

# Background and Objectives

## Background

In 1966, Congress passed the Animal Welfare Act (AWA) in response to public concerns regarding stolen pets being used in laboratory research.[1]  The AWA set Federal standards for humane care and treatment, which must be provided for certain animals bred for commercial sale, exhibited to the public, used in biomedical research, or transported commercially. Individuals who operate facilities for these purposes must provide their animals with adequate care and treatment in the areas of housing, handling, sanitation, nutrition, water, veterinary care, and protection from extreme weather and temperatures.  Although Federal requirements establish basic standards, regulated businesses are encouraged to exceed these standards.

The United States Department of Agriculture (USDA) delegates the responsibility for administering the AWA to the Animal and Plant Health Inspection Service (APHIS).  APHIS' Animal Care (AC) Program is charged with developing and implementing regulations to support the AWA.  The AWA requires that all individuals or businesses dealing with animals covered under the AWA be licensed or registered with APHIS.  Certain activities and businesses are not covered under the AWA such as retail pet stores, retail dog and cat sales, hobby breeders,[2] and private owners of exotic pets.[3]  Before AC issues a license, the applicant must be in compliance with all standards and regulations under the AWA.

As of January 2020, there were 2,422 licensed dog breeders (see Exhibit A for a breakdown by State).  AC ensures regulatory compliance with the AWA primarily through inspections.  In fiscal year (FY) 2019, AC conducted over 9,000 inspections assessing the health, care, and treatment of more than 1 million animals.  USDA inspectors use the AWA standards and regulations as the baseline by which they assess a facility's level of care provided to animals. When inspectors identify items that are not in compliance with the AWA, APHIS holds those facilities responsible for properly addressing and correcting those items within a set timeframe. If the facility does not correct the deficiencies noted, APHIS may initiate legal action.  This could result in animal confiscation, fines, cease-and-desist orders, or license suspensions and revocations.  In addition to conducting routine, unannounced inspections, AC may perform inspections in response to public concerns.

AC encourages individuals to inform AC about facilities that should be licensed or registered. To accomplish its mission, APHIS relies on a database, Animal Care Information System (ACIS)

---

[1] Act of August 24, 1966, Pub. L. 89–544, 80 Stat. 350.  In 1970, the Act was amended and is referred to as the "Animal Welfare Act of 1970."

[2] A hobby breeder owns no more than four breeding female pet animals, "pocket pets," and/or domesticated farm-type animals, and sells only their offspring, which were born and raised on their premises, for pets or exhibition.  ("Pocket pets" are small, non-dangerous exotic or wild mammals, such as sugar gliders, hedgehogs, degus, spiny mice, prairie dogs, flying squirrels, and jerboas.)  In addition, the term applies to breeders that sell fewer than 25 dogs and/or cats each year, which were born and raised on their premises, for research, teaching, or testing purposes or to any research facility.

[3] Examples of exotic animals include wild/exotic big cats (lions, tigers, leopards, jaguars, cheetah, hybrids, etc.), wild/exotic canids (wolves, hyena), and hoof stock exotic animals (zebra, hippopotami, ibex, camel, giraffe, etc.).

to document, collect, analyze, maintain, and report information gathered during its inspections. ACIS provides inspectors with access to information about the facilities being inspected, including their address, phone number, inspections conducted in the last 3 years, and animal inventory.

APHIS' Investigative and Enforcement Services (IES) personnel investigate alleged violations when licensees or registrants have not taken corrective measures to come into compliance with the AWA, individuals or businesses are conducting regulated activity without a license or without being registered with USDA, or the noncompliance presents (or presented) a direct risk to the health and well-being of the animals involved. When information and evidence gathered during an investigation supports a finding of a violation, APHIS may pursue enforcement action against the person or entity. In FY 2019, APHIS initiated 17 investigative cases for alleged AWA violations and assessed $147,300 in penalties.

**Prior Audit Follow Up**

In May 2010, OIG issued Audit Report 33002-4-SF, *APHIS Animal Care Program Inspections of Problematic Dealers*.[4] The prior audit objectives were to: (1) evaluate the adequacy of APHIS' controls to ensure dealer compliance with AWA, (2) review the impact of recent changes to the penalty assessment process, and (3) evaluate AC's new mission critical information system (i.e., ACIS) for reliability and integrity. However, due to unexpected delays in implementing the new system, the team was unable to complete the third objective. The prior audit identified several deficiencies in APHIS' enforcement of the AWA and included 14 recommendations.

Following the issuance of the prior audit report, OIG planned for and received multiple Congressional communications[5, 6] requesting a follow-up review that would examine APHIS' actions in response to OIG's recommendations. Our current audit objectives included following up on APHIS' actions in response to recommendations from the previous report. Our review found that APHIS addressed the recommendations (see Exhibit B for a list of the recommendations).

## Objectives

Our objectives were to evaluate the adequacy of APHIS' controls to ensure breeder compliance with the AWA and follow up on agency actions taken in response to Audit Report 33002-4-SF, *APHIS Animal Care Program Inspections of Problematic Dealers*, issued in May 2010.

Due to the Coronavirus Disease 2019 (COVID-19) pandemic, we experienced a scope limitation, which is more fully described in the Scope and Methodology section of this report, and were unable to evaluate breeder compliance with the AWA.

---

[4] Audit Report 33002-4-SF, *Animal and Plant Health Inspection Service Animal Care Program Inspections of Problematic Dealers*, May 2010.
[5] Pocan, The Honorable Mark and Honorable Brian Fitzpatrick, Letter to Honorable Phyllis K. Fong (Dec. 11, 2017).
[6] Feinstein, The Honorable Dianne, Letter to Honorable Phyllis K. Fong (June 26, 2019).

# Finding 1:  APHIS Needs to Ensure the Reliability and Security of its Mission-Critical Information System

We identified data reliability issues with reports generated from APHIS' ACIS database.  This occurred because the agency no longer has a data manager for ACIS, and, after several large patches to the system, the information queries are no longer reliable.  As a result, APHIS is impeded in its ability to make informed management decisions, identify trends in noncompliant items, and identify how many inspections have been completed without relying on labor-intensive, manually created reports.

Federal internal control standards state that APHIS management is responsible for the design, implementation, and effectiveness of its internal controls.[7]  These standards further require management to use and communicate quality information internally and externally to achieve the entity's objectives.[8]

During our review, we identified data reliability issues with reports generated from the ACIS database.  ACIS, APHIS' system of record,[9] is a mission-critical data system used to report inspection statistics to Congress; track active licensees, registrants, and non-compliant inspection reports; document facility inspections; and maintain licensee and registrant information.  During fieldwork, we queried ACIS to obtain a complete list of all active licensed dog breeders and associated inspections for FYs 2017 through 2019.  However, due to system limitations and the level of access granted to OIG, we were unable to retrieve a complete dataset.  APHIS then attempted to provide the data to OIG multiple times.  Each time, APHIS officials provided a different, incomplete dataset.  APHIS officials explained that ACIS is a legacy system that is no longer supported and acknowledged that ACIS-generated reports are unreliable and that the ability to query information in ACIS is no longer functional.  APHIS officials explained that, after a system patch or update, the same search parameters can produce reports with different datasets.  Therefore, APHIS officials are creating reports by hand to ensure accuracy.  Agency officials stated that when they use ACIS queries, there is no way to tell how many inspections have occurred without comparing the data to the Risk Based Inspection System information.[10]

In addition to the data reliability issue, we found a security issue regarding user permissions in ACIS.  APHIS uses role-based access controls to provide access to ACIS.  For the purpose of this audit, APHIS assigned OIG three "Read Only" roles in ACIS.  Based on the status of these

---

[7] Government Accountability Office (GAO), *Standards for Internal Control in the Federal Government*, GAO-14-704G (Sept. 2014).
[8] Per GAO's *Standards for Internal Control in the Federal Government*, the Information and Communication component requires that:  (1) management should use quality information to achieve the entity's objectives, (2) management should internally communicate the necessary quality information to achieve the entity's objectives, and (3) management should externally communicate the necessary quality information to achieve the entity's objectives.
[9] Notice of a Modified System of Records, 84 Fed. Reg. 56999 (Oct. 24, 2019).
[10] AC uses a risk-based inspection system to support its focused inspection strategy, allowing more frequent and in-depth inspections at facilities with a higher risk of animal welfare concerns, and fewer at those that are consistently in compliance.  The system uses several objective criteria, including but not limited to past compliance history, to determine the minimum inspection frequency at each licensed and registered facility.

roles as "Read Only," OIG should not have had the ability to create or edit records. However, the agency informed OIG that an OIG user had created a record in the system. As a result, an APHIS inspector received an error message when entering an inspection report. When OIG questioned how it was possible for an OIG user with "Read Only" access to create a record within ACIS, APHIS officials could not provide an explanation. While APHIS is transitioning away from ACIS, it is essential that this user permissions issue does not continue to exist in the new systems.

During our audit, APHIS officials acknowledged there are reliability issues with ACIS-generated reports and agreed that the reports may not be accurate. However, on September 8, 2020, the agency replaced ACIS with SalesForce and eFile after obtaining the authority to operate the new systems. Due to this transition, the agency did not focus on investing resources in ACIS. APHIS officials stated that SalesForce will track complaints, and there will be a dashboard on the main page with real-time summaries of APHIS data. The dashboard will contain the qualitative and quantitative data, so it will be easier to track data without having to write new reports. All of the manual data formulation and compilation will be automated. APHIS is using eFile to assist breeders in determining the type of license they need.

Overall, the lack of a reliable information system impedes APHIS' ability to make informed management decisions, to identify trends in noncompliant items, and to identify how many inspections have been completed. The agency has transitioned to SalesForce and eFile. However, the agency needs to ensure the reliability and security of these information systems which are mission-critical. APHIS needs to ensure that the issues with ACIS do not continue with the new systems.

## Recommendation 1

APHIS should ensure the data reliability and security issues with ACIS do not persist in SalesForce and eFile.

### Agency Response

In its June 25, 2021, response, APHIS stated:

APHIS agrees with this recommendation. As of September 7, 2020, Animal Care (AC) has transitioned to eFile to remedy the inconsistent data and security issues that impacted ACIS. APHIS eFile is set up on the SalesForce platform. Therefore, our actions to ensure data reliability and security in eFile are carried out within the SalesForce platform. While eFile has been live for less than a year, the reliability of reports and accuracy of data pulled from it are significantly improved. The eFile system allows tracking of individual actions within the database to identify the source of the change and provides consistent data management and access controls based on assigned users. In April 2021 AC developed an eFile Change Control Board and a standard operating procedure (SOP) for submitting requests through the AC Operations and Maintenance unit. They meet monthly to ensure required enhancements or maintenance are properly requested, approved, and tracked by AC. On November 7, 2020 AC added a data management

analyst to our staff as an additional resource to validate data.  Additionally, the integrity of eFile data is enhanced with security support from OCIO-CEC.

**OIG Position**

We accept management decision for this recommendation.

# Finding 2:  APHIS Should Improve Controls Over Its Complaint Process

We found that APHIS did not consistently address complaints it received or adequately document the results of its followup.  This occurred because APHIS does not have a documented process for resolving complaints and recording the results of the agency's actions.  As a result, some dog breeder facilities may be conducting regulated activity without a USDA license or oversight.  Therefore, APHIS is not able to ensure the overall health and humane treatment of animals at these facilities.

GAO's *Standards for Internal Control in the Federal Government* require that management implement control activities through policies and require all transactions and other significant events be completely and accurately documented and readily available for examination.  All documentation and records should be properly managed and maintained.[11]

At the time of our review, APHIS did not have an official documented process for responding to complaints or for recording the results of the agency's followup.  Although APHIS is drafting a standard operating procedure (SOP) for complaints, it does not provide a detailed and documented process for APHIS inspectors to adhere to when responding to complaints or when recording the results of a followup.  Additionally, it does not provide a detailed process to ensure complaints of unlicensed activity are investigated.

We found that APHIS did not consistently address or adequately document 145 of the 322 complaints we reviewed.[12]  We found that APHIS' response to complaints it received[13] was not adequately documented in ACIS.[14]  Examples included:  (1) the results section of the complaint form was not always completed to document APHIS' course of action in response to the complaint, (2) the complaint form prepared by APHIS was not uploaded to ACIS, and (3) the details of the complaint were not included on the complaint form or provided as an attachment in ACIS.

In addition, we found inconsistencies in APHIS' course of action when responding to a complaint.  For some complaints, APHIS would attempt to directly contact the facility via phone or site visit.  In response to other complaints, APHIS would only send a letter to the breeder indicating that APHIS had been informed that the breeder may be conducting activities that would require a license.  When we asked APHIS officials to differentiate when they would directly contact a facility versus only sending a letter, APHIS officials stated that the complaint responses would have to be looked into on a complaint-by-complaint basis.  They stated that the potential reasons for the different responses could include:  (1) the breeder could not be

---

[11] GAO, *Standards for Internal Control in the Federal Government*, GAO-14-704G (Sept. 2014).

[12] For FYs 2017–2019, we reviewed all 322 complaints received by APHIS related to dog breeders.

[13] APHIS encourages the public to report concerns about the conditions of regulated facilities or inform APHIS about facilities that should be licensed or regulated by filing an animal welfare complaint.

[14] ACIS is APHIS' mission-critical data system used to process new and renewal applications for license or registration and allows the user to review and print inspection reports.  The system is used to collect and analyze inspection data and update information related to AWA compliance.  APHIS stores all licensee and registrant information in ACIS, including complaints.

contacted, (2) safety concerns for the inspector, (3) information was verifiable without contact, or (4) the breeder had not previously received licensing information. Based on our review of the complaint forms, we could not determine the rationale for the different courses of followup action taken when responding to a complaint.

In one example, an inspector called the facility and, based on the conversation, determined that the facility required a license. According to notes in ACIS, the facility applied for a USDA license. However, the system did not contain any documentation that APHIS conducted the pre-licensing inspection necessary to complete the licensing process[15] or why APHIS canceled the licensing process.[16] If APHIS performed additional followup, it was not documented within ACIS.

In another example, APHIS interviewed the respondent and determined no regulated activity was being performed. Based on documentation in ACIS, we were unable to determine whether APHIS performed additional followup before making that determination. However, our review of the complaint identified that the facility appeared to be conducting regulated activity without a license.[17]

These inconsistencies occurred because the agency does not have a documented process for how APHIS inspectors either follow up on or record the agency's response to received complaints. While APHIS has a draft SOP, it has not been officially issued and does not provide inspectors with enough detail on how to respond to received complaints or how to record the results of the agency's followup.

Without a documented process, dog breeder facilities may be conducting regulated activity without a USDA license or oversight. Therefore, APHIS needs to develop and implement guidance, policies, and procedures to provide a consistent process for responding to complaints and documenting its response to complaints. Upon finalizing the draft SOP, APHIS should provide training to inspectors on the new complaint process, including the process of responding to complaints, documenting actions taken, and the reason for those actions. APHIS officials generally agreed with our recommendations.

## Recommendation 2

Develop and implement guidance, policies, and procedures to ensure a consistent response to complaints and to ensure the response is sufficiently documented.

---

[15] APHIS performs a pre-licensing inspection of all facilities that apply to be licensed or registered. Applicants must be in compliance with all standards and regulations under the AWA before APHIS will issue a license.

[16] For pre-licensing inspections, the applicant has up to three pre-licensing inspections within 60 days to demonstrate compliance with the AWA.

[17] Based on the breeder's website, they hold five or more breeding females and are selling dogs in transactions that are not face-to-face. APHIS' definition of a retail pet store includes breeders that sell animals directly to buyers in face-to-face transactions. If breeders sell face-to-face, they do not require a USDA license. If breeders own more than four breeding females and do not meet APHIS' definition of a retail pet store, they are required to be licensed.

**Agency Response**

In its June 25, 2021 response, APHIS stated:

APHIS agrees with this recommendation.  AC will develop and implement guidance and procedures for AC employees on handling complaints in a new SOP document titled "Complaint Guidance".  APHIS will incorporate within the finalized "Complaint Guidance" SOP sufficient detail for inspectors across the country to respond consistently to all complaints received, including, specifically, how to document the complaint response and follow-up within eFile.  eFile now provides a complaint report and dashboard to AC employees and management.  APHIS anticipates releasing the "Complaint Guidance" SOP by October 31, 2021.

**OIG Position**

We accept management decision for this recommendation.

## Recommendation 3

Provide inspectors training on the process of responding to complaints, documenting actions taken, and the reason for those actions.

**Agency Response**

In its June 25, 2021 response, APHIS stated:

APHIS agrees with this recommendation.  AC will provide employees with training on handling complaints and ensure that the actions taken are in accordance with guidance and are documented in eFile.  As noted above, APHIS will incorporate the requirements in a new SOP document titled "Complaint Guidance."  This document will be distributed to and discussed with AC employees during employee team meetings.  APHIS will also update the AC Inspection Guide to include the information on complaint response and guidance to inspectors for consistent application across the program.  APHIS anticipates updating the AC Inspection Guide by March 31, 2022.

**OIG Position**

We accept management decision for this recommendation.

## Scope and Methodology

We conducted our fieldwork at APHIS' national office in Riverdale, Maryland; APHIS' regional office in Fort Collins, Colorado; and six breeder facilities in Missouri.[18]  We performed fieldwork between August 2019 and November 2020.  Our audit covered breeder activity during FYs 2017–2019.  As of January 2020, there were 2,422 licensed dog breeders in 37 States.  For a list of the total number of dog breeders by State, see Exhibit A.

During the course of our audit, we non-statistically selected 15 States to visit.  These States were selected primarily based on the concentration of dog breeders.  Across the 15 States, there were 60 AC inspectors.  Within each sampled State, we non-statistically selected 40 of the 60 AC inspectors from the States with the highest concentration of dog breeders.  We planned to select three dog breeder facilities per AC inspector based on the location, number of violations, and other factors as needed to make site determinations.  In total, we planned to select 120 sites for review.  However, as of March 2020, all planned OIG on-site observations of APHIS inspections were canceled due to health and safety concerns related to the COVID-19 pandemic.  Subsequently, APHIS limited its inspections to emergency and critical inspections only.  Therefore, we were unable to travel and observe APHIS inspections.  Without being able to observe APHIS inspections, we experienced a scope limitation and were unable to satisfy our audit objective to ensure breeder compliance with the AWA.  We did, however, identify reportable issues that were related to the audit objectives.

To accomplish our objectives, we:

- reviewed applicable laws, regulations, and APHIS AC policies and procedures concerning controls to ensure dog breeder compliance with AWA,
- interviewed APHIS AC officials to gain a sufficient understanding of controls to ensure dog breeder compliance with AWA,
- interviewed APHIS AC officials to gain a sufficient understanding of the agency's actions in response to Audit Report 33002-4-SF,
- obtained and reviewed AC complaint files for FYs 2017–2019 related to dog breeders to gain an understanding of how each complaint was processed,
- obtained and reviewed AC documents related to the agency's actions in response to OIG Audit Report 33002-4-SF, and
- interviewed APHIS officials to identify the cause of data quality deficiencies noted during our review.

We evaluated the effectiveness of information systems controls during sample selection and to accomplish our control objectives.  We obtained APHIS data for use in scoping our audit as well as for selecting our sample of States, inspectors, and breeders to review.  We assessed the reliability of the data by:

---

[18] As part of planning our fieldwork, we observed APHIS inspections at six breeder facilities to gain an understanding of APHIS' inspection process so that we could plan our fieldwork.

- reviewing published information about the data,
- interviewing agency officials knowledgeable about the data,
- comparing supporting documentation to the information contained in the agency data for accuracy, and
- testing completeness by determining whether all active breeders were included in the agency-provided data.

Overall, we determined that the ACIS-generated dog breeder data provided by APHIS were unreliable, which is explained in greater detail in our finding (see Finding 1).

We assessed internal controls to satisfy our modified audit objectives. Our assessment included internal control components and principles of the Standards for Internal Control in the Federal Government.[19] In particular, we assessed the following components and underlying principles:

| Component | Principle |
|---|---|
| **Control Activities** | Management should design control activities to achieve objectives and respond to risks |
| **Control Activities** | Management should design the entity's information system and related control activities to achieve objectives and respond to risks |
| **Control Activities** | Management should implement control activities through policies |
| **Information and Communication** | Management should use quality information to achieve the entity's objective |
| **Information and Communication** | Management should internally communicate the necessary quality information to achieve the entity's objectives |
| **Information and Communication** | Management should externally communicate the necessary quality information to achieve the entity's objectives |

However, because our review was limited to these internal control components and underlying principles, it may not have disclosed all internal control deficiencies that may have existed at the time of this audit. We conducted this performance audit in accordance with Generally Accepted Government Auditing Standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objective. Except for the scope limitation described above, we believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on our audit objective.

---

[19] GAO, *Standards for Internal Control in the Federal Government*, GAO-14-704G (Sept. 2014).

# Abbreviations

AC ............................................Animal Care
ACIS ........................................Animal Care Information System
APHIS.....................................Animal and Plant Health Inspection Service
AWA ........................................Animal Welfare Act
COVID-19................................Coronavirus Disease 2019
FY ............................................fiscal year
GAO.........................................Government Accountability Office
IES............................................Investigative and Enforcement Services
OIG ..........................................Office of Inspector General
SOP ..........................................standard operating procedure
USDA.......................................United States Department of Agriculture

## Exhibit A:  Number of Licensed Dog Breeders by State

| State | Number of Breeders |
|---|---|
| Missouri | 764 |
| Indiana | 331 |
| Ohio | 310 |
| Iowa | 217 |
| Oklahoma | 155 |
| Kansas | 116 |
| Arkansas | 105 |
| Wisconsin | 83 |
| Illinois | 49 |
| New York | 40 |
| Nebraska | 39 |
| South Dakota | 38 |
| Pennsylvania | 35 |
| Texas | 35 |
| Minnesota | 21 |
| Michigan | 15 |
| Louisiana | 9 |
| Colorado | 7 |
| Mississippi | 5 |
| North Dakota | 5 |
| Georgia | 4 |
| Oregon | 4 |
| South Carolina | 4 |
| Utah | 4 |
| Florida | 3 |
| North Carolina | 3 |
| Unknown[20] | 3 |
| Virginia | 3 |
| Washington | 3 |
| Kentucky | 2 |
| Maryland | 2 |
| Nevada | 2 |
| New Mexico | 2 |
| Alabama | 1 |
| Alaska | 1 |
| Montana | 1 |

---

[20] Based on the data the agency provided, we were unable to determine the State.

| | |
|---|---|
| **Tennessee** | 1 |
| **Total** | **2422** |

## Exhibit B:  Results of Prior Audit Recommendations

The table below lists the results of APHIS' implementation of prior audit recommendations from Audit Report 33002-4-SF, *APHIS Animal Care Program Inspections of Problematic Dealers*, issued in May 2010.

| Recommendation Number | Recommendation Detail | Fully Implemented? |
|:---:|---|:---:|
| 1 | Modify the *Dealer Inspection Guide* to require an enforcement action for direct and serious violations.  Also, define a serious violation in the Guide. | Yes |
| 2 | Remove "no action" as an enforcement action in the *Dealer Inspection Guide*. | Yes |
| 3 | Incorporate instructions provided in the "Animal Care Enforcement Actions Guidance for Inspection Reports" into the *Dealer Inspection Guide* to ensure inspectors and their supervisors follow them in selecting the appropriate enforcement. | Yes |
| 4 | Modify regulations to allow immediate confiscation where animals are dying or seriously suffering. | Yes |
| 5 | Establish written procedures to refer animal cruelty cases to the States that have such felony laws. | Yes |
| 6 | Provide more comprehensive training and detailed guidance to the inspectors and supervisors on direct and repeat violations, enforcement procedures, evidentiary requirements (e.g., adequately describing violations), shelter medicine, and animal abuse. | Yes |
| 7 | Revise the *Dealer Inspection Guide* to require photos for all violations that can be documented in this manner. | Yes |
| 8 | Limit total penalty reductions on the new worksheet to less than 100 percent. | Yes |

| 9 | Establish a methodology to determine a minimum stipulation amount and consistently apply that amount, when appropriate. | Yes |
| 10 | Designate a responsible party to ensure that "Determining Penalties Under the Animal Welfare Act" (April 2006) is consistently followed by AC and IES and that penalties are properly calculated. | Yes |
| 11 | Include instructions in "Determining Penalties Under the Animal Welfare Act" to count each animal as a separate violation in cases involving animal deaths and unlicensed wholesale activities. | Yes |
| 12 | Propose that the Secretary seek legislative change to exclude Internet breeders from the definition of "retail pet store," and require that all applicable breeders that sell through the Internet be regulated under AWA. | Yes |
| 13 | Correct all security issues pertaining to ACIS that were identified by USDA's Cyber Security Office during its concurrency review. | Yes |
| 14 | Require the Financial Management Division to ensure that IES follows the payment plan process by conducting additional training and periodic reviews, or require Financial Management Division to reassume its responsibility for establishing payment plans for stipulations. | Yes |

**Agency's Response**

# Animal and Health Plant Inspection Service's Response to Audit Report



**United States Department of Agriculture**

---

United States
Department of
Agriculture

Marketing and
Regulatory
Programs

Washington, DC
20250

**TO:**     Gil H. Harden
           Assistant Inspector General for Audit
           USDA Office of the Inspector General

**FROM:**   Kevin Shea
           Administrator   /S/
           Animal and Plant Health Inspection Service

**SUBJECT:** APHIS Response and Request for Management Decisions on OIG
            Report, "Animal Care Oversight of Dog Breeders" (33601-0002-31)

Thank you for the opportunity for the Animal and Plant Health Inspection Service
(APHIS) to comment on this report. APHIS agrees with all three OIG
recommendations and will implement the steps discussed below to address these
recommendations. Thank you for the opportunity for APHIS to comment on this
report.

## Finding 1: APHIS Needs to Ensure the Reliability and Security of its Mission Critical Information System

### Recommendation 1: APHIS should ensure the data reliability and security issues with the Animal Care Information System (ACIS) do not persist in SalesForce and eFile.

**APHIS Response:** APHIS agrees with this recommendation. As of September 7,
2020, Animal Care (AC) has transitioned to eFile to remedy the inconsistent data
and security issues that impacted ACIS. APHIS eFile is set up on the SalesForce
platform. Therefore, our actions to ensure data reliability and security in eFile are
carried out within the SalesForce platform. While eFile has been live for less than a
year, the reliability of reports and accuracy of data pulled from it are significantly
improved. The eFile system allows tracking of individual actions within the database
to identify the source of the change and provides consistent data management and
access controls based on assigned users. In April 2021 AC developed an eFile
Change Control Board and a standard operating procedure (SOP) for submitting
requests through the AC Operations and Maintenance unit.  They meet monthly to
ensure required enhancements or maintenance are properly requested, approved, and
tracked by AC. On November 7, 2020 AC added a data management analyst to our
staff as an additional resource to validate data.  Additionally, the integrity of eFile
data is enhanced with security support from OCIO-CEC.

Gil H. Harden – Page 2

### Finding 2: APHIS Should Improve Controls Over Its Complaint Process

**Recommendation 2: Develop and implement guidance, policies, and procedures to ensure a consistent response to complaints and to ensure the response is sufficiently documented.**

**APHIS Response:** APHIS agrees with this recommendation. AC will develop and implement guidance and procedures for AC employees on handling complaints in a new SOP document titled "Complaint Guidance". APHIS will incorporate within the finalized "Complaint Guidance" SOP sufficient detail for inspectors across the country to respond consistently to all complaints received, including, specifically, how to document the complaint response and follow-up within eFile. eFile now provides a complaint report and dashboard to AC employees and management. APHIS anticipates releasing the "Complaint Guidance" SOP by October 31, 2021.

**Recommendation 3: Provide inspectors training on the process of responding to complaints, documenting actions taken, and the reason for those actions.**

**APHIS Response:** APHIS agrees with this recommendation. AC will provide employees with training on handling complaints and ensure that the actions taken are in accordance with guidance and are documented in eFile. As noted above, APHIS will incorporate the requirements in a new SOP document titled "Complaint Guidance." This document will be distributed to and discussed with AC employees during employee team meetings. APHIS will also update the AC Inspection Guide to include the information on complaint response and guidance to inspectors for consistent application across the program. APHIS anticipates updating the AC Inspection Guide by March 31, 2022.



**Learn more about USDA OIG**
Visit our website: **www.usda.gov/oig/index.htm**
Follow us on Twitter: @OIGUSDA

**How to Report Suspected Wrongdoing in USDA Programs**

**Fraud, Waste, and Abuse**
File complaint online: **www.usda.gov/oig/hotline.htm**

**Monday–Friday, 9:00 a.m.– 3:00 p.m. ET**
In Washington, DC 202-690-1622
Outside DC 800-424-9121
TDD (Call Collect) 202-690-1202

**Bribes or Gratuities**
202-720-7257 (24 hours)

In accordance with Federal civil rights law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, the USDA, its Agencies, offices, and employees, and institutions participating in or administering USDA programs are prohibited from discriminating based on race, color, national origin, religion, sex, gender identity (including gender expression), sexual orientation, disability, age, marital status, family/parental status, income derived from a public assistance program, political beliefs, or reprisal or retaliation for prior civil rights activity, in any program or activity conducted or funded by USDA (not all bases apply to all programs). Remedies and complaint filing deadlines vary by program or incident.

Persons with disabilities who require alternative means of communication for program information (e.g., Braille, large print, audiotape, American Sign Language, etc.) should contact the responsible Agency or USDA's TARGET Center at (202) 720-2600 (voice and TTY) or contact USDA through the Federal Relay Service at (800) 877-8339. Additionally, program information may be made available in languages other than English.

To file a program discrimination complaint, complete the USDA Program Discrimination Complaint Form, AD-3027, found online at How to File a Program Discrimination Complaint and at any USDA office or write a letter addressed to USDA and provide in the letter all of the information requested in the form. To request a copy of the complaint form, call (866) 632-9992. Submit your completed form or letter to USDA by: (1) mail: U.S. Department of Agriculture, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410; (2) fax: (202) 690-7442; or (3) email: program.intake@usda.gov.

USDA is an equal opportunity provider, employer, and lender.