# EXHIBIT Y

NINETEENTH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DIVISION O, SECTION 25

. . . . . . . . . . . . . . . .

PEOPLE FOR THE ETHICAL TREATMENT  .

OF ANIMALS                       .

V.                               .    SUIT NO. 702,660

BOARD OF SUPERVISORS OF LOUISIANA .

STATE UNIVERSITY                 .

. . . . . . . . . . . . . . . .

TUESDAY, DECEMBER 14, 2021

WRIT OF MANDAMUS

THE HONORABLE WILSON E. FIELDS, JUDGE PRESIDING

APPEARANCES:

ALYSSON MILLS AND KRISTEN AMOND, COUNSEL FOR THE PLAINTIFF, PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS

CHRISTINA PECK AND SHERI MORRIS, COUNSEL FOR THE DEFENDANTS, BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY

REPORTED BY: KIMBERLY W. FORD, CCR #96020

RECEIVED APR 26 2022
DEPUTY CLERK OF COURT    19th JUDICIAL DISTRICT COURT

FILED APR 28 2022
DEPUTY CLERK OF COURT

1205

WOULD BE ABLE TO USE THOSE DATA TO APPLY FOR GRANT PROPOSALS THAT THEY MIGHT GET THAT I WOULD NOT GET. AND THAT WOULD ALSO LIMIT ANY TYPES OF LICENSING OR COMMERCIAL AGREEMENTS THAT I MIGHT BE ABLE TO ENTER INTO TO COMMERCIALIZE OUR LICENSE, THE VIDEO DATA FROM THOSE VIDEOS.

    **THE COURT:** FOR LSU OR FOR YOURSELF PERSONALLY?

**A.** FOR LSU.

**BY MS. PECK:**

**Q.** AT LSU, WHO MAKES THE DETERMINATION OF WHETHER YOUR WORK IS PATENTABLE OR COMMERCIALIZABLE?

**A.** THAT IS DONE IN CONSULTATION WITH THE OFFICE OF RESEARCH AND ECONOMIC DEVELOPMENT AT LSU.

**Q.** HAS THAT DETERMINATION BEEN DONE WITH RESPECT TO THE VIDEOS THAT ARE BEING SOUGHT BY PETA THROUGH THEIR RECORDS REQUEST?

**A.** I HAVE NOT HAD A CONSULTATION WITH THOSE STAFF AT THIS POINT.

**Q.** WERE YOU -- STRIKE THAT. TELL ME ABOUT YOUR MEETING WITH MEMBERS OF THE ANIMAL CONTROL COMMITTEE, ANIMAL CONTROL CENTER IN EAST BATON ROUGE PARISH.

**A.** YES. SO ONE OF THE RESPONSIBILITIES, YOU KNOW, OF THE OFFICE OF THE IACUC AT LSU IS TO MAKE SURE THAT MY RESEARCH IS IN COMPLIANCE WITH ALL LOCAL AND STATE AND FEDERAL LAWS. AND THAT MEETING WAS JUST TO CLARIFY THE TEXT OF AN ORDINANCE THAT WAS IN PLACE IN THE CITY OF BATON ROUGE.

**Q.** AND WHAT WAS YOUR UNDERSTANDING OF WHAT THE ORDINANCE OF THE CITY OF BATON ROUGE ORDINANCE NUMBER 14:401 PROHIBITED?

**A.** PRIOR TO THAT MEETING, I DID NOT HAVE A GOOD UNDERSTANDING OF THE ORDINANCE AND WHAT IT PROHIBITED AND DID NOT PROHIBIT. AND SO THE MEETING WAS REALLY HELPFUL IN

126

CLARIFYING THAT. IT PROHIBITED CATCHING BIRDS WITHIN THE CITY OF BATON ROUGE, BUT NOT WITHIN THE PARISH OF EAST BATON ROUGE.

Q. OKAY. DID YOU TAKE ANY ACTION SUBSEQUENT TO THE MEETING WITH DR. COLE AND OTHER MEMBERS OF LSU'S STAFF AS A RESULT OF THE MEETING ABOUT THE ORDINANCE?

A. I BELIEVE AFTER THAT MEETING DR. COLE WAS JUST INTERESTED IN MY RESEARCH. AND HE SET UP A MEETING WITH ME TO BE ABLE TO TOUR MY RESEARCH FACILITY AND SEE MY LAB. AND HE ALSO GAVE ME SOME ADDITIONAL INFORMATION ABOUT THE ORDINANCE AND WHAT IT PROHIBITED.

Q. DID YOU TAKE ANY ACTION WITH RESPECT TO THE ORDINANCE AFTER DR. COLE PROVIDED YOU WITH SOME ADDITIONAL INFORMATION ABOUT THE ORDINANCE?

A. SO I MET WITH A PERSONAL ATTORNEY ABOUT THE POSSIBILITY OF AMENDING THE ORDINANCE. BUT THAT WAS ALL DONE IN CONSULTATION WITH A PRIVATE ATTORNEY. IT WAS NOT DONE THROUGH LSU OR ON THE BEHEST OF LSU. LSU WAS NOT INVOLVED IN THAT IN ANY WAY.

Q. WOULD YOU HAVE BEEN ABLE TO PERFORM YOUR RESEARCH IF YOU WERE NOT ABLE TO TRAP BIRDS WITHIN THE CITY LIMITS OF BATON ROUGE?

A. YES, ABSOLUTELY.

Q. AND EXPLAIN HOW YOU WOULD HAVE BEEN ABLE TO DO THAT?

A. YEAH, THERE ARE STILL A LOT OF AREAS WITHIN EAST BATON ROUGE PARISH THAT ARE NOT PART OF THE CITY ORDINANCE. AND OUTSIDE OF EAST BATON ROUGE PARISH, THERE ARE MANY OTHER PARISHES NEARBY THAT DO NOT HAVE ORDINANCES OF THIS KIND. SO THERE WERE MANY OTHER OPTIONS AVAILABLE TO ME.

Q. AND WERE YOU INSTRUCTED BY ANYONE AT LSU THAT YOU SHOULD TAKE ACTION TO TRY TO CHANGE THE ORDINANCE?

A. I WAS NOT. I DID, I BELIEVE, HAVE A COUPLE OF

127

CONVERSATIONS WITH PEOPLE THAT, YOU KNOW, AMENDING THE ORDINANCE MIGHT BE SOMETHING THAT COULD BE POSSIBLE. BUT THERE WAS NO SPECIFIC ADVICE GIVEN TO ME BY ANYONE AT LSU ABOUT THIS. THIS WAS SOMETHING THAT WAS PURSUED ENTIRELY INDEPENDENTLY THROUGH A PERSONAL ATTORNEY.

**Q.** DID YOU ASSIST WITH THE PROCESS OF RESPONDING TO PETA'S RECORDS REQUEST FOR DOCUMENTS?

**A.** YES. WHEN I RECEIVED INFORMATION FROM THE LSU ATTORNEYS THAT THESE RECORDS REQUESTS WERE MADE, I DID GO THROUGH EMAILS TO LOOK FOR ANYTHING THAT WOULD BE RESPONDENT TO THESE QUESTIONS. I ALSO, YOU KNOW, PROVIDED THESE ACQUISITION AND DISPOSITION RECORDS.

        **MS. PECK:** ONE MOMENT, YOUR HONOR. NO FURTHER QUESTIONS, YOUR HONOR.

        **THE COURT:** ALL RIGHT.

EXAMINATION

**BY MS. MILLS:**

**Q.** DR. LATTIN, DO YOU HAVE A PRIVATE LAB SOMEWHERE?

**A.** MY LAB IS AT LOUISIANA STATE UNIVERSITY AT THIS TIME.

**Q.** OKAY. IT IS ONLY AT LSU?

**A.** IT IS. BUT, YOU KNOW, ASSISTANT PROFESSORS CHANGE UNIVERSITIES ALL THE TIME. SO IT IS POSSIBLE IT MIGHT NOT ALWAYS BE AT LSU, YES.

**Q.** OKAY. ARE YOU EMPLOYED BY ANYONE ELSE RIGHT NOW?

**A.** CURRENTLY, I AM NOT.

**Q.** AND YOU SAID THE BIRD ORDINANCE, IT MATTERED TO, I THINK YOU SAID THE IACUC COMMITTEE BECAUSE YOUR WORK AT LSU NEEDED TO COMPLY WITH LOCAL ORDINANCES. DID YOU SAY THAT?

        **MS. PECK:** OBJECTION, YOUR HONOR. I THINK THAT MISREPRESENTS WHAT THE TESTIMONY OF THE WITNESS WAS.

        **THE COURT:** OVERRULE THE OBJECTION. IT WAS A

128