1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| P. POE 5 and P POES 2 through 4 and 6 through 75, individually and on behalf of others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>UNIVERSITY OF WASHINGTON, a Washington public corporation; PERRY TAPPER, Director of Public Records and Open Public Meetings at the University of Washington, in their official capacity, in their official capacity,<br><br>     Defendants,<br><br>  and<br><br>PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.; NORTHWEST ANIMAL RIGHTS NETWORK,<br><br>     Intervenor-Defendants. | CASE NO. 2:24-cv-00170-JHC<br><br>ORDER RE: MOTION FOR PRELIMINARY INJUNCTION |

1

# I

## INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction. Dkt. # 75.  Plaintiffs seek to enjoin Defendants, the University of Washington (UW) and Perry Tapper, UW Director of Public Relations, from releasing unredacted documents that would identify Plaintiffs by name in response to a public records request under the Washington Public Records Act (PRA).  *Id.* at 4.  Plaintiff P. Poe 5 is a member or alternate member of UW's Institutional Animal Care and Use Committee (IACUC), whose identity has not been publicly disclosed.  Dkt. # 73 at 3.  The public records requests at issue are from the animal rights groups People for Ethical Treatment of Animals (PETA) and Northwest Animal Rights Network (NARN).  *Id.* at 4–5.  Plaintiffs claim that if their names or association with the IACUC is disclosed, they are likely to be harassed by members of the public who oppose the use of animals in research.  *Id.* at 8.  Plaintiffs also argue that this information is exempt from disclosure under the PRA.  *Id.* at 3.  In the alternative, they say that if the requested preliminary injunction is not issued, then the Court should find the PRA is preempted by federal law.  *Id.*

In response, PETA contends it has a right to access the information at issue and that the PRA is not preempted by federal law.  Dkt. # 79.  PETA also lodges a facial and as-applied First Amendment challenge against RCW 4.24.580.  *Id.*

UW takes no position on Plaintiffs' request for a preliminary injunction but argues that the PRA is not preempted by federal law and RCW 4.24.580 is constitutional.  Dkt. # 83.

For the reasons discussed below, the Court DENIES Plaintiffs' motion for a preliminary injunction.

//

//

ORDER RE: MOTION FOR PRELIMINARY INJUNCTION - 2

## II

### BACKGROUND

A.    IACUC

Institutions that use live animals in research, tests, or experiments and accept federal funding for such work must establish an IACUC.  9 C.F.R. § 2.31(a).  IACUCs must, among other things, "review . . . the research facility's program for humane care and use of animals," "review and approve, require modifications in (to secure approval), or withhold approval of . . . of proposed activities related to the care and use of animals," and "review, and, if warranted, investigate concerns involving the care and use of animals at the research facility resulting from public complaints received and from reports of noncompliance received from laboratory or research facility personnel or employees."  9 C.F.R. § 2.31(c)(1), (4), (6); 7 U.S.C. § 2132(e).

The monthly UW IACUC meetings are open to the public and include a public comment period.  Dkt. # 73 at 7.  There is also a public link to view the meetings online.  *Id.*  Other than the Chair of the Organization, Dr. Sullivan, and the Lead Veterinarian, the names of members and alternate members of the organization are kept confidential.  *Id.* at 8.  At UW, service on the IACUC is voluntary and unpaid.  Dkt. # 84 at 2.  Members' identities are kept confidential "due to ongoing threats and harassment of committee members by members of the public who oppose the use of animals in research."  Dkt. # 73 at 8.

B.    Previous Case

In a previous case in this District, *Sullivan v. Univ. of Washington*, 2:22-cv-00204-RAJ, Dr. Sullivan, the IACUC Chair, and P. Poe 1, an IACUC member, sought a temporary restraining order (TRO) and preliminary injunction to stop UW from releasing the names of members of UW's IACUC.  The court granted the TRO and preliminary injunction based on the plaintiffs' argument that the release of information would violate the plaintiffs' First Amendment

right to academic association. *Sullivan v. Univ. of Washington*, 2022 WL 558219, at \*3 (W.D. Wash. Feb. 24, 2022).

PETA, an intervenor-defendant, appealed the preliminary injunction and the Ninth Circuit reversed. It held that "[t]he committee members' performance of their official duties is not protected by the First Amendment right of expressive association, and so the disclosure of public records that relate to performance of such duties does not impinge on that right." *Sullivan v. Univ. of Washington*, 60 F.4th 574, 576 (9th Cir. 2023).

On remand, the district court granted another preliminary injunction based on the plaintiffs' amended complaint. *Sullivan v. Univ. of Washington*, 2023 WL 3224495, at \*2 (W.D. Wash. May 3, 2023). The court concluded the plaintiffs showed a likelihood of success on the merits as to their claim that the release of information would violate their Washington and federal constitutional rights to personal security, bodily integrity, and informational privacy. *Id.* at \*3–4. PETA again appealed. The Ninth Circuit concluded that Dr. Sullivan and P. Poe 1 lacked standing. *Sullivan v. Univ. of Washington*, 2023 WL 8621992, at \*1 (9th Cir. Dec. 13, 2023). The Ninth Circuit held that "Sullivan cannot demonstrate redressability because she cannot represent the IACUC's institutional interests in her role as the chair of the IACUC" and her identity is already known. *Id.* And it held that P. Poe 1 could not show redressability because the record reflected that UW already responded to a PRA request from PETA that disclosed the names and emails of "almost all" IACUC members on March 4, 2021. *Id.* P. Poe 1 did not furnish any information showing that their information was not disclosed on March 4, 2021, so the Ninth Circuit held that P. Poe 1 did not meet their "burden of establishing subject matter jurisdiction." *Id.* (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). The court did not reach the merits of the preliminary injunction. *Id.* at \*2. The court vacated the injunction and remanded with instructions to dismiss the case. *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

C.    The Present Case

UW then informed IACUC members that, because there was no longer a preliminary injunction barring disclosure, it intended to respond to public records requests without redacting the names of the committee members.  Dkt. # 3 at 4.  IACUC members again filed for a preliminary injunction, arguing that release of their publicly identifying information would violate their constitutional right to information privacy.  *Id.* at 19.  The Court granted the requested preliminary injunction.  Dkt. # 45.  PETA then filed an interlocutory appeal to the Ninth Circuit.  Dkt. # 46.  Relying on a Ninth Circuit case that issued after the preliminary injunction, the court observed that "basic 'biographical data,' including a person's 'name, address, identification, place of birth, telephone number, occupation, sex, description, and legal aliases,' is not highly sensitive personal information, and thus categorically does not 'implicate the right to privacy.'"  *P Poe 5 v. Univ. of Washington*, 2024 WL 4971971, at *1 (9th Cir. Dec. 4, 2024) (quoting *Doe v. Bonta*, 101 F.4th 633, 637–38 (9th Cir. 2024)).  The Ninth Circuit then reversed the Court's preliminary injunction order.  *Id.*

After the Ninth Circuit's decision, Plaintiffs moved for a TRO, which PETA and UW did not oppose, so the parties could agree to a briefing schedule for a renewed motion for a preliminary injunction.  Dkt. # 56 at 2.  The Court granted the TRO.  Dkt. # 57.  Plaintiffs also filed an amended complaint.  Dkt. # 73.

Plaintiffs now bring a motion for preliminary injunction to enjoin UW from releasing unredacted documents in response to public records requests from PETA.  Dkt. ## 75, 87.  PETA opposes the motion.  Dkt. # 79.

//

//

//

ORDER RE: MOTION FOR PRELIMINARY INJUNCTION - 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### III

### DISCUSSION

A.    Standing

Although no party claims P Poe 5 lacks standing to bring their claims, courts have both

the duty and the power to examine jurisdictional issues, such as standing, in every case.

*Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002); *see Sullivan*, 2023 WL

8621992, at *1 (dismissing previous suit arising under similar claims for lack of standing); Fed.

R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court

lacks jurisdiction of the subject matter, the court shall dismiss the action.").  Article III standing

requires a plaintiff to show: (1) an injury-in-fact; (2) that is "fairly traceable to the challenged

action of the defendant"; and (3) it must be "likely" that the injury is redressable by a favorable

decision.  *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th

664, 680 (9th Cir. 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Because P Poe 5 is the only named Plaintiff, they must establish Article III standing for their

claims to be justiciable.  *See Sullivan*, 2023 WL 8621992, at *1; *Martinez v. Newsom*, 46 F.4th

965, 970 (9th Cir. 2022) (plaintiffs generally cannot base standing on injuries suffered by

proposed class members); Dkt. # 73 at 4 ("P. Poes 2-4 and 6-75 are a proposed class of

individuals who are members, alternate members, or former members of the UW IACUC[.]").

P. Poe 5 is a current member or alternate member of the University of Washington's

IACUC.  Dkt. # 73 at 3.  Their identity has not been publicly disclosed.  *Id.*

This is enough to confer standing.  P Poe 5 alleges they will suffer an injury-in-fact if

their name and association with the UW IACUC is made public.  *Id.* at 18–22.  This alleged

injury is readily traceable to PETA's request for Plaintiffs' information because Plaintiffs allege

the release of the information constitutes the injury.  *Id.* at 19 ("Because the disclosure of

ORDER RE: MOTION FOR PRELIMINARY INJUNCTION - 6

1    Plaintiffs' personally identifying information would infringe on Plaintiffs' constitutional rights of

2    personal security, bodily integrity, and informational privacy, Plaintiffs are entitled to an

3    injunction barring disclosure of such information . . . .").  And, crucially, a decision in P Poe 5's

4    favor would redress this injury because their identity has not been disclosed and a favorable

5    decision would keep their name and association with the UW IACUC private.  *Cf. Sullivan*, 2023

6    WL 8621992, at *1 ("P. Poe 1 cannot demonstrate redressability because their information has

7    been disclosed.").  In brief, P Poe 5 meets the Article III standing requirements.

8    B.    Preliminary Injunction

9         The preliminary injunction standard is procedural, so a federal court must apply the

10   federal standard even though the underlying claims arise under state substantive law.  *See Erie R.*

11   *Co. v. Tompkins,* 304 U.S. 64 (1938); *see Hanna v. Plumer,* 380 U.S. 460, 471 (1965).  When

12   applying the federal preliminary injunction standard, a court must first determine whether the

13   plaintiff would be entitled to injunctive relief under state law.  *See Masters v. Avanir Pharms.,*

14   *Inc.*, 996 F. Supp. 2d 872, 878 n.3 (C.D. Cal. 2014); *Brooks v. It Works Mktg., Inc.*, 2022 WL

15   2217253, at *8 (E.D. Cal. June 21, 2022) (same).  Then, if a court determines the plaintiff would

16   be entitled to a preliminary injunction under state law, the court relies on the federal standard to

17   determine whether the preliminary injunction should be granted.  *Masters*, 996 F. Supp. 2d 872

18   at 878 n.3.

19        Under federal law, a preliminary injunction is "an extraordinary remedy that may only be

20   awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res.*

21   *Def. Council, Inc.*, 555 U.S. 7, 23 (2008).  To obtain a preliminary injunction, the plaintiff must

22   show (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm

23   in the absence of" a preliminary injunction"; (3) "the balance of equities tips in [their] favor";

24   and (4) a preliminary injunction "is in the public interest."  *Stormans, Inc. v. Selecky*, 586 F.3d

1109, 1127 (9th Cir. 2009) (quoting *Winter,* 555 U.S. at 20) (these are called the *Winter* factors).

The Ninth Circuit has added that "if a plaintiff can only show that there are 'serious questions

going to the merits'—a lesser showing than likelihood of success on the merits—then a

preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's

favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*,

709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d

1127, 1135 (9th Cir. 2011)).

       1.     Likelihood of Success on the Merits

       The Court must first determine whether Plaintiffs would be entitled to injunctive relief

under Washington law.  When interpreting Washington law, the Court is bound by the decisions

of the Washington Supreme Court.  *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958,

960 (9th Cir. 2001).  The Court must also apply Washington's rules of statutory construction

when interpreting a state statute.  *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d

716, 746 (9th Cir. 2013).  Washington courts employ a "plain language" rule:

> To determine legislative intent, this court looks first to the language of the statute.
> If the statute is unambiguous, its meaning is to be derived from the plain language
> of the statute alone.  Legislative definitions provided in a statute are controlling,
> but in the absence of a statutory definition, courts may give a term its plain and
> ordinary meaning by reference to a standard dictionary.

*Fraternal Ord. of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Ord. of Eagles*, 148

Wash. 2d 224, 239, 59 P.3d 655, 663 (2002).

       Plaintiffs seek to enjoin the release of certain personal information under the PRA.  The

PRA ensures governmental transparency in Washington and "embodies 'a strongly worded

mandate for broad disclosure of public records.'"  *Freedom Found. v. Gregoire*, 178 Wash. 2d

686, 694-95, 310 P.3d 1252 (2013) (quoting *Hearst Corp. v. Hoppe,* 90 Wash. 2d 123, 127, 580

P.2d 246 (1978)).  But if the requested information falls within the "specific exceptions" of the

PRA or an "other statute," that information is exempt from disclosure.  RCW 42.56.070(1).  And the law allows the release of public records to be enjoined if "examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions."  RCW 42.56.540.

So the Court starts with the general proposition that "the [PRA] establishes an affirmative duty to disclose public records unless the records fall within specific statutory exemptions or prohibitions." *Spokane Police Guild v. Liquor Control Bd.*, 112 Wash. 2d 30, 36, 769 P.2d 283 (1989).  Then the Court makes two determinations before deciding whether to issue a preliminary injunction: (1) "whether the records are exempt under the PRA or an 'other statute' that provides an exemption in the individual case" and (2) "whether the PRA injunction standard is met." *Does 1, 2, 4 , & 5 v. Seattle Police Dep't*, 563 P.3d 1037, 1047 (Wash. 2025).  Said differently, "An injunction will not issue unless the proponent establishes *both* that an exemption applies *and* release would clearly not be in the public interest and would cause substantial and irreparable damage under RCW 42.56.540." *Id.* at 1048; *see Lyft, Inc. v. City of Seattle*, 190 Wash. 2d 769, 790, 418 P.3d 102, 113 (2018).  Because the PRA injunction standard is for a permanent injunction, Plaintiffs need only demonstrate a likelihood of success at both steps to obtain a preliminary injunction.[1] *Does 1, 2, 4 , & 5*, 563 P.3d at 1048.

//

//

//

//

---

[1] This likelihood of success factor involves the same standard the Court applies to evaluate the first *Winter* factor.

ORDER RE: MOTION FOR PRELIMINARY INJUNCTION - 9

a.    PRA Injunction Standard[2]

Under the PRA, a court may enjoin the release of public records if the examination of those records "would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions."  RCW 42.56.540.

Plaintiffs maintain they satisfy this standard based on the Court's "prior *Winter* findings" and because disclosure would make it "difficult or impossible for the UW IACUC to function effectively."  Dkt. # 75 at 14–15.

But PETA contends "[t]here is a strong public interest in disclosure of public records based on principles of democratic self-governance."  Dkt. # 79 at 29.  And there is a similar public interest in ensuring the IACUC has appropriately qualified members, which can be accomplished only if the identities of those members are disclosed.  *Id.* at 30.  PETA also says that Dr. Sullivan's "concern" about the IACUC's "ability to recruit and retain members" is belied by the fact that UW "appointed approximately 20 members to the IACUC since March 2021," Dkt. # 84 at 2, when "UW provided the names and email addresses of all then-current members of the UW IACUC to PETA[.]"[3]  Dkt. # 81 at 6; *see* Dkt. # 79 at 29–30.

---

[2] Although "a court's initial determination will *ordinarily* be whether the information involved is in fact within one of the act's exemptions or within some other statute which exempts or prohibits disclosure of specific information or records," the Court starts at the second step of this analysis.  *Lyft*, 190 Wash. 2d at 779 (quoting *Spokane Police Guild*, 112 Wash. 2d at 36) (emphasis added).  This is for two reasons.  First, Plaintiff must show a likelihood of success at both steps to receive a preliminary injunction.  *Does 1, 2, 4 , & 5*, 563 P.3d at 1047.  But, as discussed below, Plaintiffs fail at the second step.  So the Court's ruling on the first step would not be determinative as to the ultimate conclusion of whether the injunction should issue.  Second, the Court does not wish to inject additional uncertainty into the question of what statutes qualify as an "other statute" under the PRA, particularly because the Washington courts are still addressing the bounds of this area of the law.  *See* Dkt. # 83 at 10 n.5.

[3] This number of members is noteworthy because "[t]here are approximately 34-40 members and alternate members of the IACUC at any given time."  Dkt. # 84 at 2.

ORDER RE: MOTION FOR PRELIMINARY INJUNCTION - 10

1    Although Plaintiff primarily relies on the Court's prior orders to bolster its argument,

2    these comparisons are inapt.  Dkt. # 78 at 14–15.  The Court's prior order granting Plaintiffs a

3    preliminary injunction was grounded in the foundational conclusion that "Plaintiffs have shown a

4    likelihood of success on the merits as to the federal constitutional [privacy] claim."  Dkt. # 45 at

5    14.  The Court evaluated the other *Winter* factors in light of this conclusion.  *See Baird v. Bonta*,

6    81 F.4th 1036, 1042 (9th Cir. 2023) ("The first *Winter* factor . . . is the most important factor").

7    Then, the Ninth Circuit found the information Plaintiffs seek to keep private does not implicate

8    the right to privacy.  *P Poe 5*, 2024 WL 4971971, at *1.  The Ninth Circuit's decision largely

9    depended on the determination that the information PETA seeks is not "highly sensitive personal

10   information."  *Id.*  It is axiomatic that this decision overruling the Court's prior order—and its

11   reasoning— changes the way the Court evaluates Plaintiffs' claims.  *See Borden v. eFinancial,*

12   *LLC*, 53 F.4th 1230, 1235 (9th Cir. 2022) ("Much like we do not interpret a statute by cherry-

13   picking one word out of it, we should not pluck one sentence out of an opinion without looking

14   at its context.").  It follows that the Court's previous assessments of the *Winter* factors do not

15   "remain valid and appropriate."  *Contra* Dkt. # 75 at 14.  The Court's TRO bears similarly little

16   persuasive weight because it was issued without "any opposition to the motion from any other

17   person or entity."  Dkt. # 57 at 6.

18       Plaintiffs offer limited evidence to show that the release of the information PETA seeks

19   would clearly not be in the public interest.  They maintain there is a public interest in having

20   qualified personnel oversee animal research at UW and this interest "could be impaired if

21   Plaintiffs' identities were disclosed."  Dkt. # 75 at 14 (quoting Dkt. # 45 at 13–15).  But the

22   record shows UW recruited and appointed around 20 members to the IACUC between March

23   2021 and March 2025.  Dkt. # 84 at 2.  This is significant because "UW provided the names and

24   email addresses of all then-current members of the UW IACUC to PETA" in March 2021.  Dkt.

# 81 at 6.  UW was able to continue recruiting and appointing personnel to the IACUC even after the identities of the then-current members were disclosed.  Plaintiffs do not offer any evidence to show there are new circumstances that would change this outcome if the information PETA seeks now is released.  As a result, the release of Plaintiffs' personal information is unlikely to significantly affect the public interest in having qualified personnel oversee animal research at UW.

On the other hand, the Washington Supreme Court has noted that "[p]ublic employees are paid with public tax dollars and, by definition, are servants of and accountable to the public.  The people have a right to know who their public employees are and when those employees are not performing their duties."  *Predisik v. Spokane Sch. Dist. No. 81*, 182 Wash. 2d 896, 908, 346 P.3d 737, 742 (2015).  PETA is requesting information—the identity of public employees and their duties—that is consistent with these interests.  Dkt. # 73 at 2.  It is also clear that this information is newsworthy because the Seattle Times has multiple open public records requests that "may associate an IACUC member with service on the IACUC."  Dkt. # 85 at 5–6.  "By reporting about the government, the media are 'surrogates for the public.'"  *Leigh v. Salazar*, 677 F.3d 892, 900 (9th Cir. 2012) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980)).  There is therefore a public interest in the release of this information that is not outweighed by Plaintiffs' personal privacy interest.

Plaintiffs are similarly unlikely to show the release of these records would substantially and irreparably harm any vital government function.  The names and email addresses of the IACUC members in March 2021 have been publicly available since August 2022.  Dkt. # 85 at 6.  And "almost all" the individuals who had their personal information revealed in response to these requests still serve on the UW IACUC.  *Id.*  Since the release of this information, the UW IACUC has continued to function with few disruptions.  The organization has still been able to

recruit and appoint members. Dkt. # 84 at 2. With one exception, it has been able to conduct all its scheduled meetings in compliance with Washington's Open Public Meetings Act. Dkt. # 76 at 2–3. Granted, the December 2024 IACUC meeting was cancelled because UW's Office of Animal Welfare received a message that the organization's leadership found to be "frightening" and "menacing," but the message was sent to a publicly available email address—not the personal email address of any IACUC member disclosed in response to a public records request. *Id.* at 3, 10; *see Reporting Animal Welfare Concerns*, University of Washington Office of Animal Welfare, https://sites.uw.edu/oawrss/report-concern/ (providing a publicly available link and email address to submit animal welfare concerns) (last visited Apr. 8, 2025). So, to extent the IACUC's function was disrupted by this message, the disruption was not based on the release of any records. In sum, there is little evidence that the UW IACUC's ability to function was disrupted when the identities of its members were released previously. And Plaintiffs do not indicate the organization's ability to function will be disrupted in the future if this information is released again. Thus, releasing the information that PETA requests is unlikely to substantially and irreparably harm the UW IACUC's ability to function.

Plaintiffs also do not show any UW IACUC member will likely be substantially and irreparably harmed if this information is disclosed. Plaintiffs repeatedly point to the experiences of Drs. Michele Basso, Christine Lattin, and Elizabeth Buffalo to argue UW IACUC members will be harmed if their information is released. *See* Dkt. ## 5 at 2–7; 75 at 7, 13. These doctors are voluntarily the "public faces" of controversial animal research, and they have publicly promoted "their work online, in the media, and at public events." Dkt. # 81 at 11. But none of them are members of the UW IACUC. Dkt. # 81 at 10–11. And there is no evidence that would allow the Court to equate these highly publicized animal researchers to the relatively

inconspicuous scientists who comprise the UW IACUC and conclude that the IACUC members will confront similar experiences.

Dr. Sullivan, who is a member of the UW IACUC, also reports members are "concerned about the possible actions by animal research opponents, including persons who might be independently inspired by PETA's allegations." Dkt. # 79 at 2. But Dr. Sullivan's experiences are not entirely consistent with these concerns. Her information is already public, *see Sullivan*, 2023 WL 8621992, at *1, and she does not claim to have suffered substantial harm from animal research opponents. Even after an animal rights activist made a public comment in a UW IACUC meeting suggesting that her cats be animal research subjects and another activist likened UW to the Auschwitz, Birkenau, and Dachau Nazi death camps, she was concerned "[f]or the first time" when an anonymous email was sent to the UW Office of Animal Welfare. Dkt. # 80-4 at 2; *see* Dkt. ## 4 at 52; 31 at 52. That is, she said, "I am now a little scared." Dkt. # 80-4 at 2. This does not constitute a substantial harm under Washington law. *State v. McKague*, 172 Wash. 2d 802, 806, 262 P.3d 1225, 1227 (2011) ("substantial" is appropriately defined as "considerable in amount, value, or worth"). What is more, there is no evidence these antagonistic behaviors were possible because Dr. Sullivan's identity is public. To the contrary, these events occurred in a public forum and the message was sent through a publicly available email address. Plaintiffs do not connect the maltreatment of Dr. Sullivan to the public availability of her personal information. And no evidence shows the situation would be somehow different for other IACUC members, whose identities are currently private, if their information is released in the future.

Consequently, Plaintiffs do not show a likelihood of success on their request for an injunction under the PRA. They fail to demonstrate the examination of UW IACUC members' identities would clearly not be in the public interest, nor do they illustrate the release of these

1    records are likely to substantially and irreparably damage any person or vital government

2    function.  *See* RCW 42.56.540.

3           2.      Remaining *Winter* factors

4           Likelihood of success on the merits "is a threshold inquiry" and "is the most important"

5    *Winter* factor.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).  If there are

6    no "serious questions going to the merits," *All. for the Wild Rockies*, 632 F.3d at 1134–35, the

7    court need not consider the other *Winter* factors, *see Disney Enters., Inc. v. VidAngel, Inc.*, 869

8    F.3d 848, 856 (9th Cir. 2017).

9           Plaintiffs do not raise serious questions going to the merits of their injunction claim, so

10   the Court need not consider the other *Winter* factors.  But even if Plaintiffs had raised serious

11   questions, the information they wish to protect "does not 'implicate the right to privacy.'"  *P Poe*

12   *5*, 2024 WL 4971971, at *1 (quoting *Bonta*, 101 F.4th at 637–38).[4]  And there is a public interest

13   in monitoring government activities.  *See Leigh*, 677 F.3d at 897.  As reflected above, the

14   balance of equities does not tip in Plaintiffs' favor and there is a lesser public interest in issuing

15   Plaintiffs an injunction.  Thus, at a minimum, three of four *Winter* factors weigh against

16   Plaintiffs and the Court will not issue the requested injunction.

17   C.     Preemption

18          One of the fundamental principles of the Constitution is that Congress can preempt state

19   law.  U.S. Const. art. VI, cl. 2; *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372

20   (2000).  There is no "rigid formula or rule" to determine whether a federal law preempts a state

21

22   _____

23        [4] Despite this ruling, Plaintiffs "continue to believe *Doe v. Bonta* was incorrectly decided" and "have continued to plead a right to informational privacy[.]" Dkt. # 75 at 26.  The Court does not reconsider these arguments because it is bound by the Ninth Circuit's decision.  *Al-Safin v. Cir. City Stores, Inc.*, 394 F.3d 1254, 1258 (9th Cir. 2005) ("The law of the case doctrine requires a district court to follow the appellate court's resolution of an issue of law in all subsequent proceedings in the same case.").

24

law. *Chamber of Com. of the United States of Am. v. Bonta*, 62 F.4th 473, 482 (9th Cir. 2023) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). But a law is preempted if "it is impossible for a private party to comply with both state and federal law" or if "under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby*, 530 U.S. at 372–73 (internal citations omitted) (cleaned up). Working out what is "a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Chamber of Com. of the United States of Am.*, 62 F.4th at 482 (quoting *Crosby*, 530 U.S. at 373). When the intended purpose and effect of the federal law is blocked by state law, "the state law must yield to the regulation of Congress within the sphere of its delegated power." *Id.* (quoting *Crosby*, 530 U.S. at 373).

Plaintiffs contend that the PRA is preempted by federal law. Dkt. # 73 at 16. They support this contention by highlighting that the anonymized service of UW IACUC members is "authorized by federal law and policy[.]" *Id.* Specifically, the Public Health Service Policy on Humane Care and Use of Laboratory Animals (PHS Policy) says, "Institutions may, at their discretion, represent the names of members other than the chairperson and veterinarian with program authority . . . by using numbers or other symbols in submissions to OLAW [Office of Laboratory Animal Welfare]." U.S. Department of Health and Human Services, National Institutes of Health, Office of Laboratory Animal Welfare, Section IV.A.3.b, 11 n.6 (revised 2015), available at https://tinyurl.com/3azfybtp [hereinafter PHS Anonymization Rule]. Plaintiffs posit that, because the PRA requires the release of the UW IACUC members' identities, "the operation of [the PRA] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, and/or interferes with the methods by which the federal statutes, regulations, and policies were designed to reach their goal." Dkt. # 73 at 16.

1    PETA responds that the text of the federal statutes that Plaintiffs identify foreclose these

2    preemption arguments.  Dkt. # 79 at 26.  PETA also says the PHS Policy that allows IACUC

3    members to keep their identities private is too informal to have preemptive effect.  *Id.* at 27.  And

4    even if this policy could have preemptive effect, it would not here because the policy disclaims

5    preemptive intent.  *Id.* at 28.

6    Federal law and policies that govern IACUCs do not preempt the PRA.  The PRA does

7    not frustrate the purposes and objectives of these regulations.  *Medtronic, Inc. v. Lohr*, 518 U.S.

8    470, 485 (1996) ("The purpose of Congress is the ultimate touchstone in every pre-emption

9    case")  (citations and quotation marks omitted); *see Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504,

10   516 (1992) (Congressional intent can be "explicitly stated in the statute's language or implicitly

11   contained in its structure and purpose.").  Although there is a single policy that permits IACUCs

12   to keep their membership rosters private, the language of the federal rules that regulate IACUCs

13   shows Congress intended animal research to be conducted in accordance with high standards of

14   professionalism, ethics, and transparency.  For instance, each IACUC must conduct a semi-

15   annual review of all study areas and facilities to ensure compliance with appropriate guidelines

16   for animal care and treatment.  42 U.S.C. § 289d(b)(3)(A).  A certification that this review has

17   been conducted must be filed with the Director of the National Institutes of Health.  42 U.S.C. §

18   289d(b)(3)(C).  Animal research facilities can likewise be inspected to ensure "professionally

19   acceptable standards governing the care, treatment, and use of animals" are being adhered to

20   during research and experimentation.  7 U.S.C. § 2143(a)(7)(A).  And each IACUC must have

21   "at least one member" that "is intended to provide representation for general community interests

22   in the proper care and treatment of animals[.]"  7 U.S.C. § 2143(b)(1)(B)(iii).  Rather than "stand

23   as an obstacle" to these objectives, the PRA promotes them.  *Crosby*, 530 U.S. at 372–73; *see*

24   RCW 42.56.030.  And PETA says it is requesting the information at issue because it seeks to

ORDER RE: MOTION FOR PRELIMINARY INJUNCTION - 17

ensure the UW IACUC complies with applicable federal animal welfare laws.  Dkt. # 79 at 29–30; *see generally* Dkt. # 81.  The PRA provides one avenue for PETA to access this information.

It is also possible to comply with both the PHS Policy and PRA.  Where, as here, the PRA requires the identity of IACUC members to be made public, there is no conflict because the PHS Policy is permissive and says, "Institutions may, at their discretion" anonymize the identity of IACUC members.  PHS Anonymization Rule.  And Plaintiffs do not identify any federal regulation that mandates the identity of IACUC members to remain private.  If there was such a rule, the PRA would yield and disclosure would not be permitted.  RCW 42.56.070(1).  The conclusion that compliance with both rules is possible is even stronger because at least one other public university in Washington makes their IACUC membership roster publicly available.  Dkt. # 81 at 8.  So it is evident that other IACUCs are able to comply with both the PHS Policy and PRA.

The cases that Plaintiffs rely on do not change this result.  Dkt. # 75 at 25–26.  Those cases deal with uniquely federal concerns, or involve purposes and objectives of Congress that were clearly established by federal regulations.  *See* Dkt. # 83 at 23–24; *United States v. City of Pittsburg, Cal.*, 661 F.2d 783, 785 (9th Cir. 1981) (federal postal service); *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 864 (2000) (Federal Motor Vehicle Safety Standard promulgated by the Department of Transportation under the authority of the National Traffic and Motor Vehicle Safety Act of 1966); *Boyle v. United Techs. Corp.*, 487 U.S. 500, 505–06 (1988) (civil liabilities that arise during the performance of a federal procurement contract, which the court found to be a "uniquely federal" interest).  But there is no indication here that animal research is a uniquely federal interest, and the PRA promotes Congress's objectives in enacting the applicable animal research statutes, so these cases are not on point.

As a result, Plaintiffs do not show the PRA blocks the intended purpose and effect of any federal law, including the federal laws that regulate IACUCs. Plaintiffs are similarly unable to show that it is impossible to comply with both the PHS Policy and the PRA. And Plaintiffs do not identify any caselaw that demands a different conclusion.

D.     Constitutionality of RCW 4.24.580[5]

PETA mounts both an as-applied and facial challenge to RCW 4.24.580 under the First Amendment. Dkt. # 79 at 20–21.[6] But PETA does not have Article III standing to pursue these claims.

1.     As-Applied Challenge

To have Article III standing to bring an as-applied challenge under the First Amendment, a party "must allege (1) a distinct and palpable injury-in-fact that is (2) fairly traceable to the challenged provision or interpretation and (3) would likely be redressed by a favorable decision." *Real v. City of Long Beach*, 852 F.3d 929, 934 (9th Cir. 2017) (quoting *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033 (9th Cir. 2006)). That being so, the party

---

[5] This law allows "[a]ny individual who . . . is employed at a research or educational facility . . . where animals are used for research, educational, or agricultural purposes" and "who is harassed, or believes that he or she is about to be harassed, by an organization, person, or persons whose intent is to stop or modify the facility's use or uses of an animal or animals" to "apply for injunctive relief to prevent the harassment." RCW 4.24.580. "Harassment" is defined in the statute as "[a]ny threat . . . that the recipient has good reason to fear will be carried out, that is knowingly made for the purpose of stopping or modifying the use of animals" and would either "cause injury to the person or property of the recipient, or result in the recipient's physical confinement or restraint" or "is a malicious threat to do any other act intended to substantially cause harm to the recipient's mental health or safety." RCW 4.24.580(2).

[6] The Court decided to address this issue based on the understanding that abstention is disfavored in the context of the First Amendment. *See Houston v. Hill,* 482 U.S. 451, 467 (1987) (observing that "we have been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment"); *Dombrowski v. Pfister,* 380 U.S. 479, 489–92 (1965) (abstention not appropriate where statute was challenged as abridging First Amendment activities); *Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520, 528 (9th Cir. 2015) (abstention is "strongly disfavored in First Amendment cases"); *Porter v. Jones*, 319 F.3d 483, 492–93 (9th Cir. 2003) ("Our special concern with abstention in the First Amendment context arises in part from the fact that in many cases, the delay that comes from abstention may itself chill the First Amendment rights at issue.") (collecting cases).

1
2
3
4

must identify a personal harm that results from the challenged statute's application. *See Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) ("An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others.").

5
6
7
8
9
10
11
12
13
14
15

PETA claims it has Article III standing to bring an as-applied challenge because Plaintiffs are "invoking RCW 4.24.580 to prevent them from getting public records to which they are otherwise entitled." Dkt. # 79 at 20.  But, as discussed in Section III.B, *supra*, the Court is not granting Plaintiffs' requested injunction and PETA is not being denied access to any information that it has requested.  So PETA has not suffered a distinct and palpable injury, and it does not satisfy the redressability requirement.  Put differently, even if the Court found RCW 4.24.580 to be unconstitutional, the outcome would be the same—PETA would have access to the records that it seeks under the PRA. *Lujan*, 504 U.S. at 561 (redressability means "it must be likely" an injury will be remedied "by a favorable decision.") (internal quotation marks and citations omitted).  PETA therefore does not have the "irreducible constitutional minimum of standing" and cannot bring an as-applied challenge against RCW 4.24.580. *Id.* at 560–61.

16

    2.    Facial Challenge[7]

17
18
19
20

In the context of the First Amendment, the "unique standing considerations" when a party brings a pre-enforcement challenge "tilt dramatically toward a finding of standing." *Tingley v. Ferguson*, 47 F.4th 1055, 1066–67 (9th Cir. 2022) (quoting *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010)).  But challenging a law that regulates First Amendment activity does not

21
22
23
24

[7] PETA claims it does not lodge a pre-enforcement challenge because Plaintiffs are "seeking to enforce the statute now, in this very lawsuit, to prevent Intervenors from getting the records they requested." Dkt. # 79 at 21.  But this misapprehends Plaintiffs' arguments.  Plaintiffs do not invoke RCW 4.24.580 to curtail PETA's speech.  Rather, Plaintiffs argue RCW 4.24.580 is an "other statute" under RCW 42.56.070(1) that exempts information from disclosure under the PRA. Dkt. # 75 at 9–13.  RCW 4.24.580 is not being enforced by—or against—any party here so the Court interprets PETA's challenge as a pre-enforcement challenge.

automatically confer standing. *See Los Angeles Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32, 40–41 (1999) (prohibiting facial challenge when plaintiffs were under no threat of prosecution). The party challenging the statute still needs to establish an Article III injury. *Potter v. City of Lacey*, 517 F. Supp. 3d 1152, 1161 (W.D. Wash. 2021) (citing *Real*, 852 F.3d at 934).

Courts "rely on a three-factor inquiry to help determine whether a threat of enforcement is genuine enough to confer an Article III injury"; they must consider "(1) whether the plaintiff has a 'concrete plan' to violate the law, (2) whether the enforcement authorities have 'communicated a specific warning or threat to initiate proceedings,' and (3) whether there is a 'history of past prosecution or enforcement.'" *Tingley*, 47 F.4th at, 1067 (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)). "Neither the mere existence of a proscriptive statute nor a generalized threat of prosecution" satisfies this test." *Id.* ((quoting *Thomas*, 220 F.3d at 1139).

PETA fails at every step of this inquiry. First, it does not articulate a "concrete plan" to violate RCW 4.24.580. *Id.* In fact, PETA does not mention any plan to violate the law. *See generally* Dkt. # 79. On the other hand, it spends several pages of its briefing arguing that no communications received by UW personnel qualify as harassment. *Id.* at 17–20; *see* Dkt. # 24 at 18–19. Second, there is no evidence in the record—let alone a "specific warning or threat"—that any entity has communicated an intention to invoke RCW 4.24.580 against PETA. *Tingley*, 47 F.4th at 1067. Third, PETA does not identify a "history of past prosecution or enforcement" of the statute. *Id.* This is likely because "it is not clear whether RCW 4.24.580 has ever been enforced outside the PRA context." Dkt. # 83 at 13; *see* Dkt. # 75 at 18–19. Because PETA cannot demonstrate an Article III injury, it lacks standing to bring a facial challenge against RCW 4.24.580.

1

2                                              IV

3                                        CONCLUSION

4          For all these reasons, the Court DENIES Plaintiffs' Motion for Preliminary Injunction.

5   Dkt # 75.  The Court also finds the PRA is not preempted by federal law and that PETA does not

6   having standing to pursue its First Amendment challenges against RCW 4.24.580.

7          Dated this 10th day of April, 2025.

8

9                                              John H. Chun
                                               John H. Chun
10                                             United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24